IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CINEWORLD GROUP PLC *et al.*,[1] | ) Case No. 22-90168 (MI) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) Re: Docket No. 57 |

**INTERIM ORDER
(I) AUTHORIZING THE DEBTORS TO PAY CERTAIN
PREPETITION CLAIMS OF (A) 503(B)(9) CLAIMANTS, (B) LIEN
CLAIMANTS, (C) FOREIGN CLAIMANTS, (D) CRITICAL VENDORS,
AND (E) HSE SUPPLIERS, (II) CONFIRMING ADMINISTRATIVE EXPENSE
PRIORITY OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order") (a) authorizing the Debtors to pay in the ordinary course of business certain prepetition amounts owing on account of (i) 503(b)(9) Claims, (ii) Lien Claims, (iii) Foreign Claims, (iv) Critical Vendor Claims, and (v) HSE Claims (collectively, the "Trade Claims"); (b) confirming the administrative expense priority status of Outstanding Orders; and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https//cases.ra.kroll.com/Cineworld.  The location of Debtor Cineworld Group plc's principal place of business and the Debtors' service address in these chapter 11 cases is:  8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. A final hearing (the "Final Hearing") on the Motion shall be held on October 6, 2022, at 2:00 p.m., prevailing Central Time. Any objections or responses to entry of a Final Order on the Motion shall be filed on or before 4:00 p.m., prevailing Central Time, on September 30, 2022. In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

2. The Debtors are authorized to pay the prepetition Trade Claims described in the Motion in the ordinary course of business and consistent with their prepetition practices in an aggregate amount not to exceed $137.6 million on an interim basis as set forth in the categories and amounts in the Motion and as the Debtors deem necessary in their sole discretion. In the event the Debtors will exceed the aggregate amounts in any category as detailed in the Motion during the interim period, the Debtors shall file a notice with the Court describing the category and overage amount prior to payments. The Debtors are authorized to pay all undisputed amounts related to the Outstanding Orders in the ordinary course of business consistent with the parties'

customary practices in effect prior to the Petition Date. The Debtors are authorized to pay all undisputed amounts and perform all obligations owed to the Film Studios which arise from the exhibition of motion pictures in the Debtors' theaters on and after the Petition Date or otherwise arise from the postpetition delivery of goods and services by the Film Studios to the Debtors that were ordered by the Debtors prior to the commencement of the Debtors' chapter 11 cases in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date (the "Postpetition Film Studio Obligations"). In the event the Debtors do not fulfill the Postpetition Film Studio Obligations in accordance with the Customary Trade Terms (as defined below) with respect to any Film Studio (a "Default"), the Debtors shall have five (5) business days after notice from such Film Studio of such Default (the "Cure Period") to cure the Default or to file an emergency motion seeking a determination from the Court as to whether a Default occurred. If, upon expiration of the Cure Period, the Debtors have not cured the Default and have not filed an emergency motion seeking a determination from the Court as to whether a Default occurred, the Film Studio may terminate the applicable license related to the Default and cease licensing films to the Debtors. If the Debtors file an emergency motion with the Court and the Court determines that a Default has occurred, the Film Studio may terminate the applicable license and cease licensing films to the Debtors if the Debtors have not cured all Defaults within three (3) business days of the order entered by the Court determining that a Default had occurred. If the Court determines that a Default has not occurred, the applicable license and the Debtors rights thereunder shall remain in full force and effect.

3.  As a condition to receiving payment on account of a Trade Claim under this Interim Order, any Trade Claimant that accepts payment pursuant to the authority granted in this Interim Order shall agree to: (a) (i) other than with respect to the Film Studios, continue—or

