**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CINEWORLD GROUP PLC, *et al.*,[1] | ) | Case No. 22-90168 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' SECOND OMNIBUS MOTION
FOR ENTRY OF AN ORDER (I) AUTHORIZING
(A) REJECTION OF CERTAIN UNEXPIRED LEASES OF
NON-RESIDENTIAL REAL PROPERTY AND (B) ABANDONMENT
OF CERTAIN PERSONAL PROPERTY, IF ANY, EACH EFFECTIVE
AS OF THE REJECTION DATE, AND (II) GRANTING RELATED RELIEF**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

> **Parties receiving this motion should locate their respective names and leases on the list of rejected leases on <u>Schedule 1</u> to the proposed Order.**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state

the following in support of this motion (this "<u>Motion</u>"):[2]

---

1   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/cineworld. The location of Debtor Cineworld Group plc's principal place of business and the Debtors' service address in these chapter 11 cases is: 8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom.

2   The facts and circumstances supporting this Motion are set forth in (a) the *Declaration of Israel Greidinger, Deputy Chief Executive Officer of Cineworld Group plc, in Support of the Debtors' Chapter 11 Petitions* [Docket No. 19] (the "<u>Greidinger First Day Declaration</u>") and (b) the *Declaration of James A. Mesterharm, Chief Restructuring Officer of Cineworld Group plc, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 80] (together with the Greidinger First Day Declaration, the "<u>First Day Declarations</u>"), each incorporated by reference herein. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declarations.

**Relief Requested**

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), (a) authorizing the Debtors to (i) reject certain unexpired leases, including any amendments or modifications thereto (each, a "Lease," and collectively, the "Leases") for non-residential real property located at the premises (collectively, the "Premises") listed on Schedule 1 to the Order and (ii) abandon certain equipment, fixtures, furniture, or other personal property (collectively, the "Personal Property") that may be located at the Premises, each effective as of the rejection date listed on Schedule 1 to the Order (the "Rejection Date"), and (b) granting related relief.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157 (b).  The Debtors confirm their consent to the entry of a final order by the Court.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 365(a), and 554(a) of title 11 of the United States Code (the "Bankruptcy Code"), rule 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(b) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

5.      Cineworld Group plc ("Cineworld," and together with its Debtor and non-Debtor affiliates, the "Group") is unwavering in its vision to be "The Best Place to Watch a Movie."  As the second-largest cinema chain in the world by number of screens, the Group brings its vision to life each day in modern cinemas with cutting-edge technology.  Headquartered in Brentford,

United Kingdom, the London Stock Exchange-listed company, operating under five major brands, employs a global workforce of approximately 30,000 employees and operates 747 locations with 9,139 screens in 10 countries.

6.    On September 7, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases are set forth in greater detail in the First Day Declarations.

7.    On the Petition Date, the Court entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1 [Docket No. 32].  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On September 23, 2022, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 419].  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## Leases to Be Rejected

8.    As set forth in detail in the First Day Declarations, the Debtors' businesses have been acutely impacted by the global spread of COVID-19 and its attendant consequences, including a decline in cinema attendance and a rise in online streaming.  As a result, the Debtors—who are parties to hundreds of leases for their movie theater locations—have taken critical steps since COVID-19 was first declared a global pandemic in March 2020 to ease the financial burden caused by underperforming theaters—many of which are subject to off-market lease terms.  Over the past two years, the Debtors, through extensive good-faith and arm's-length negotiations with their landlords, reached agreement on various lease restructurings that provided for, among other

3

things, the deferral of rent.  While such actions have provided breathing room for the Debtors as the cinema industry rebounds from a once-in-a-century global pandemic, they have not delivered a comprehensive long-term solution to the Debtors' problems.  The Debtors' U.S. theater portfolio is a significant contributing factor to their current financial challenges.  Primarily due to the impact of deferred rent payments, the Debtors estimate that the average monthly rent obligations per theater increased by almost 30% year-to-date July 2022 compared to full-year 2019.

9.      In the lead up to these chapter 11 cases, the Debtors undertook an extensive analysis of their U.S. lease portfolio as part of formulating a revised, go-forward business plan.  The objective of that analysis has been, and continues to be, identifying unprofitable theater locations in the United States.  In parallel with that analysis, which remains ongoing postpetition, the Debtors and their advisors, including their proposed real estate advisor, A&G Realty Partners, LLC, are engaging in an analysis of the Debtors' entire lease portfolio, and have already commenced active negotiations with certain of the Debtors' U.S. landlords.  The Debtors are hopeful that these negotiations will lead to lease concessions and modifications that will obviate the need for rejection and allow additional theater sites to remain open.

10.     Since the filing of these chapter 11 cases, the Debtors have already taken steps to right-size their lease portfolio.  On September 7, 2022, the Debtors filed the *Debtors' First Omnibus Motion for Entry of an Order (I) Authorizing (A) Rejection of Certain Unexpired Leases of Non-Residential Real Property and (B) Abandonment of Certain Personal Property, if any, Each Effective as of the Rejection Date, and (II) Granting Related Relief* [Docket No. 26], pursuant to which the Debtors are seeking to reject 20 leases.  The Debtors will continue to work with their advisors, landlords, and other parties in interest to maximize value for their estates through their lease rationalization strategy.