3

recommence—supplying goods and services to the Debtors in accordance with trade terms at least as favorable to the Debtors as the most favorable terms in place during the twelve months prior to the Petition Date or (ii) solely with respect to the Film Studios, continue to license films to the Debtors consistent with the manner in which such Film Studio licensed films to the Debtors prior to the Petition Date, which such terms are determined by the applicable Film Studio and the Debtors on a film by film and theater by theater basis and taking into account continuing industry changes ((i) and (ii), as applicable, the "Customary Trade Terms"), and (b) agree that they shall not be permitted to cancel any contract, agreement, or arrangement pursuant to which they provide such goods and/or services to the Debtors during the course of these chapter 11 cases, except as to the Film Studios, as permitted by paragraph 2 hereof. For the avoidance of doubt, nothing contained herein requires the Film Studios to license any particular film or other content to the Debtors. The Debtors shall require that any agreement to Customary Trade Terms be made in writing, either by email or through a Trade Agreement, as a condition to payment. Except with respect to the Film Studios, the Debtors reserve the right to require additional favorable trade terms with any Trade Claimant as a condition to payment of any Trade Claim. For the avoidance of doubt, the Debtors may not waive or modify the Customary Trade Terms. Any party that accepts payment from the Debtors on account of a Trade Claim shall be provided with a copy of this Interim Order.

4.  For the avoidance of doubt, all undisputed obligations related to the Outstanding Orders, including, but not limited to, those obligations that arise from the postpetition delivery of goods and services by the Film Studios to the Debtors that were ordered by the Debtors prior to the commencement of Debtors' chapter 11 cases in the ordinary course of business, will be paid in the ordinary course of business and are granted administrative expense priority status in

accordance with section 503(b)(1)(A) of the Bankruptcy Code. If a disputed amount related to the Outstanding Orders becomes an undisputed amount (by consensual resolution or order of this Court), any such resolved amount shall similarly enjoy administrative expense priority status in accordance with this paragraph.

5. Prior to entry of a Final Order, the Debtors shall not pay any obligations under this Interim Order unless they are due or deemed necessary to be paid in the Debtors' reasonable business judgment to ensure ongoing provision of goods or services or otherwise to avoid an adverse effect on operations.

6. The form of Trade Agreement, substantially in the form attached hereto as **Exhibit A**, is approved in its entirety. The Debtors are authorized to enter into any such Trade Agreements on an interim basis.

7. If any party accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with trade terms consistent with the Customary Trade Terms (subject to the limitations contained in paragraph 3 hereof) and except as to the Film Studios, as permitted by paragraph 2 hereof, then, subject to the entry of the Final Order on the Motion from this Court: any payment on account of a prepetition claim received by such party shall be deemed by the Debtors as an improper postpetition transfer and, therefore, recoverable by the Debtors in cash, provided however, no Trade Claimant shall be required to make such payment unless ordered by the Court to do so through a separate final order. In the event of a dispute regarding whether a Trade Claimant has discontinued supplying goods or services to the Debtors on Customary Trade Terms, the matter will be submitted to the Court for determination.

8. Except as otherwise provided in this Interim Order or a Trade Agreement, nothing contained in the Motion or this Interim Order shall constitute, nor is it intended to constitute: (a) an

admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim or finding that any particular claim is an administrative expense claim or other priority claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Interim Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  Any payment made pursuant to this Interim Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

9. The banks and financial institutions on which checks were drawn or electronic funds transfer requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic funds transfer requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic funds transfer request as approved by this Interim Order.

10. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored

as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any of the Trade Claimants.

11. The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Interim Order including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment, as further described and classified in the Motion; (d) the Debtor or Debtors that made the payment; and (e) the payment date. The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, counsel to the DIP Agent, counsel to the DIP Lenders, and counsel to the Ad Hoc Group, and any statutory committee appointed in these chapter 11 cases within 10 days following the conclusion of each calendar month, beginning upon entry of this Interim Order.

12. For the avoidance of doubt, this Interim Order does not authorize payments to insiders (as such term is defined in section 101(31) of the Bankruptcy Code) of the Debtors.

13. Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Interim Order to a Trade Claimant or on account of an Outstanding Order, the Debtors shall provide such Trade Claimant with a copy of this Interim Order (unless previously provided to such Trade Claimant).

14. Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made or obligation, relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to, the requirements imposed on the Debtors under the terms of any interim or final orders entered by the Court in these chapter 11 cases approving any postpetition financing (the "DIP Orders"). To the extent there is any conflict between this Interim Order and the DIP Orders, the DIP Orders shall govern.

15. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

16.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

17.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

19.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Signed: September 12, 2022

_____
Marvin Isgur
United States Bankruptcy Judge

**<u>Exhibit A</u>**

**Form Trade Agreement**

> **THIS TRADE AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN. ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN. THE INFORMATION IN THIS TRADE AGREEMENT STATEMENT IS SUBJECT TO CHANGE. THIS TRADE AGREEMENT STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## TRADE AGREEMENT

[Cineworld Group plc] (the "Company"), on the one hand, and the supplier identified in the signature block below (the "Supplier"), on the other hand, hereby enter into the following trade agreement (this "Trade Agreement") dated as of the latest date in the signature blocks below.

### Recitals

WHEREAS on September 7, 2022 at 9:39 a.m. (prevailing Central Time) (the "Petition Date"), the Company and certain of its indirect and direct subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

WHEREAS on [●], 2022, the Court entered its *Interim Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) 503(b)(9) Claimants, (B) Lien Claimants, (C) Foreign Claimants, (D) Critical Vendors, and (E) HSE Suppliers, (II) Confirming Administrative Expense Priority of Outstanding Orders, and (III) Granting Related Relief* (the "Critical Vendor Order") [Docket No. [●]] authorizing the Debtors on [an interim/a final] basis, under certain conditions, to pay the prepetition claims of certain suppliers, including the Supplier, subject to the terms and conditions set forth therein.[1]

WHEREAS prior to the Petition Date, the Supplier delivered goods to the Company and/or performed services for the Company, and the Company paid the Supplier for such goods and/or services, according to Customary Trade Terms (as defined herein).

WHEREAS the Company and the Supplier (each a "Party," and collectively, the "Parties") agree to the following terms as a condition of payment on account of certain prepetition claims the Supplier may hold against the Company.

### Agreement

1.     Recitals. The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.     Supplier Payment. The Supplier represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to the Supplier as of the Petition

---

[1]   Capitalized terms used but not defined herein shall have the meanings set forth in the Critical Vendor Order.

Date is $[__] (the "Agreed Supplier Claim"). Following execution of this Trade Agreement, the Company shall pay the Supplier $[__] on account of its Agreed Supplier Claim (the "Supplier Payment") (without interest, penalties, or other charges), as such invoices become due and payable. If the Supplier Payment is equal to the Agreed Supplier Claim, then such Supplier Payment shall be in full and final satisfaction of such Agreed Supplier Claim. If the Supplier Payment is less than the Agreed Supplier Claim, then the Supplier shall have a general unsecured claim equal to the difference between the Agreed Supplier Claim and the Supplier Payment. For the avoidance of doubt, any amounts due and owing by the Company to the Supplier for good or services provided after the Petition Date shall continue to be due and owing, which shall be paid in the ordinary course with the Parties' agreed-upon payment terms.

    3.    <u>Agreement to Supply</u>.

        a.    The Supplier shall supply goods (including films as applicable) to and/or perform services for the Company, and the Company shall accept and pay for goods and/or services, or films, as applicable, from the Supplier (to the extent the Company seeks such goods and/or services), for the duration of the Debtors' chapter 11 cases based on the following terms (the "Customary Trade Terms"): (i) other than with respect to the Film Studios, those trade terms at least as favorable to the Company as the most favorable terms in place in the twelve months prior to the Petition Date; or (ii) solely with respect to the Film Studios, consistent with the manner in which the Supplier licensed films to the Company prior to the Petition Date, which such terms were determined by the Supplier and the Company on a film by film and theater by theater basis and taking into account continuing industry changes.[2] "Duration of the Debtors' chapter 11 cases" means until the earlier of: (i) the effective date of a chapter 11 plan in the Company's chapter 11 cases; (ii) the closing of a sale of all or a material portion of the Company's assets pursuant to Bankruptcy Code section 363 resulting in a cessation of the Company's business operations; or (iii) the liquidation of the Company or conversion of the Debtor's chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

        b.    The Supplier shall continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business; *provided* that the Debtors shall perform any postpetition obligations arising under such contract, agreement, or arrangement subject the Customary Trade Terms.

        c.    The Supplier shall continue all shipments of goods in the ordinary course and shall fill orders for goods requested by the Company in the ordinary course of business pursuant to the Customary Trade Terms.