4

11.     In the meantime, as of the date hereof, the Debtors have determined, in their business judgment, that certain unexpired leases for U.S. theater sites are unnecessary and burdensome to the Debtors' estates.  Rejection of these Leases will reduce high fixed operational costs and better position the Debtors to conduct competitive operations going forward, to the benefit of their estates.  Notably, none of the locations that are the subject of these Leases currently maintain active theater operations and therefore are providing no benefits to the Debtors' estates. In fact, the Debtors already vacated the Premises of each Lease well in advance of the Petition Date.  As such, the Debtors seek to reject these additional 6 Leases effective as of the Rejection Date.  In total, rejecting the Leases will save the Debtors' estates approximately $5 million.

**<u>Personal Property to Be Abandoned</u>**

12.     To the extent that any Personal Property remains at the Premises as of the Rejection Date, the Debtors have evaluated such Personal Property and have determined either that (a) the Personal Property is of inconsequential value or (b) the cost of removing and storing the Personal Property for future use, marketing, or sale exceeds its value to the Debtors' estates.  Because the Debtors have ceased operations at the Premises prior to the Rejection Date, the Personal Property, if any, will no longer be necessary for the administration of the Debtors' estates.

13.     To reduce postpetition administrative costs and, in the exercise of the Debtors' sound business judgment, the Debtors believe that the abandonment of the Personal Property that may be located at each of the Premises, if any, is appropriate and in the best interests of the Debtors, their estates, and their creditors.

14.     In light of the Debtors' efforts to preserve and maximize the value of their estates, which will inure to the benefit of all creditors, and to avoid incurring costs and expenses that are

no longer integral to the Debtors' business operations and their chapter 11 efforts, the relief requested herein is necessary and appropriate.

<u>**Basis for Relief**</u>

**I.     Rejection of the Leases Is an Exercise of the Debtors' Business Judgment.**

15.     The Bankruptcy Code enables a debtor in possession to reject certain unexpired leases of the debtor that are for non-residential real property, subject to the court's approval. 11 U.S.C. § 365(a).   "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco Petrol., Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)); *see also In re Orion Pictures Corp.*, 4 F.3d 1095, 1098–99 (2d Cir. 1993) (noting that rejection permits the debtor to renounce title to and abandon burdensome property).   Courts generally authorize debtors to reject unexpired leases where the debtors appropriately exercise their "business judgment." *See In re Mirant Corp.*, 378 F.3d 511, 524 (5th Cir. 2004); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Pisces Energy, LLC*, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009).   Third parties are generally not permitted to second-guess a debtor's business judgment concerning the rejection of an executory contract or unexpired lease. The "business judgment" test merely requires a showing that rejection of the unexpired lease will benefit the debtor's estate. *See In re Pisces Energy*, 2009 WL 7227880, at *6 ("In the absence of a showing of bad faith . . . the debtor's business judgment will not be altered."); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim or caprice.") (internal quotations omitted).

16.     As an integral component of their efforts to preserve and maximize the value of their estates and reduce their potential administrative costs in these chapter 11 cases by, among other things, eliminating unnecessary costs, the Debtors have determined, in their business judgment, that the Leases are burdensome and provide no economic value to their estates.  The Leases are unnecessary to the Debtors' go-forward business operations and, if not rejected, could potentially be a drain on the Debtors' estates and a hindrance to their chapter 11 efforts.  Any continued expense in maintaining the Leases and attempting to market such agreements would likely outweigh, if not eclipse, any benefit in attempting to identify a potential acquirer of the Leases and unnecessarily deplete assets of the Debtors' estates, to the detriment of creditors.  In contrast, rejection of the Leases will represent a significant monthly cost savings to the Debtors' estates moving forward.

## II.     It Is Appropriate to Deem the Leases as Rejected Effective as of the Rejection Date.

17.     Section 365 of the Bankruptcy Code does not specifically address whether this Court may order rejection to be applied retroactively.  *See In re Amber's Stores, Inc.*, 193 B.R. 819, 825–27 (Bankr. N.D. Tex. 1996) ("[N]othing precludes [the court] . . . from approving . . . rejection of a non-residential real property lease retroactively to an earlier date."); *In re CCI Wireless, LLC*, 297 B.R. 133, 138 (D. Colo. 2003) (noting that section 365 "does not prohibit the bankruptcy court from allowing the rejection of leases to apply retroactively").  Many courts have held that bankruptcy courts may exercise discretion to authorize rejections to be effective retroactively to a date prior to entry of the order authorizing such rejection where the balance of equities favor such relief.  *See, e.g.*, *In re Amber's Stores*, 193 B.R. at 826 (using a standard based on the equities of the case); *BP Energy Co. v. Bethlehem Steel Corp.*, 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) ("[W]e cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this

7

solution."); *see also In re Stonebridge Techs., Inc.*, 430 F.3d 260, 273 (5th Cir. 2005) ("[W]e note that most courts have held that lease rejection may be retroactively applied."); *In re At Home Corp.*, 392 F.3d 1064, 1065–66 (9th Cir. 2004) (affirming bankruptcy court's approval of retroactive rejection); *In re Thinking Machs., Corp.*, 67 F.3d 1021, 1028 (1st. Cir. 1995) ("[B]ankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation.").  Courts examine a number of factors when considering whether to approve retroactive rejection, including the costs that a delayed rejection date would otherwise impose on a debtor.  *See In re Jamesway Corp.*, 179 B.R. 33, 38–39 (S.D.N.Y. 1995).

18.     In this instance, the balance of equities favors approving rejection retroactive to the Rejection Date.  The applicable Leases do not provide—and have not provided for some time— any benefit to the Debtors' estates.  The Debtors vacated the Premises associated with each applicable Lease well before the Petition Date, and the Debtors and their estates only stand to benefit once they are rejected.  The Leases are unprofitable and relate to theaters that have zero customer foot traffic.  Further, failure to approve rejection effective as of the Rejection Date would result in the Debtors incurring unnecessary administrative costs associated with the Leases.  In light of the foregoing, the balance of equities favors approving rejection retroactive to the Rejection Date.

### III.   The Personal Property Is De Minimis in Value and/or Burdensome to Remove From the Premises; and Abandonment Will Not Prejudice the Lessors.

19.     The Debtors have satisfied the standard set forth in section 554(a) of the Bankruptcy Code, granting them authority to abandon the Personal Property.  Section 554(a) provides that a debtor in possession may abandon, subject to court approval, "property of the estate that . . . is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  A bankruptcy court may

authorize property to be abandoned when either (a) the property is burdensome to the estate or (b) the property is of inconsequential value and benefit to the estate. *See, e.g.*, *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 499–500 (1986).

20.     Although the Debtors already vacated the Premises associated with the Leases, the Debtors anticipate that Personal Property could remain on the Premises at certain properties where removal would not be feasible and/or would provide nominal or no value to the Debtors or their estates.  Therefore, this Court should find that authority to abandon the Personal Property in accordance with section 554(a) of the Bankruptcy Code is warranted.

21.     The Debtors request that the abandonment of the Personal Property be effective as of the Rejection Date, which is also the proposed effective date of rejection of the Leases.

22.     In light of the foregoing facts and circumstances, rejection of the Leases under section 365(a) of the Bankruptcy Code is a sound exercise of the Debtors' business judgment and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors.  The balance of equities supports granting rejection of the Leases effective retroactive to the Rejection Date.  Finally, the Debtors' abandonment of certain Personal Property may and should be authorized because it represents inconsequential value to the Debtors' estates.

**<u>Reservation of Rights</u>**

23.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim

or other priority claim; (e) other than as set forth herein and on <u>Schedule 1</u> attached to the Order, a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended, and should not be construed as, an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## <u>Notice</u>

24.     The Debtors have provided notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Committee; (d) the agent under the Prepetition Priming Facility, and counsel thereto; (e) the agent under the Prepetition Legacy Term Facilities, and counsel thereto; (f) the agent under the Revolving Credit Facility, and counsel thereto; (g) counsel to the ad hoc group of Prepetition Revolving Lenders; (h) counsel to the Ad Hoc Term Loan Group; (i) the agent under the Settlement Facility, and counsel thereto; (j) counsel to lenders under the Settlement Facility; (k) the trustee under the Convertible Bonds, and counsel thereto; (l) counsel to the ad hoc group of holders of Convertible Bonds; (m) the agent under the DIP Facility and counsel thereto; (n) the Office of the United States Attorney for the Southern District of Texas; (o) the state attorneys general for states in which the Debtors conduct business;

(p) the Internal Revenue Service; (q) the Securities and Exchange Commission; (r) the Environmental Protection Agency; (s) other governmental agencies having a regulatory or statutory interest in these cases; (t) counterparties to the Leases; and (u) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated:  September 30, 2022

/s/ *Matthew D. Cavenaugh*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Rebecca Blake Chaikin (S.D. Bar No. 3394311)
Veronica A. Polnick (TX Bar No. 24079148)
Vienna Anaya (TX Bar No. 24091225)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone:	(713) 752-4200
Facsimile:	(713) 752-4221
Email:	mcavenaugh@jw.com
	rchaikin@jw.com
	vpolnick@jw.com
	vanaya@jw.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Christopher Marcus, P.C. (admitted *pro hac vice*)
Christine Okike, P.C. (admitted *pro hac vice*)
Ciara Foster (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:	(212) 446-4800
Facsimile:	(212) 446-4900
Email:	joshua.sussberg@kirkland.com
	christopher.marcus@kirkland.com
	christine.okike@kirkland.com
	ciara.foster@kirkland.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

## **Certificate of Service**

I certify that on September 30, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/  Matthew D. Cavenaugh*
Matthew D. Cavenaugh