---

[2] For the avoidance of doubt, nothing contained herein requires the Film Studios to license any particular film or other content to the Debtors.

    d.    The Supplier shall not be permitted to cancel any contract, agreement, or arrangement pursuant to which they provide services to the Debtors for the duration of the Debtors' chapter 11 cases.

4. <u>Other Matters</u>.

    a.    The Supplier agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Debtors' chapter 11 cases on account of any outstanding administrative claims the Supplier may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. The Supplier agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect.

    b.    The Debtors' plan shall not vary the terms of this Trade Agreement. The terms contained within this Trade Agreement shall (a) be binding on any later appointed chapter 11 trustee, examiner, committee, plan administrator, and other fiduciaries of the Debtors and their estates, and (b) survive any conversion or dismissal of any of the Debtors' chapter 11 cases.

    c.    The Supplier will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 case.

    d.    The Supplier will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to the Supplier by the Company arising from prepetition agreements or transactions. Furthermore, if the Supplier has taken steps to file or assert such a lien prior to entering into this Trade Agreement, the Supplier will promptly take all necessary actions to remove such liens and hereby authorizes the Company to take any such actions on its behalf.

5. <u>Breach</u>.

    a.    In the event that the Supplier fails to satisfy its undisputed obligations arising under this Trade Agreement (a "<u>Supplier Breach</u>"), upon written notice to the Supplier, the Supplier shall promptly pay to the Company immediately available funds in an amount equal to the Supplier Payment.

    b.    The Supplier agrees and acknowledges that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the Company. Accordingly, the Supplier agrees that, in the event of a Supplier Breach, the Company shall have the right, in addition to

any other rights and remedies existing in its favor, to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance and/or other equitable relief. The right to equitable relief, including specific performance, in the event of a Supplier Breach, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. The Supplier hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for specific performance or other equitable remedies.

6. <u>Notice</u>.

If to the Supplier, then to the person and address identified in the signature block hereto.

If to the Company:

Cineworld Group Plc
[_____]
[_____]
Attn: [_____]

-and-

If to Proposed Co-Counsel to the Debtors:

Kirkland & Ellis LLP
601 Lexington Avenue, New York, New York, 10022
Attn:   Christine Okike, P.C. and Ciara Foster
E-mail: christine.okike@kirkland.com
        ciara.foster@kirkland.com

7. <u>Representations and Acknowledgements</u>. The Parties agree, acknowledge and represent that:

    a. the Parties have reviewed the terms and provisions of the Critical Vendor Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Critical Vendor Order;

    b. any payments made on account of the Agreed Supplier Claim shall be subject to the terms and conditions of the Critical Vendor Order;

    c. if the Supplier refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available

4

        under the Critical Vendor Order, the Bankruptcy Code, or applicable law; and

    d.    in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from the Supplier to the Company, until a ruling of the Court is obtained.

8.    <u>Confidentiality</u>.  In addition to any other obligations of confidentiality between the Supplier and Company, the Supplier agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "<u>Confidential Information</u>"); *provided* that if any party seeks to compel the Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or the Supplier intends to disclose any or all of the Confidential Information, the Supplier shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; *provided*, *further,* that if such remedy is not obtained, the Supplier shall furnish only such information as the Supplier is legally required to provide; *provided, further,* that the Supplier may disclose this Trade Agreement in any action to enforce the Trade Agreement against the Company.

9.    <u>Miscellaneous</u>.

    a.    The Parties hereby represent and warrant that:  (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

    b.    This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  This Trade Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by both Parties.  In the event of any inconsistency between the terms of this Trade Agreement and the terms of the Critical Vendor Order, the Critical Vendor Order shall prevail.

    c.    Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

    d.    This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

    e.    The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement.

f. This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[*Signature Page Follows*]

AGREED AND ACCEPTED AS OF THE LATEST DATE SET FORTH BELOW:

**[DEBTOR ENTITY]**  **[SUPPLIER]**

By: [●]  By:
Title: [●]  Title:
　　　　　　　　　　　　　　　Address:

　　　　　　　　　　　　　　　Date: