**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

|  |  |
|---|---|
| <u>In re</u> | Chapter 11 |
| **CINEWORLD GROUP PLC, et al.,** | **Case No 22-90168 (MI)** |
| Debtors. | **(Jointly Administered)** |

## STATEMENT OF FINANCIAL AFFAIRS FOR

**United Artists Theatre Circuit, Inc.**

**Case No: 22-90212 (MI)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CINEWORLD GROUP PLC, *et al.,*[1] | ) Case No. 22-90168 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**GLOBAL NOTES AND
STATEMENT OF LIMITATIONS, METHODOLOGY,
AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES
OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

The Schedules of Assets and Liabilities (collectively, the "Schedules") and the Statements of Financial Affairs (collectively, the "Statements," and, together with the Schedules, the "Schedules and Statements"), filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"), were prepared, pursuant to section 521 of title 11 of the United States Code (the "Bankruptcy Code"), rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 1007-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), by management of the Debtors, with the assistance of the Debtors' advisors.  The Schedules and Statements are unaudited.

These *Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "Global Notes") are incorporated by reference in, and comprise an integral part of, all of the Schedules and Statements, and should be referred to and considered in connection with any review of the Schedules and Statements.[2]

The Schedules and Statements have been signed by Nisan Cohen, Chief Financial Officer of Cineworld Group plc.  Mr. Cohen is an authorized signatory for each of the Debtors.  In reviewing and signing the Schedules and Statements, Mr. Cohen necessarily relied upon the efforts, statements,

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https//cases.ra.kroll.com/Cineworld. The location of Debtor Cineworld Group plc's principal place of business and the Debtors' service address in these chapter 11 cases is 8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom.

[2]   These Global Notes supplement and are in addition to any specific notes contained in each Debtor's Schedules or Statements.  The fact that the Debtors have prepared a Global Note with respect to any of an individual Debtor's Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' other Schedules and Statements, as appropriate.

and representations of the Debtors' other personnel and advisors.  Mr. Cohen has not (and could not have) personally verified the accuracy of each such statement and representation, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and respective creditor addresses.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation.  Although the Debtors have made every reasonable effort to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements.  As a result, inadvertent errors or omissions may exist.  For the avoidance of doubt, the Debtors reserve all of their rights to amend and supplement the Schedules and Statements as may be necessary or appropriate.

The Debtors and their agents, attorneys, and advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein or the Schedules and Statements.  In no event shall the Debtors or their agents, attorneys, and advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and advisors are advised of the possibility of such damages.  The Debtors and their agents, attorneys, and advisors expressly do not undertake any obligation to update, modify, revise, or re—categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by applicable law or order of the Bankruptcy Court.

Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

### Global Notes and Overview of Methodology

1.   **Description of the Cases**.  On September 7, 2022 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").  On the Petition Date, the Bankruptcy Court entered the *Order Directing Joint Administration of the Chapter 11 Cases* [Docket No. 32], authorizing joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.  The chapter 11 cases are being jointly administered under Case No. 22-90168 (MI).  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On September 23, 2022, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 419].  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  Notwithstanding the joint administration of the

Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements.

2. **Global Notes Control**.  These Global Notes pertain to and comprise an integral part of each of the Debtors' Schedules and Statements and should be referenced in connection with any review thereof.  In the event that the Schedules and Statements differ from the Global Notes, the Global Notes shall control.

3. **"As Of" Information Date**.  To the best of the Debtors' knowledge and except as otherwise noted herein, the asset information provided herein represents the asset data of the Debtors as of August 31, 2022, the date of the Debtors' month-end closure to their balance sheet, and the liability information herein represents the liability data of the Debtors as of the close of business on the Petition Date.  Amounts ultimately realized may vary from net book value (or the applicable value ascribed herein) and such variance may be material.  Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein.  In addition, the amounts showing for total liabilities exclude items identified as "unknown," "disputed," "contingent," or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.

4. **Reservations and Limitations**.  Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist.  The Debtors reserve all rights to amend and supplement the Schedules and Statements as may be necessary or appropriate.  Nothing contained in the Schedules and Statements constitutes a waiver of any of the Debtors' rights or an admission of any kind with respect to these chapter 11 cases, including, but not limited to, any rights or claims of the Debtors against any third party or issues involving substantive consolidation, equitable subordination, or defenses or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code or any other relevant applicable bankruptcy or non-bankruptcy laws to recover assets or avoid transfers.  Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

   (a) **No Admission.**  Nothing contained in the Schedules and Statements is intended as, or should be construed as, an admission or stipulation of the validity of any claim against the Debtors, any assertion made therein or herein, or a waiver of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

   (b) **Recharacterization**.  Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized, designated or omitted certain items due to the complexity and size of the Debtors' businesses.  Accordingly, the Debtors reserve all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

(c)  **Classifications.**  Listing (i) a claim on Schedule D as "secured," (ii) a claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract.

(d)  **Claims Description**.  Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtors that such claim or amount is not "contingent," "unliquidated," or "disputed." The Debtors reserve all of their rights to dispute, or to assert offsets or defenses to, any claim reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, or classification, or to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed." Moreover, the Debtors reserve all of their rights to amend their Schedules and Statements as necessary and appropriate, including but not limited to, with respect to claim descriptions and designations.  Listing a claim does not constitute an admission of (a) liability or (b) amounts due or owed, if any, in each case, by the Debtor against whom the claim is listed or by any of the other Debtors.

(e)  **Estimates and Assumptions**.  To prepare and file the Schedules and Statements in accordance with the deadline ordered by the Bankruptcy Court in these chapter 11 cases, management was required to make reasonable estimates and assumptions that affected the reported amounts of these assets and liabilities.  The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

(f)  **Causes of Action**.  Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets. The Debtors reserve all of their rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment, and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (collectively, "Causes of Action") they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

(g)  **Intellectual Property Rights**.  Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been

abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner, however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another. Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

(h)     **Insiders**. In the circumstance where the Schedules and Statements require information regarding "insiders," the Debtors have included information with respect to the individuals and entities who the Debtors believe would be included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods. Such individuals may no longer serve in such capacities.

The listing or omission of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed as an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved. Parties listed as "insiders" have been included for informational purposes only, and such information may not be used for the purposes of determining (a) control of the Debtors; (b) the extent of which any party exercised management responsibilities or functions; (c) corporate decision making authority over the Debtors; or (d) whether the Debtors or any such insider could successfully argue that such party is not an "insider" under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability; or (e) for any other purpose.

(i)     **Personally Identifiable Information**. The United Kingdom Data Protection Act of 2018 and the United Kingdom General Data Protection Regulation (together, the "UK GDPR"), European General Data Protection Regulation (the "EU GDPR"), and similarly applicable laws in other jurisdictions (collectively, the "DP Legislation") restrict "data controllers," which includes the Debtors, from disclosing personal data in certain circumstances . The DP Legislation defines personal data as "any information relating to an identified or identifiable natural person; an identifiable natural person is one who can be identified, directly or indirectly, in particular by reference to an identifier such as a name, an identification number, location data, an online identifier or to one or more factors specific to the physical, physiological, genetic, mental, economic, cultural or social identity of that natural person." Violation of the DP Legislation could subject the Debtors to serious financial penalties or other pecuniary actions. To avoid any conflict with the DP Legislation and other applicable regulations, the Schedules and Statements do not contain personal data that is protected by such policies.[3] Payments made to non-insider individuals, or liabilities

---

[3]     The Creditor Matrix Order (as defined below) authorizes the Debtors to redact personally identifiable information that is protected by the DP Legislation. *See* Creditor Matrix Order, ¶ 3.

owed to non-insider individuals may have been excluded from the Schedules and Statements.

5. **Methodology**.

(a) **Basis of Presentation**. For financial reporting purposes, prior to the Petition Date, the Debtors and certain of their non-Debtor affiliates ordinarily prepared consolidated financial statements. Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under United Kingdom-adopted International Accounting Standards (applying the exemptions available under FRS 101 "Reduced Disclosure Framework"). These Schedules and Statements do not purport to represent financial statements prepared in accordance with United Kingdom-adopted International Accounting Standards (applying the exemptions available under FRS 101 "Reduced Disclosure Framework"), or any other such applicable standards, nor are they intended to fully reconcile to the financial statements prepared by the Debtors. Unlike the consolidated financial statements, these Schedules and Statements reflect the assets and liabilities of each separate Debtor, except where otherwise indicated. Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.

Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, this is not an admission that the Debtor was solvent as of the Petition Date or at any time prior to the Petition Date. Likewise, to the extent a Debtor shows more liabilities than assets, this is not an admission that the Debtor was insolvent at the Petition Date or any time prior to the Petition Date. For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value.

(b) **Confidential or Sensitive Information**. There may be instances in which the Debtors deemed it necessary and appropriate to redact certain information due to the nature of an agreement between a Debtor and a third party, concerns about the confidential or commercially sensitive nature of certain information, or concerns for the privacy of an individual. For example, the Debtors have not listed individual customer accounts receivable balance information as the Debtors consider their customer list to be proprietary and confidential. The alterations are limited to only what is necessary to protect the Debtor or third party and are consistent with the relief granted under the *Order (I) Waiving the Requirement to File a List of Equity Security Holders, (II) Authorizing the Debtors to Redact Certain Personal Identification Information, (III) Approving the Form and Manner of Notice of the Commencement, and (IV) Granting Related Relief* [Docket No. 207] (the "Creditor Matrix Order").

(c) **Duplication.** Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in multiple parts of the Statements and Schedules. To the extent

these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

(d) **Umbrella or Master Agreements**.  Contracts and leases listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors.  Where relevant, such agreements have been listed in the Schedules and Statements only of the Debtor that signed the original umbrella or master agreement.  Other Debtors, however, may be liable together with such Debtor on account of such agreements and the Debtors reserve all rights to amend the Schedules and Statements to reflect changes regarding the liability of the Debtors with respect to such agreements, if appropriate.  Additionally, by listing an umbrella or master agreement in these Schedules and Statements, the Debtors make no representation as to the severability of such agreements and their related contracts and leases, including any subleases, and the Debtors reserve any and all rights with respect to any arguments or claims it may have in regard to the severability of such agreements.

(e) **Executory Contracts**.  Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so due to the complexity and size of the Debtors' businesses.  Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend, supplement, or otherwise modify Schedule G.

The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of diligent efforts to identify such documents.  In addition, although the Debtors have made diligent attempts to properly identify executory contracts and unexpired leases, the inclusion of a contract or lease on Schedule G does not constitute an admission as to the executory or unexpired nature (or non-executory or expired nature) of the contract or lease, or an admission as to the existence or validity of any claims held by any counterparty to such contract or lease.  Furthermore, while the Debtors have made diligent attempts to properly identify all executory contracts and unexpired leases, inadvertent errors, omissions, or over inclusion may have occurred.

(f) **Unexpired Leases**.  The Debtors have not included in the Schedules and Statements the future obligations of any capital or operating leases.  To the extent that there was an amount outstanding as of the Petition Date, the creditor has been included on Schedule E/F.

(g) **Valuation**.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations of all of their assets. Accordingly, unless otherwise indicated, net book values of the Debtors' assets as of August 31, 2022 are reflected on the Schedules and Statements. Exceptions to this include operating cash and certain other assets. Operating cash is

presented at bank balance as of September 6, 2022. Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may differ materially from fair market values. Amounts ultimately realized may vary from net book value (or whatever value was ascribed) and such variance may be material. Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein.  In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.  Also, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value. The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset.  Given, among other things, the current market valuation of certain assets and the valuation and nature of certain liabilities, nothing in the Debtors' Schedules and Statements shall be, or shall be deemed to be an admission that any Debtor was solvent or insolvent as of the Petition Date.

(h)     **Property and Equipment**.   Unless otherwise indicated, owned property and equipment are stated at net book value.  The Debtors may lease furniture, fixtures, and equipment from certain third party lessors.  Any such leases are set forth in the Schedules and Statements.  Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease, including whether any lease is a true lease or a financing arrangement, and the Debtors reserve all of their rights with respect thereto.

(i)     **Inventory**.  The Debtors' inventory is comprised of finished merchandise and is listed at average cost.

(j)     **Contingent Assets**.  The Debtors believe that they may possess certain claims and causes of action against various parties.  Additionally, the Debtors may possess contingent claims in the form of various avoidance actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws.  The Debtors, despite reasonable efforts, may not have set forth all of their causes of action against third parties as assets in their Schedules and Statements.  The Debtors reserve all of their rights with respect to any claims, causes of action, or avoidance actions they may have and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or causes of action or in any way prejudice or impair the assertion of such claims.

Additionally, prior to the relevant Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of business against third parties seeking monetary damages.  Refer to each Schedule, Part 11, Question 74, for lawsuits commenced prior to the relevant Petition Date in which the Debtor was a plaintiff.

(k)   **Unliquidated Claim Amounts**.  Claim amounts that could not be quantified by the Debtors are scheduled as "unliquidated."

(l)   **Undetermined Amounts.** The description of an amount as "undetermined" is not intended to reflect upon the materiality of such amount.

(m)   **Totals**.  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements.  To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.  The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.  To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules and Statements are inclusive of each Debtor's guarantor obligations.

(n)   **Allocation of Liabilities.**  The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change.  The Debtors reserve the right to amend the Schedules as they deem appropriate in this regard.

(o)   **Paid Claims.**  Pursuant to certain orders of the Bankruptcy Court entered in these chapter 11 cases (collectively, the "<u>First Day Orders</u>"), the Debtors were authorized to pay, among other things, certain prepetition claims of employees, lien claimants, foreign claimants, critical vendors, health, safety, environmental, and regulatory suppliers, customers, claimants under section 503(b)(9) of the Bankruptcy Code, and taxing authorities.  Accordingly, these liabilities may have been or may be satisfied in accordance with such First Day Orders.  Regardless of whether such claims are listed in the Schedules and Statements, to the extent such claims are paid pursuant to an order of the Bankruptcy Court (including the First Day Orders), the Debtors reserve all rights to amend, supplement, or otherwise modify the Schedules and Statements.

(p)   **Other Paid Claims.**  To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Debtors' Schedules and Statements, and shall be enforceable by all parties, subject to any necessary Bankruptcy Court approval.  To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend, supplement, or otherwise modify the Schedules and Statements and take such other actions, including the filing of claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

(q)   **Credits and Adjustments**.  The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors.  The Debtors reserve all of their rights with regard

9

to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

(r) **Intercompany Claims**.  Receivables and payables among and between Debtors are reported on Statement 4, Schedule A/B, and Schedule E/F, respectively, per the Debtors' books and records. The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission of the characterization of such balances as debt, equity, or otherwise or an admission as to the validity of such receivables and payables. For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables, including, but not limited to, with respect to the characterization of intercompany claims, loans, and notes. Without limiting the generality of the foregoing, certain intercompany receivables and payables among and between the Debtors have been consolidated and netted in the Debtors' books and records. Such treatment is not, and should not be construed as, an admission of the amount and/or validity of any such intercompany receivables and payables or the validity of any netting or offset per the Debtors' books and records. The Debtors take no position in these Schedules and Statements as to whether any such amounts would be allowed as a claim or an interest, or not all allowed at all. The listing of these amounts is not necessarily indicative of the ultimate recovery, if any, on any intercompany asset account or the impairment or claim status of any intercompany liability account. The Debtors reserve all rights to later change the amounts, characterization, classification, categorization or designation of intercompany accounts reported in the Schedules and Statements.

Prior to the Petition Date, the Debtors routinely engaged in intercompany transactions (collectively, "Intercompany Transactions") resulting in intercompany payables and receivables (the "Intercompany Claims").  Pursuant to the *Interim Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System and Maintain Existing Bank Accounts, (B) Continue to Perform Intercompany Transactions, and (C) Maintain Existing Business Forms and Books and Records and (II) Granting Related Relief* (the "Cash Management Order") [Docket No. 174], the Debtors received the authority to continue to collect, concentrate and disburse cash in accordance with the Cash Management System (as defined in the Cash Management Order), including Intercompany Transactions between Debtors and other Debtors or non-Debtor affiliates.  To the extent that an Intercompany Claim has been satisfied pursuant to the Cash Management Order, such Intercompany Claim is excluded from Schedule AB and Schedule E/F.

In addition, certain of the Debtors act on behalf of other Debtors.  Reasonable efforts have been made to indicate the ultimate beneficiary of a payment or obligation. Whether a particular payment or obligation was incurred by the entity actually making the payment or incurring the obligation is a complex question of applicable non-bankruptcy law, and nothing herein constitutes an admission that any Debtor entity is an obligor with respect to any such payment.  The Debtors reserve all rights to reclassify any payment or obligation as attributable to another entity and all rights with respect to the proper accounting and treatment of such payments and liabilities.

(s)   **Guarantees and Other Secondary Liability Claims**.  The Debtors have exercised reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, the "Guarantees") in their executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements.  Where such Guarantees have been identified, they have been included on Schedule H for the affected Debtor or Debtors.  However, certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted.  The Debtors reserve all of their rights to amend, supplement, and otherwise modify the Schedules to the extent that additional Guarantees are identified.

(t)   **Claims of Third-Party Related Entities**.  While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations thereto.  Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

(u)   **Excluded Assets and Liabilities**.  The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including without limitation, accrued salaries, employee benefit accruals and accrued accounts payable.  The Debtors have also excluded potential rejection damage claims of counterparties to executory contracts and unexpired leases that may be rejected (if any), to the extent such damage claims exist.  In addition, the Debtors may have excluded amounts for which the Debtors have been granted authority to pay pursuant to the First Day Orders or other order that may be entered by the Bankruptcy Court.  Certain immaterial assets and liabilities may have been excluded.

(v)   **Liens**.  The inventories, property, and equipment listed in the Statements and Schedules are presented without consideration of any asserted mechanics', materialmen, shippers', or similar liens that may attach, or have attached, to such inventories, property, and equipment.

(w)   **Currency**.  Unless otherwise indicated, all amounts are reflected in U.S. dollars.  A foreign exchange rate of 1.16414 GBP to USD as of August 31, 2022, was used for all assets not already listed in U.S. dollars, and a foreign exchange rate of 1.14871 GBP to USD as of the Petition Date was used for all liabilities not already listed in U.S. dollars.

(x)   **Setoffs**.  The Debtors routinely incur setoffs and net payments in the ordinary course of business.  Such setoffs and nettings may occur due to a variety of transactions or disputes, including but not limited to, intercompany transactions, counterparty settlements, pricing discrepancies, rebates, returns, warranties, refunds, and negotiations and/or other disputes between the Debtors and their customers or vendors and setoffs or netting permitted under common obligations of any joint arrangement,

partnership, or similar agreements. These setoffs and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for and, as such, are or may not be included separately in the Schedules and Statements. In addition, some amounts listed in the Schedules and Statements may have been affected by setoffs or nettings by third parties of which the Debtors are not aware. The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted.

6.    **Specific Schedules Disclosures.**

**Schedule A/B-3 – Checking, savings, or other financial accounts, CDs, etc.** Schedule A/B-3 lists closing bank balances as of September 6, 2022.

**Schedule A/B-11 – Accounts receivable**.   This item excludes intercompany receivables. Please see Global Notes regarding Intercompany Items.

**Schedule A/B-15 – Stock and interests in incorporated and unincorporated businesses**. See (Schedule Exhibit A/B-15) for additional businesses the Debtor was a parent of or owned a significant interest in.

**Schedules A/B-39, A/B-40, A/B-41 and A/B 50 – Office and business equipment**. Certain of the Debtor's office and business equipment, fixtures, machinery, furnishings, and supplies are not capitalized based on its accounting policies and procedures. The Debtor generally capitalizes an asset if it has a life of more than 1 year and if it meets a certain dollar threshold in accordance with the Debtor's accounting policy. There may be certain assets that are not capitalized because they did not meet the Debtor's capitalization policy. Those assets that are not capitalized are not listed herein.

**Schedule A/B-55–58 – Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**. The Debtors have listed owned and leased property by theater or location type.

The Debtors are party to certain real property management agreements, whereby the Debtors facilitate the payment of rent and other costs to a landlord on behalf of certain tenants. These managed properties are not reflected in Schedules A/B-55–58 or in Schedule E/F. Instead, these agreements are reflected in Schedule G. The Debtors reserve any and all rights with respect to these management agreements, including the right to amend, supplement, or otherwise modify these Schedules and Statements should they later determine that an interest or liability arises out of any such agreement.

**Schedules A/B- 59-69 – Intangibles and intellectual property**. The Debtors review goodwill and other intangible assets having indefinite lives for impairment annually or when events or changes in circumstances indicate the carrying value of these assets might exceed their current fair values. Results from an impairment test given the Chapter 11 filing were unavailable at the time that the Schedules and Statements were

prepared and therefore several of the Company's intangible asset values may be listed as undetermined.  The Debtors report intellectual property assets as net book value based on the Debtors' books and records whenever applicable.  Goodwill has not been included in the Schedules.

As described in the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) 503(B)(9) Claimants, (B) Lien Claimants, (C) Foreign Claimants, (D) Critical Vendors, and (E) HSE Suppliers, (II) Confirming Administrative Expense Priority of Outstanding Orders, and (III) Granting Related Relief* (the "Critical Vendors Motion") [Docket No. 57], in the ordinary course of business, the Debtors are party to certain informal agreements, whereby film studios grant licenses to the Debtors to exhibit various films. The Debtors and their vendors believe that these licensing agreements are highly sensitive and confidential, and the Debtors have accordingly aggregated such agreements by film studio in Schedule A/B, Question 62.  The value of these licensing agreements is listed as "undetermined" due to the short-term duration of these agreements and the general industry factors that may affect the value of any single license.  By listing these licenses in Schedule A/B, Question 62, the Debtors do not make any representation as to the executory nature of these agreements, and do not waive any claim they may have on account of such licenses.  The Debtors reserve all rights to amend, supplement, or otherwise modify the Schedules and Statements as may be necessary and appropriate.

**Schedules A/B-74 and 75 – Causes of action against third parties (whether or not a lawsuit has been filed) and other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtors and rights to set off claims**.  The Debtors attempted to list known causes of action and other claims. Potential preference actions and/or fraudulent transfer action were not listed because the Debtors have not completed an analysis of such potential claims.  The Debtors' failure to list any cause of action, claim, or right of any nature is not an admission that such cause of action, claim, or right does not exist, and should not be construed as a waiver of such cause of action, claim, or right.

**Schedule D – Creditors Who Have Claims Secured by Property**.  Except as otherwise ordered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset for the benefit of a secured creditor listed on a Debtor's Schedule D.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including without limitation, any intercompany agreement) related to such creditor's claim.

In certain instances, a Debtor may be a co-obligor with respect to scheduled claims of other Debtors.  No claim set forth on the Schedule D of any Debtor is intended to acknowledge claims of creditors that are or may be otherwise satisfied or discharged.

13

Schedule D does not include beneficiaries of letters of credit. Although the claims of these parties may be secured by a letter of credit, the Debtors' obligations under the letters of credit run to the issuers thereof, and not to the beneficiaries thereof.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent and priority of any liens. Nothing in these Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

Except as specifically stated herein, real property lessors, utility companies, and other parties which may hold security deposits have not been listed on Schedule D. The Debtors have not included parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights.

Detailed descriptions of the Debtors' prepetition debt structure and descriptions of collateral relating to the debt contained on Schedule D are contained in the Debtors' *Emergency Motion for Entry of an Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 52] (the "DIP Motion"). Only the principal amount is listed on Scheduled D; however, other amounts might be due to the creditors.

Certain non-Debtor affiliates are party to the RoW Credit Facility. Pursuant to the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 173], and as reaffirmed by the *Corrected and Amended Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 722], the Bankruptcy Court authorized the Debtors' entry, postpetition, into the RoW Loan Transaction, whereby Debtor Busby AssignCo, LLC acquired the RoW Rights and Obligations from the RoW Lenders. A detailed description of the structure of the RoW Loan Transaction and the rights and obligations of the parties thereto, including the Debtors, is contained in the DIP Motion.

**Schedule E/F – Creditors Who Hold Unsecured Claims**

> ***Part 1 – Creditors with Priority Unsecured Claims***. The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority treatment under section 507

of the Bankruptcy Code.  The Debtors reserve all of their rights to dispute the amount and the priority status of any claim on any basis at any time.

Pursuant to the *Order (I) Authorizing the Payment of Certain Taxes and Fees and (II) Granting Related Relief* [Docket No. 158] (the "Taxes Order"), the Debtors have been granted the authority to pay certain tax liabilities that accrued prepetition.  Accordingly, unsecured priority tax claims may have been paid or may be paid pursuant to the Taxes Order or pursuant to further Bankruptcy Court order.  Therefore, the Debtors have listed the taxing authorities with an undetermined amount.

Pursuant to the *Order Authorizing the Debtors to (I) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (II) Continue Employee Benefits Programs* [Docket No. 175] (the "Wages Order"), the Debtors received authority to pay certain prepetition obligations, including, without limitation, obligations related to employee wages and other employee benefits, in the ordinary course of business.  Accordingly, no undisputed, prepetition claims of non-insiders related to employee wages and other employee benefits that have been paid or may be paid pursuant to the Wages Order or pursuant to further Bankruptcy Court order have been listed on Schedule E/F Part 1.

***Part 2 – Creditors with Nonpriority Unsecured Claims***.  The liabilities identified on Schedule E/F, Part 2, are derived from the Debtors' books and records.  The Debtors made a reasonable attempt to set forth their unsecured obligations, although the actual amount of claims against the Debtors may vary from those liabilities represented on Schedule E/F Part 2.  The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.

The Debtors generally allocate individual liabilities to particular Debtors.  However, in certain cases, it would be a time-consuming and inefficient use of estate resources, or impracticable, to assign a given liability to a particular Debtor based on a contractual obligation.  Instead, the Schedules reflect the liability based on the Debtors' books and records.

Schedule E/F, Part 2 and Statements, Part 3, Question 7, contain information regarding pending litigation involving the Debtors.  The amounts for these potential claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.  For the avoidance of doubt, demand letters received from potential litigants that do not list a specific Debtor are listed in the Schedules for Debtor Regal Cinemas, Inc.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases.  Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease.  In

addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts or unexpired leases, if any, that may be or have been rejected in these chapter 11 cases.

In many cases, the claims listed on Schedule E/F, Part 2, arose, accrued, or were incurred on various dates or on a date or dates that are unknown to the Debtors or are subject to dispute. Where the determination of the date on which a claim arose, accrued, or was incurred would be unduly burdensome and costly to the Debtors' estates, the Debtors have not listed a specific date or dates for such claim.

In the ordinary course of business, the Debtors may have received advances, earnouts, sponsorship, or similar funds from a vendor or customer which are earned over a period of time. These ordinary course transactions are not reflected on Schedule E/F.

As of the time of filing of the Schedules and Statements, the Debtors may not have received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained on Schedules D and E/F may be incomplete. The Debtors reserve their rights to, but undertake no obligations to, amend Schedules D and E/F if and as they receive such invoices.

Liabilities listed on Schedules E/F do not reflect any prepetition amounts paid under various authority granted by the Bankruptcy Court, including the First Day Orders, that have been issued postpetition. The Debtors expect that certain claimants may continue to receive payments for prepetition amounts paid under various authority granted by the Bankruptcy Court that would be issued post-petition. The Debtors reserve all of their rights with respect to such payments, including the right to amend, supplement, or otherwise modify Schedule E/F, Part 2, to reflect such payments.

**Prepetition Customer Programs**. Pursuant to the *Order (I) Authorizing the Debtors to Maintain and Administer Their Existing Customer and Charitable Programs and Honor Certain Prepetition Obligations Related Thereto and (II) Granting Related Relief* [Docket No. 186] (the "Customer Programs Order"), the Debtors have the authority to honor certain prepetition customer programs. Accordingly, certain debts arising from these customer programs may not have been included in the Schedules.

With respect to gift cards, the Debtors cannot ascertain the identity of the vast majority of the holders of such gift cards or whether such gift cards are still in existence. Therefore, the Debtors have not included any holders of gift cards in the Schedules. The Debtors estimate that as of the Petition Date, there is approximately $299 million in non-cash liability outstanding related to gift cards. Because not all gift cards are redeemed, this amount may overstate actual liability, and this amount is not identified on the Schedules. The Debtors

have similarly not included any holders of or liability related to redeemable points pursuant to the Debtors' rewards program (the "Crown Club").

**Schedule G – Executory Contracts and Unexpired Leases**.  While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, and unintended duplication or overinclusion of items may have occurred.

Listing a contract, lease, or agreement on Schedule G does not constitute an admission that such contract, lease, or agreement is an executory contract or unexpired lease or that such contract, lease, or agreement was in effect on the Petition Date or is valid or enforceable.  The Debtors hereby reserve all their rights, claims and Causes of Action with respect to the contracts, leases, or agreements on Schedule G, including the right to dispute the validity, status, or enforceability of, or otherwise modify any contracts, leases, or agreements set forth on Schedule G and to amend, supplement, or otherwise modify Schedule G as necessary, at any time, to remove any contracts, leases, or agreements.

Certain of the contracts, leases, and agreements listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal, and other miscellaneous rights.  Such rights, powers, duties, and obligations are not set forth separately on Schedule G.  In addition, the Debtors may have entered into various other types of agreements in the ordinary course of business, such as supplemental agreements and letter agreements, which agreements may not be set forth on Schedule G.  The Debtors reserve all of their rights to amend, supplement, or otherwise modify Schedule G to the extent that additional information regarding such agreements becomes available.  Certain executory contracts or unexpired leases may not have been memorialized and could be subject to dispute. Any executory contracts or unexpired leases that have not been reduced to writing are not included on Schedule G.

Certain of the contracts, leases, and agreements listed on Schedule G may consist of several parts, including, without limitation, purchase orders, amendments, restatements, waivers, letters, and other documents that may not be identified in Schedule G or that may be listed as a single entry.  The Debtors expressly reserve their rights to determine or challenge whether such documents constitute an executory contract or unexpired lease, a single contract, agreement or lease, or multiple, severable or separate contracts, agreements or leases.

The contracts, leases, and agreements identified in Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents.

Unless otherwise specified in Schedule G, each executory contract or unexpired lease identified therein shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other

agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed therein.  In some cases, the same supplier or provider may appear multiple times in Schedule G.  Any such multiple listings are intended to reflect distinct agreements between the applicable Debtor and such supplier or provider.

Omission of a contract, lease, or agreement from Schedule G does not constitute an admission that such omitted contract, lease, or agreement is not an executory contract or unexpired lease.  The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts, leases, or agreements are not impaired by any such omission.

In some cases, contract counterparties from dormant legacy businesses and historical acquisitions may not have been updated to reflect assignment to active Debtor entities although the Debtors have assumed and continue to perform under the terms of such agreements. In such cases, the Debtors have included such items in Schedule G of Debtor Regal Cinemas, Inc..

Certain Debtors are guarantors and parties to guaranty agreements regarding the Debtors' prepetition credit facility.  The guaranty obligations arising under these agreements are reflected in Schedule D only and are not listed on Schedule E/F.

In the ordinary course of business, the Debtors utilize purchase orders to obtain goods from various vendors.  Due to the generally brief durations of purchase orders and the volume and frequency of these transactions, individual purchase orders that were active as of the Petition Date are not listed on Schedule G.  The Debtors reserve all rights as to active purchase orders as of the Petition Date.  The omission of purchase orders from Schedule G does not constitute an admission that any such purchase order is not an executory contract or unexpired lease.

As described in the Critical Vendors Motion, in the ordinary course of business, the Debtors are party to certain film licensing agreements that provide the terms pursuant to which the Debtors are permitted to exhibit films in their theaters.  These agreements are generally on a film-by-film and theater-by-theater basis and are of relatively brief duration.  These agreements are listed on Schedule AB-62; however, these film licensing agreements are not listed on Schedule G.  The Debtors reserve all rights as to such agreements as of the Petition Date.  The omission of such agreements from Schedule G does not constitute an admission that any such agreement is not an executory contract or unexpired lease.

**Schedule H – Co-Debtors**.  In the ordinary course of businesses, the Debtors pay certain expenses on behalf of their subsidiaries.  For purposes of Schedule H, the Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, debt instruments, and other agreements.  Thus, the Debtors reserve their rights to amend Schedule H to the extent that additional guarantees are identified, or such guarantees are discovered to have expired or become

18

unenforceable.  The disclosure of a guarantee relationship in Schedule H does not constitute an admission by the Debtors as to the effectiveness or enforceability of such guarantee.

In the ordinary course of businesses, the Debtors may become subject to pending or threatened litigation and claims arising out of the conduct of their businesses.  These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counterclaims against other parties.  The Debtors have not listed any litigation-related co-Debtors in Schedule H.  Instead, all such listings to the extent known to the Debtors are listed on Schedule E/F.

7. **Specific Statements Disclosures**.

> **Statements, Part 1, Question 2 – Non-business revenue**.  Non-business revenue includes items such as miscellaneous income, rental income, business event income, vendor marketing program income along with other non-business revenue items.

> **Statements, Part 2, Question 3 – Certain payments or transfers to creditors within 90 days before filing this case.**  Prior to the Petition Date, the Debtors maintained a centralized cash management system through which certain Debtors made payments on behalf of certain Debtor affiliates and certain non-Debtor affiliates, as further explained in the Cash Management Motion.  As further described in the Cash Management Motion, prior to the Petition Date, in the ordinary course of business, the Debtors engaged in intercompany transactions with one another and with their non-Debtor affiliates, which resulted in the creation of corresponding intercompany payables and receivables.  Consequently, all payments to creditors listed in response to Statements, Part 2, Question 3 in each of the Debtors' Statements reflect payments made by Cineworld Cinemas Limited, Regal Cinemas, Inc., Picturehouse Cinemas Limited, or one of the Debtors' affiliates from operating bank accounts, on behalf of the corresponding Debtor, pursuant to the Debtors' cash management system as described in the Cash Management Motion.

> As described in the Critical Vendors Motion, the Debtors make various payments to film studios in the ordinary course of business pursuant to certain film licensing agreements.  Consistent with the Debtors' reporting of such payments pursuant to the *Final Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) 503(B)(9) Claimants, (B) Lien Claimants, (C) Foreign Claimants, (D) Critical Vendors, and (E) HSE Suppliers, (II) Confirming Administrative Expense Priority of Outstanding Orders, and (III) Granting Related Relief* (the "Critical Vendors Order") [Docket No. 571], and the discussion on the record at the hearing before the Bankruptcy Court on October 21, 2022 to consider the Critical Vendors Order, prepetition payments to film studios have been listed in the aggregate in response to Statements, Part 2, Question 3.  Liabilities identified in Schedule E/F, Part 2 were also listed in the aggregate.

> Payments to insiders made in the ninety-day period before filing (and disclosed as part of the one-year period response to Statements, Part 2, Question 4) and payments

related to bankruptcy in the ninety-day period before filing (and disclosed as part of the one-year period response to Statements, Part 6, Question 11) are not included in the response to Statements, Part 2, Question 3 – ninety-day payments.  There is no overlap or duplication between or among the data presented in response to these disclosures.

**Statements, Part 2, Question 4 – Payments or other transfers of property made within 1 year before filing this case that benefited any insider.**  The listing of any individual or entity as an insider does not constitute an admission or a final determination that any such individual or entity is or is not an insider.  Distributions by the Debtors to their directors and officers are listed in the attachment to Statements, Part 2, Question 4.  Certain directors and executive officers are directors and executive officers of multiple Debtor entities.  Individual payments to Debtor affiliates are reflected in the Debtors' responses to Question 4.

**Statements, Part 2, Question 6 – Setoffs**.  For a discussion of setoffs and nettings incurred by the Debtors, refer to section 4(x) of the Global Notes.

**Statements, Part 6, Question 11 – Payments related to bankruptcy**.  All disbursements listed in Question 11 were initiated and disbursed by Cineworld Cinemas Limited or Regal Cinemas, Inc. but were for the benefit of all Debtors.

**Statements, Part 10, Question 20 – Off-premises storage**.  The locations listed for off—premises storage do not include shippers that are holding goods in-transit, including but not limited to goods on ships, in trucks, or in warehouses where they may be temporarily stored during the transport process.

**Statements, Part 13, Question 26d – Financial statements**.  Pursuant to the requirements of the U.K. Financial Conduct Authority ("FCA") Disclosure Guidance and Transparency Rule 4 and FCA Listing Rule 9, Cineworld Group plc prepares and files annual financial reports with the National Storage Mechanism of the FCA. These filings contain consolidated financial information relating to Cineworld Group plc and its subsidiaries.  Additionally, Cineworld Group plc provides its annual reports and accounts as well as its interim financial information on its website.  As the required annual reports are of public record, and are required to remain public for 10 years, the Debtors do not maintain records of the parties who requested or obtained copies of any of the such filings from the National Storage Mechanism of the Financial Conduct Authority, the Debtors, or other sources.

**Statements, Part 13, Question 27 – Inventories.**  The name of the person who supervised the taking of the inventories will be listed as Theatre Manager.

**Statements, Part 13, Question 29 – Former Directors, Officers, and Shareholders.**  For the former shareholders, the highest percentage ownership during the one-year period is listed.

**United Artists Theatre Circuit, Inc.**                                      **Case Number:**      **22-90212 (MI)**

| Part 1: | Income |

## 1. Gross Revenue from business

☐ None

| Identify the Beginning and Ending Dates of the Debtor's Fiscal Year, which may be a Calendar Year | | | Sources of Revenue (Check all that apply) | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From 1/1/2022 <br> MM/DD/YYYY | to 8/31/2022 <br> MM/DD/YYYY | ☑ Operating a business <br> ☐ Other _____ | $52,771,551 |
| **For prior year:** | From 1/1/2021 <br> MM/DD/YYYY | to 12/31/2021 <br> MM/DD/YYYY | ☑ Operating a business <br> ☐ Other _____ | $43,076,536 |
| **For the year before that:** | From 1/1/2020 <br> MM/DD/YYYY | to 12/31/2020 <br> MM/DD/YYYY | ☑ Operating a business <br> ☐ Other _____ | $22,787,139 |

**United Artists Theatre Circuit, Inc.**                                        **Case Number:**      **22-90212 (MI)**

| Part 1: | Income |
| --- | --- |

## 2. Non-business revenue

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☐ None

|  |  |  | Description of Sources of Revenue | Gross Revenue (Before Deductions and Exclusions) |
| --- | --- | --- | --- | --- |
| **From the beginning of the fiscal year to filing date:** | From | 1/1/2022 to 8/31/2022<br>MM/DD/YYYY   MM/DD/YYYY | Distribution Revenues, Screen Advertising, etc. | $5,622,228 |
| **For prior year:** | From | 1/1/2021 to 12/31/2021<br>MM/DD/YYYY   MM/DD/YYYY | Distribution Revenues, Screen Advertising, etc. | $5,400,867 |
| **For the year before that:** | From | 1/1/2020 to 12/31/2020<br>MM/DD/YYYY   MM/DD/YYYY | Distribution Revenues, Screen Advertising, etc. | $2,892,241 |

**United Artists Theatre Circuit, Inc.**                    **Case Number:**      **22-90212 (MI)**

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
|---|---|

### 3. Certain payments or transfers to creditors within 90 days before filing this case

List payments or transfers-including expense reimbursements-to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☑ None

| Creditor's Name and Address | Dates | Total Amount or Value | Reasons for Payment or Transfer |
|---|---|---|---|
| 3.1      NONE | | | ☐ Secured debt<br>☐ Unsecured loan repayment<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | **TOTAL** | **$0** | |

|  | **TOTAL** | **$0** |
|---|---|---|

**United Artists Theatre Circuit, Inc.**                                    **Case Number:**    **22-90212 (MI)**

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

## 4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)  Do not include any payments listed in line 3.  Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☑ None

| Insider's Name and Address and Relationship to Debtor | Dates | Amount | Reason for Payment |
|---|---|---|---|
| 4.1    NONE | | | |
| | TOTAL | $0 | |

| | TOTAL | $0 | |

**United Artists Theatre Circuit, Inc.**                                                    **Case Number:**     **22-90212 (MI)**

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |

### 5. Repossessions, foreclosures, and returns

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller.  Do not include property listed in line 6.

☑ None

| Creditor's Name and Address | Description of the Property | Date Action was Taken | Value of Property |
|---|---|---|---|
| 5.1    NONE | | | $0 |
| | | **TOTAL** | **$0** |

**United Artists Theatre Circuit, Inc.**                                             Case Number:        **22-90212 (MI)**

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

### 6. Setoffs

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's Name and Address | Description of Action Creditor Took | Date Action Taken | Account Number | Amount |
|-----------------------------|-------------------------------------|-------------------|----------------|--------|
| 6.1 NONE | | | | $0 |
| | | | **TOTAL** | **$0** |

**United Artists Theatre Circuit, Inc.**                                    **Case Number:**     **22-90212 (MI)**

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

### 7.  Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the
debtor was involved in any capacity - within 1 year before filing this case.

☐ None

| Caption of Suit and Case Number | Nature of Proceeding | Court or Agency and Address | Status of Case |
|---|---|---|---|
| 7.1  PENCOYD CROSSING LP<br>LT-20-12-10-3802 | REAL ESTATE | PHILADELPHIA MUNICIPAL COURT 1ST JUDICIAL DISTRICT OF PA<br>NOT AVAILABLE | CONCLUDED |
| 7.2  TABANI NATCHEZ MALL, LP<br>DC-21-03511 | REAL ESTATE | DISTRICT COURT 160TH JUDICIAL DISTRICT DALLAS COUNTY, TX<br>NOT AVAILABLE | CONCLUDED |
| 7.3  SUBSURFACE REMEDIAL INVESTIGATION FOR BELLEVUE THEATER<br>NJDEP CASE #95-10-09-1702-09 | ENVIRONMENTAL | SUBSURFACE REMEDIAL INVESTIGATION FOR BELLEVUE THEATER<br>NOT AVAILABLE | PENDING |
| 7.4  MOONLITE ASSOCIATE, LLC<br>RG16811955 | ENVIRONMENTAL | SUPERIOR COURT OF THE STATE OF CALIFORNIA - COUNTY OF ALAMEDA<br>NOT AVAILABLE | CONCLUDED |
| 7.5  SIMON PROPERTY GROUP, LP, ETC<br>49D012102PL004202 | REAL ESTATE | MARION SUPERIOR COURT<br>NOT AVAILABLE | PENDING |
| 7.6  EMPLOYEE #8<br>18-CV-00307-JBW_JO | HR LEGAL ISSUES | NOT AVAILABLE | PENDING |
| 7.7  SIMON PROPERTY GROUP, L.P.<br>2021CV30149 | REAL ESTATE | DISTRICT COURT, JEFFERSON COUNTY, CO<br>NOT AVAILABLE | PENDING |
| 7.8  SOUTHOLD PROPERTIES, INC<br>606165/21 | REAL ESTATE | SUPREME COURT OF STATE OF NEW YORK COUNTY OF SUFFOLK<br>NOT AVAILABLE | PENDING |
| 7.9  MIR COURT STREET ASSOCIATES LLC<br>656906/2021 | REAL ESTATE | SUPREME COURT OF THE STATE OF NY COUNTY OF NEW YORK<br>NOT AVAILABLE | PENDING |
| 7.10  SIMON PROPERTY GROUP, LP, ETC<br>49D012102PL004202 | REAL ESTATE | MARION SUPERIOR COURT<br>NOT AVAILABLE | PENDING |
| 7.11  SIMON PROPERTY GROUP, LP, ETC<br>CACE-20-019971 | REAL ESTATE | CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT BROWARD COUNTY, FL<br>NOT AVAILABLE | PENDING |
| 7.12  SIMON PROPERTY GROUP, L.P.<br>2021CV30149 | REAL ESTATE | DISTRICT COURT, JEFFERSON COUNTY, CO<br>NOT AVAILABLE | PENDING |
| 7.13  EMPLOYEE #8<br>18-CV-00307-JBW_JO | DISABILITY | NOT AVAILABLE | PENDING |
| 7.14  FROG CO., LLC<br>618486/2020 | REAL ESTATE | SUPREME COURT OF THE STATE OF NY COUNTY OF SUFFOLK<br>NOT AVAILABLE | PENDING |

**United Artists Theatre Circuit, Inc.**                                                  **Case Number:**        **22-90212 (MI)**

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

### 7.  Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity - within 1 year before filing this case.

☐ None

| Caption of Suit and Case Number | Nature of Proceeding | Court or Agency and Address | Status of Case |
|---------------------------------|----------------------|-----------------------------|----------------|
| 7.15  EMPLOYEE #15 - WITHIN 1YR<br>NA | HR LEGAL ISSUES | NA<br>NOT AVAILABLE | CONCLUDED |

**United Artists Theatre Circuit, Inc.**                                      Case Number:      **22-90212 (MI)**

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

**8.  Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's Name and Address | Court Name and Address | Case Title and Number | Date | Description of Property | Value |
|------------------------------|------------------------|-----------------------|------|------------------------|-------|
| 8.1   NONE | | | | | |

**United Artists Theatre Circuit, Inc.**                                    **Case Number:**        **22-90212 (MI)**

| Part 4: | Certain Gifts and Charitable Contributions |
|---------|---------------------------------------------|

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| Recipient's Name and Address | Recipient's Relationship to Debtor | Description of the Gifts or Contributions | Dates Given | Value |
|------------------------------|-----------------------------------|-------------------------------------------|-------------|-------|

9.1    NONE

**United Artists Theatre Circuit, Inc.**                                       Case Number:      **22-90212 (MI)**

| **Part 5:** | **Certain Losses** |

## 10. All losses from fire, theft, or other casualty within 1 year before filing this case.

☑ None

| Description of Property | How Loss Occurred | Amount of Payments Received | Date of Loss | Property Value |
|---|---|---|---|---|
| | | *If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.  List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property).* | | |
| 10.1    NONE | | | | Undetermined |

TOTAL    **Undetermined**

**United Artists Theatre Circuit, Inc.**                                                                    **Case Number:**      **22-90212 (MI)**

| **Part 6:** | **Certain Payments or Transfers** |

### 11. Payments related to bankruptcy

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

 None

| Who was Paid or Who Received the Transfer? Address | Email / Website | Who Made the Payment, if not Debtor? | If not Money, Describe any Property Transferred | Dates | Total Amount or Value |
|---|---|---|---|---|---|
| 11.1    NONE | | | | | $0 |

**United Artists Theatre Circuit, Inc.**                                                    Case Number:        **22-90212 (MI)**

| Part 6: | Certain Payments or Transfers |
|---|---|

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None

| Name of Trust or Device | Trustee | Describe any Property Transferred | Dates Transfers were Made | Total Amount / Value |
|---|---|---|---|---|
| 12.1    NONE | | | | $0 |

**United Artists Theatre Circuit, Inc.**                                                          **Case Number:**        **22-90212 (MI)**

| **Part 6:** | **Certain Payments or Transfers** |

### 13. Transfers not already listed on this statement

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.  Include both outright transfers and transfers made as security.  Do not include gifts or transfers previously listed on this statement.

☐ None

| Name and Address of Transferee, Relationship to Debtor | Description of Property | Date Transfer was Made | Total Amount or Value |
|---|---|---|---|
| 13. 1  2274 SHATTUCK QOZB LLC C/O PANORAMIC INTERESTS, LLC<br>2539 TELEGRAPH AVE<br>BERKELEY, CA 94704 | 1172 BERKELEY 7 WAS SOLD AND LEASED BACK | 8/11/2022 | $7,000,000 |

|  | **TOTAL** | **$7,000,000** |

**United Artists Theatre Circuit, Inc.**                                    **Case Number:**      **22-90212 (MI)**

| Part 7: | Previous Locations |
|---------|--------------------|

## 14. Previous addresses

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| Address | Dates of Occupancy |
|---------|--------------------|
| 14.1    106 COURT STREET, BROOKLYN, NY | From:   7/6/2001   To:   1/16/2022 |
| 14.2    350 JOHN R. JUNKIN DRIVE, NATCHEZ, MS | From:   11/21/1986   To:   6/24/2021 |
| 14.3    43 HILL STREET, SOUTHAMPTON, NY | From:   5/21/1987   To:   5/20/2021 |
| 14.4    5926 SUNRISE MALL, CITRUS HEIGHTS, CA | From:   6/1/1972   To:   4/9/2021 |
| 14.5    635 FAIRFIELD DR., MERCED, CA | From:   7/23/1964   To:   12/19/2021 |
| 14.3    910 SAWMILL ROAD, LAUREL, CA | From:   11/21/1986   To:   1/30/2020 |

**United Artists Theatre Circuit, Inc.**                                    **Case Number:**    **22-90212 (MI)**

| Part 8: | Health Care Bankruptcies |
|---|---|

### 15. Health Care bankruptcies

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility Name and Address | Nature of the Business Operation, Including Type of Services the Debtor Provides | Location Where Patient Records are Maintained (if Different from Facility Address). If Electronic, Identify any Service Provider. | If Debtor Provides Meals and Housing, Number of Patients in Debtor's Care | How are Records Kept? |
|---|---|---|---|---|
| 15.1   NONE | | | | ☐ Electronic<br>☐ Paper |

**United Artists Theatre Circuit, Inc.**                    **Case Number:    22-90212 (MI)**

| Part 9: | Personally Identifiable Information |
|---------|-------------------------------------|

**16. Does the debtor collect and retain personally identifiable information of customers?**

☐ No.

☑ Yes. State the nature of the information collected and retained.     Names, addresses, phone numbers, credit card numbers, etc.

Does the debtor have a privacy policy about that information?

☐ No

☑ Yes

**United Artists Theatre Circuit, Inc.**                                              **Case Number:**      **22-90212 (MI)**

| **Part 9:** | **Personally Identifiable Information** |

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.

Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.

☐ Yes.  Fill in below:

Describe: _____         EIN: _____

Has the plan been terminated?

☐ No

☐ Yes

**United Artists Theatre Circuit, Inc.**                                    **Case Number:**     **22-90212 (MI)**

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

### 18. Closed financial accounts

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial Institution Name and Address | Last 4 Digits of Acct Number | Type of Account | Date of Closing | Last Balance |
|---|---|---|---|---|
| 18.1   NONE | | | | |

**United Artists Theatre Circuit, Inc.**                                   **Case Number:**       **22-90212 (MI)**

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

### 19. Safe deposit boxes

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| | Depository Institution Name and Address | Names of Anyone with Access to it and Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|---|
| 19.1 | NONE | | | ☐ No<br>☐ Yes |

**United Artists Theatre Circuit, Inc.**                                    **Case Number:**      **22-90212 (MI)**

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

### 20. Off-premises storage

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility Name and Address | Names of Anyone with Access to it | Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|---|
| 20. 1    NONE | | | | ☐ No<br>☐ Yes |

**United Artists Theatre Circuit, Inc.**                                    Case Number:        **22-90212 (MI)**

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|---|---|

### 21. Property held for another

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

| Owner's Name and Address | Location of the Property | Description of the Property | Value |
|---|---|---|---|
| 21.1    NONE | | | |

**United Artists Theatre Circuit, Inc.**                                    **Case Number:**      **22-90212 (MI)**

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similary harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22.  Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☐ No
☑ Yes. Provide details below.

| | Case Title and Case Number | Court or Agency Name and Address | Nature of Proceeding | Status |
|---|---|---|---|---|
| 22. 1 | SUBSURFACE REMEDIAL INVESTIGATION FOR BELLEVUE THEATER<br>NJDEP CASE #95-10-09-1702-09 | STATE OF NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, BUREAU OF NORTHFIELD OPERATIONS<br>7 RIDGEDALE AVE<br>CEDAR KNOLLS, NJ 07927 | ENVIRONMENTAL | PENDING |
| 22. 2 | MOONLITE ASSOCIATE, LLC<br>RG16811955 | SUPERIOR COURT OF THE STATE OF CALIFORNOA - COUNTY OF ALAMEDA<br>2233 SHORE LINE DR<br>ALAMEDA, CA 94501 | ENVIRONMENTAL | CONCLUDED |

**United Artists Theatre Circuit, Inc.**                                    **Case Number:**      **22-90212 (MI)**

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the followig definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**23.  Has any governmental unit otherwise notified the debtor that the debtor may be liable under or in violation of an environmental law?**

☑ No
☐ Yes. Provide details below.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|
| 23. 1   NONE | | | |

**United Artists Theatre Circuit, Inc.**                                         **Case Number:**        **22-90212 (MI)**

| Part 12: | Details About Environmental Information |
| --- | --- |

For the purpose of Part 12, the followig definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- Hazardous material means anything than an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similary harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes. Provide details below.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
| --- | --- | --- | --- |
| 24.1   NONE | | | |

**CINEWORLD GROUP PLC, et al.**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

☐ None

| Business Name and Address | Describe the Nature of the Business | Employer Identification Number | Dates Business Existed |
|---|---|---|---|
| | | *Do not include SSN or ITIN* | |
| PLEASE SEE CHART ON THE FOLLOWING PAGES | | | |

Cineworld
Organizational Structure
Exhibit Related to SOFA Part 13, Question 25

| Business Name and Address | Describe the Nature of the Business (+ Immediate Parent) | Employer Identification Number | Dates Business Existed |
|---|---|---|---|
| 13th Avenue Partners, L.L.C.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 48-1242376 | Ongoing |
| A 3 Theatres of San Antonio, Ltd.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 99.1%),<br>A 3 Theatres of Texas, Inc. (Ownership 0.9%) | 74-2445508 | Ongoing |
| A 3 Theatres of Texas, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 95-4211888 | Ongoing |
| Augustus 1 Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Holding Company - Crown UK HoldCo Limited (Ownership<br>100%) | 79364 02434 | Ongoing |
| Augustus 2 Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Holding Company - Augustus 1 Limited (Ownership 100%) | 65024 08419 | Ongoing |
| Cinebarre, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal/Cinebarre Holdings, LLC<br>(Ownership 100%) | 20-8344297 | Ongoing |
| Cinemas Associates, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 48-1057592 | Ongoing |
| Cine-UK Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Cinema Operations - Cineworld Holdings Limited (Ownership<br>100%) | 53444 74515 | Ongoing |
| Cineworld Cinemas Holdings Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Holding Company - Cineworld Holdings Limited (Ownership<br>100%) | 71440 52439 | Ongoing |
| Cineworld Cinemas Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Holding Company and Cinema Operations - Cineworld Cinemas<br>Holdings Limited (Ownership 100%) | 41440 54492 | Ongoing |
| Cineworld Estates Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Cinema Property Leasing - Cineworld Cinemas Limited<br>(Ownership 100%) | 91440 54495 | Ongoing |
| Cineworld Funding (Jersey) Limited<br>22 Grenville Street, St Helier, JE4 8PX, Jersey | Holding Company - Cineworld Group plc (Ownership 100%) | 43123 22259 | Ongoing |
| Cineworld Group plc<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Parent Company Listed on LSE - Public | 82996 11043 | Ongoing |
| Cineworld Holdings Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Holding Company - Augustus 2 Limited (Ownership 100%) | 40113 21874 | Ongoing |
| City Screen (Brighton) Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Cinema Operations - Picturehouse Cinemas Limited (Ownership<br>100%) | 22213 36691 | Ongoing |
| City Screen (Liverpool) Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Cinema Operations - Picturehouse Cinemas Limited (Ownership<br>100%) | 25232 25166 | Ongoing |
| City Screen (S.O.A.) Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Cinema Operations - Picturehouse Cinemas Limited (Ownership<br>100%) | 93163 87964 | Ongoing |
| City Screen (Stratford) Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Cinema Operations - Picturehouse Cinemas Limited (Ownership<br>100%) | 71342 13698 | Ongoing |
| City Screen (York) Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Cinema Operations - Picturehouse Cinemas Limited (Ownership<br>100%) | 65227 12221 | Ongoing |
| Consolidated Theatres Management, L.L.C.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Dormant - Regal Cinemas, Inc. (Ownership 100%) | 56-2100237 | Ongoing |
| Crown Finance US, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Holding Company - Crown UK HoldCo Limited (Ownership<br>100%) | 82-3615286 | Ongoing |
| Crown Intermediate Holdco, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Holding Company - Crown Finance US, Inc. (Ownership 100%) | 82-3575421 | Ongoing |
| Crown Theatre Corporation<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Hollywood Theaters, Inc. (Ownership<br>100%) | 43-1530337 | Ongoing |
| Crown UK HoldCo Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Holding Company - Cineworld Group plc (Ownership 100%) | 21481 07197 | Ongoing |
| CS (Brixton) Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Cinema Operations - Picturehouse Cinemas Limited (Ownership<br>100%) | 86956 15146 | Ongoing |
| CS (Exeter) Limited<br>8th Floor Vantage London, Great West Road, Brentford,<br>England, TW8 9AG, United Kingdom | Cinema Operations - Picturehouse Cinemas Limited (Ownership<br>100%) | 29788 11926 | Ongoing |

Cineworld
Organizational Structure
Exhibit Related to SOFA Part 13, Question 25

| Business Name and Address | Describe the Nature of the Business (+ Immediate Parent) | Employer Identification Number | Dates Business Existed |
|---|---|---|---|
| CS (Norwich) Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Cinema Operations - Picturehouse Cinemas Limited (Ownership 100%) | 23106 04237 | Ongoing |
| Eastgate Theatre, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 93-0557513 | Ongoing |
| Edwards Theatres, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 33-0976218 | Ongoing |
| Frederick Plaza Cinema, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Interstate Theatres Corporation (Ownership 100%) | 04-2500121 | Ongoing |
| Great Escape LaGrange LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Dormant - Ragains Enterprises LLC (Ownership 100%) | 35-2062155 | Ongoing |
| Great Escape LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Ragains Enterprises LLC (Ownership 100%) | 35-2050796 | Ongoing |
| Great Escape of Nitro, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Ragains Enterprises LLC (Ownership 100%) | 20-2767137 | Ongoing |
| Great Escape of O'Fallon, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Ragains Enterprises LLC (Ownership 100%) | 20-2767033 | Ongoing |
| Great Escape Theatres of Bowling Green, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Ragains Enterprises LLC (Ownership 100%) | 61-1379928 | Ongoing |
| Great Escape Theatres of Harrisburg, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 26-0882249 | Ongoing |
| Great Escape Theatres of Lebanon, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Ragains Enterprises LLC (Ownership 100%) | 20-5001646 | Ongoing |
| Great Escape Theatres of New Albany, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Ragains Enterprises LLC (Ownership 100%) | 81-0592002 | Ongoing |
| Great Escape Theatres, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Ragains Enterprises LLC (Ownership 100%) | 35-2113816 | Ongoing |
| Hollywood Theaters III, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Wallace Theater Holdings, Inc. (Ownership 100%) | 95-4344918 | Ongoing |
| Hollywood Theaters, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Wallace Theater Holdings, Inc. (Ownership 100%) | 75-2598844 | Ongoing |
| Hoyts Cinemas Corporation<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 04-2981190 | Ongoing |
| Interstate Theatres Corporation<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Hoyts Cinemas Corporation (Ownership 100%) | 04-1472970 | Ongoing |
| Lois Business Development Corporation<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Wallace Theater Holdings, Inc. (Ownership 100%) | 99-0321127 | Ongoing |
| McIntosh Properties, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 26-0837983 | Ongoing |
| Next Generation Network, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Dormant - Regal Entertainment Holdings, Inc (Ownership 100%) | 41-1670450 | Ongoing |
| Oklahoma Warren Theatres II, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Oklahoma Warren Theatres, LLC (Ownership 100%) | 62-1412720 | Ongoing |
| Oklahoma Warren Theatres, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 20-3647349 | Ongoing |
| Pacific Rim Business Development Corporation<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Wallace Theater Holdings, Inc. (Ownership 100%) | 94-3269488 | Ongoing |
| Picturehouse Bookings Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Ticket Booking Operation - Picturehouse Cinemas Limited (Ownership 100%) | 73388 16285 | Ongoing |
| Picturehouse Cinemas Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Cinema Operations - Cineworld Holdings Limited (Ownership 100%) | 81450 06576 | Ongoing |
| Picturehouse Entertainment Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Film Distribution - Picturehouse Cinemas Limited (Ownership 100%) | 17997 23229 | Ongoing |

Cineworld
Organizational Structure
Exhibit Related to SOFA Part 13, Question 25

| Business Name and Address | Describe the Nature of the Business (+ Immediate Parent) | Employer Identification Number | Dates Business Existed |
|---|---|---|---|
| R.C. Cobb II, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - R.C. Cobb, Inc. (Ownership 100%) | 27-1923174 | Ongoing |
| R.C. Cobb, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 63-0376608 | Ongoing |
| Ragains Enterprises LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 20-1709139 | Ongoing |
| RCI/FSSC, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 16-1768756 | Ongoing |
| RCI/RMS, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 96%), Regal Entertainment Group (Ownership 1%), Regal Entertainment Holdings, Inc. (Ownership 1%), Regal Cinemas Corporation (Ownership 1%), Regal Investment Company (Ownership 1%) | 06-1683875 | Ongoing |
| Regal Cinemas Corporation<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Holding Company - Regal Entertainment Holdings, Inc (Ownership 100%) | 02-0624987 | Ongoing |
| Regal Cinemas Holdings, Inc<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 62-1843011 | Ongoing |
| Regal Cinemas II, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 27-1923323 | Ongoing |
| Regal Cinemas, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas Corporation (Ownership 100%) | 62-1412720 | Ongoing |
| Regal CineMedia Corporation<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Gift Promotions - Regal Cinemas, Inc. (Ownership 100%) | 03-0398467 | Ongoing |
| Regal CineMedia Holdings, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Holding Company - Regal CineMedia Corporation (Ownership 100%) | 20-8359075 | Ongoing |
| Regal Distribution, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Film Distribution - Regal Cinemas, Inc. (Ownership 100%) | 62-1412720 | Ongoing |
| Regal Distribution Holdings, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Holding Company - Regal Distribution, LLC (Ownership 100%) | 62-1412720 | Ongoing |
| Regal Entertainment Group<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Holding Company - Crown Intermediate Holdco, Inc (Ownership 100%) | 02-0556934 | Ongoing |
| Regal Entertainment Holdings II LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Holding Company - Regal Entertainment Group (Ownership 100%) | 20-2028770 | Ongoing |
| Regal Entertainment Holdings, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Holding Company - Regal Entertainment Group (Ownership 100%) | 72-1522911 | Ongoing |
| Regal Investment Company<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Holding Company - Regal Cinemas, Inc. (Ownership 100%) | 52-2032807 | Ongoing |
| Regal Licensing, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 47-2042818 | Ongoing |
| Regal Stratford, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Entertainment Holdings, Inc (Ownership 100%) | 20-2337444 | Ongoing |
| Regal/ATOM Holdings, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Holding Company - Regal CineMedia Holdings, LLC (Ownership 100%) | 03-0398467 | Ongoing |
| Regal/Cinebarre Holdings, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Holding Company - Regal Cinemas, Inc. (Ownership 100%) | 26-2847301 | Ongoing |
| Regal/DCIP Holdings, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Holding Company - Regal Cinemas, Inc. (Ownership 100%) | 62-1412720 | Ongoing |
| RegalRealty - 17, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 62-1412720 | Ongoing |
| Richmond I Cinema, L.L.C.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 56-2115915 | Ongoing |
| The Movie Machine, L.L.C.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 74-3048400 | Ongoing |

Cineworld
Organizational Structure
Exhibit Related to SOFA Part 13, Question 25

| Business Name and Address | Describe the Nature of the Business (+ Immediate Parent) | Employer Identification Number | Dates Business Existed |
|---|---|---|---|
| UA Shor, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - United Artists Theatre Circuit, Inc. (Ownership 100%) | 13-1424080 | Ongoing |
| UA Swansea, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Interstate Theatres Corporation (Ownership 100%) | 20-1997413 | Ongoing |
| United Artists Properties I Corp.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Property Leasing - United Artists Realty Company (Ownership 100%) | 84-1093560 | Ongoing |
| United Artists Realty Company<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Property Leasing - United Artists Theatre Company (Ownership 100%) | 22-2861013 | Ongoing |
| United Artists Theatre Circuit II, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - United Artists Theatre Circuit, Inc. (Ownership 100%) | 27-1923416 | Ongoing |
| United Artists Theatre Circuit, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - United Artists Theatre Company (Ownership 100%) | 13-1424080 | Ongoing |
| United Artists Theatre Company<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Holding Company - Regal Cinemas, Inc. (Ownership 100%) | 84-1198391 | Ongoing |
| Valeene Cinemas, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Ragains Enterprises LLC (Ownership 100%) | 26-0237734 | Ongoing |
| Wallace Theater Holdings, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Holding Company - Regal Cinemas, Inc. (Ownership 100%) | 75-2605571 | Ongoing |
| Warren Oklahoma Theatres, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 45-4785975 | Ongoing |
| Classic Cinemas Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Retail Services Company - Cineworld Cinemas Limited (Ownership 100%) | 28376 11130 | Ongoing |
| Regal Gallery Place, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 20-1702561 | Ongoing |
| Regal –18, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 100%) | 62-1412720 | Ongoing |
| Cineworld Cinema Properties Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Dormant Property Company - Cineworld South East Cinemas Limited (Ownership 100%) | 21440 54401 | Ongoing |
| Cineworld Elite Picture Theatre (Nottingham) Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Dormant - Cineworld Cinemas Limited (Ownership 99.1%) | 61440 52806 | Ongoing |
| Cineworld South East Cinemas Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Dormant Holding Company - Cineworld Cinemas Limited (Ownership 100%) | 11440 54406 | Ongoing |
| Gallery Cinemas Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Dormant - Gallery Holdings Limited (Ownership 100%) | 11440 54440 | Ongoing |
| Gallery Holdings Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Dormant Holding Company - Cineworld Cinemas Limited (Ownership 100%) | 51550 52443 | Ongoing |
| Newman Online Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Dormant Software Development and Provider - Picturehouse Cinemas Limited (Ownership 100%) | 45823 10076 | Ongoing |
| Cineworld HunCo Kft.<br>1132 Budapest Vaci ut, 22-24 First Floor, Hungary | Holding Company - Crown UK HoldCo Limited (Ownership 100%) | 25390559-2-41 | Ongoing |
| Empire Cinema 2 Limited<br>2nd Floor, The Le Gallais Building, 54 Bath Street, St Helier, JE1 1FW, Jersey | Cinema Operations - Cineworld Cinemas Limited (Ownership 100%) | 93663 25576 | Ongoing |
| Bromley Cinema 2 Limited<br>2nd Floor, The Le Gallais Building, 54 Bath Street, St Helier, JE1 1FW, Jersey | Cinema Operations - Cineworld Cinemas Limited (Ownership 100%) | 54722 28985 | Ongoing |
| Poole Cinema 2 Limited<br>2nd Floor, The Le Gallais Building, 54 Bath Street, St Helier, JE1 1FW, Jersey | Cinema Operations - Cineworld Cinemas Limited (Ownership 100%) | 19104 09984 | Ongoing |
| Newcastle Cinema 2 Limited<br>2nd Floor, The Le Gallais Building, 54 Bath Street, St Helier, JE1 1FW, Jersey | Cinema Operations - Cineworld Cinemas Limited (Ownership 100%) | 14925 27348 | Ongoing |
| Hemel Hepstead Two Cinema 2 Limited<br>2nd Floor, The Le Gallais Building, 54 Bath Street, St Helier, JE1 1FW, Jersey | Cinema Operations - Cineworld Cinemas Limited (Ownership 100%) | 35404 16650 | Ongoing |
| Basildon Cinema 2 Limited<br>2nd Floor, The Le Gallais Building, 54 Bath Street, St Helier, JE1 1FW, Jersey | Cinema Operations - Cineworld Cinemas Limited (Ownership 100%) | 11552 28611 | Ongoing |

Cineworld
Organizational Structure
Exhibit Related to SOFA Part 13, Question 25

| Business Name and Address | Describe the Nature of the Business (+ Immediate Parent) | Employer Identification Number | Dates Business Existed |
|---|---|---|---|
| Basildon Cinema Number Two Limited<br>2nd Floor, The Le Gallais Building, 54 Bath Street, St Helier, JE1 1FW, Jersey | Cinema Operations - Cineworld Cinemas Limited (Ownership 100%) | 94809 22268 | Ongoing |
| Busby AssignCo, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Crown Finance US, Inc. (Ownership 100%) | 82-3615286 | Ongoing |
| 1232743 B.C. LTD<br>Suite 2400, 745 Thurlow Street,<br>Vancouver BC V6E 0C5, Canada | Holding Company - Crown Finance HoldCo Limited (Ownership 100%) | | Ongoing |
| Adelphi - Carlton Limited<br>8th Floor, Block E, Iveagh Court,<br>Harcourt Road, Dublin 2, Ireland | Cinema Operations - Cineworld Cinemas Limited (Ownership 100%) | 0657221H | Ongoing |
| All Job Poland Sp z o.o.<br>Woloska 12 02-675 Warszawa, Poland | Cinema Operations - Cinema City Cinemas sp. z o.o (Ownership 100%) | | Ongoing |
| CC Sp. z o.o.<br>CC SP Z O.O SP.J, UL Woloska 12, 02-675, Warszawa, Poland | Dormant - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| CDD UK Borrower Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Cinema Operations - CDD UK Parent Limited (Ownership 100%) | 7652207527 | Ongoing |
| CDD UK Parent Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Holding Company - Crown UK HoldCo Limited (Ownership 100%) | 6953914815 | Ongoing |
| Cinema City Bulgaria EOOD<br>45 Bregalnitza Str, 5 floor<br>Vazrajdane Region Sofia 1303, Bulgaria | Cinema Operations - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| Cinema City Cinemas sp. z o.o<br>UL. Fosa 37 02-768 Warszawa Poland | Cinema Operations - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| Cinema City Czech s.r.o.<br>Arkalycká 951/3, 149 00 Praha 4, Czech Republic | Cinema Operations - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| Cinema City Finance (2017) B.V.<br>PO Box 1370 NL-3000 BJ Rotterdam The Netherlands | Financing Company - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| Cinema City Holdco (Hungary) Kft<br>1132 Budapest Vaci ut, 22-24 First Floor, Hungary | Financing Company - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| Cinema City Holding B.V.<br>PO Box 1370 NL-3000 BJ Rotterdam The Netherlands | Holding Company - Crown NL Holdco B.V. (Ownership 100%) | | Ongoing |
| Cinema City Poland sp. z o.o<br>UL. Fosa 37 02-768 Warszawa Poland | Cinema Operations - Cinema City Cinemas sp. z o.o (Ownership 100%) | | Ongoing |
| Cinema City Poland sp. z o.o –Sp.k<br>UL. Fosa 37 02-768 Warszawa Poland | Cinema Operations - Cinema City Poland sp. z o.o (Ownership 99.9%), New Age Media sp. z o.o. (Ownership 0.1%) | | Ongoing |
| Cinema City Romania S.R.L.<br>13 Ana Davila street, Sector 5,<br>Bucharest 050491, Romania | Cinema Operations - Cinema City Holding B.V. (Ownership 0.9%) | | Ongoing |
| Cinema City Slovakia s.r.o.<br>Einsteinova 20, 851 01 Bratislava, Slovakia | Cinema Operations - Cinema City Holding B.V. (Ownership 99.98%) | | Ongoing |
| Cinema Finco 1 Limited<br>8th Floor, Block E, Iveagh Court, Harcourt Road, Dublin 2, Ireland | Financing Company in Liquidation - Crown UK HoldCo Limited (Ownership 100%) | 3249539SH | Ongoing |
| Cinema Finco 2 Limited<br>8th Floor, Block E, Iveagh Court, Harcourt Road, Dublin 2, Ireland | Financing Company in Liquidation - Cinema Finco 1 Limited (Ownership 99.1%), Crown UK HoldCo Limited (Ownership 0.5%), Cinema Finco 3 Limited (Ownership 0.4%) | 3249544LH | Ongoing |
| Cinema Finco 3 Limited<br>8th Floor, Block E, Iveagh Court, Harcourt Road, Dublin 2, Ireland | Financing Company in Liquidation - Crown UK HoldCo Limited (Ownership 100%) | 3249554OH | Ongoing |
| Cinema Finco 4 Limited<br>8th Floor, Block E, Iveagh Court, Harcourt Road, Dublin 2, Ireland | Financing Company in Liquidation - Crown UK HoldCo Limited (Ownership 100%) | 3249557UH | Ongoing |
| Cinema Finco 5 Limited<br>8th Floor, Block E, Iveagh Court, Harcourt Road, Dublin 2, Ireland | Financing Company in Liquidation - Crown UK HoldCo Limited (Ownership 100%) | 3644043PH | Ongoing |
| Cinema Finco 6 Limited<br>8th Floor, Block E, Iveagh Court, Harcourt Road, Dublin 2, Ireland | Financing Company in Liquidation - Crown UK HoldCo Limited (Ownership 100%) | 3644046VH | Ongoing |
| Cinema Theatres Ltd.<br>91 Medinat Hayehudim, Herzelia, Israel | Cinema Operations - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |

Cineworld
Organizational Structure
Exhibit Related to SOFA Part 13, Question 25

| Business Name and Address | Describe the Nature of the Business (+ Immediate Parent) | Employer Identification Number | Dates Business Existed |
|---|---|---|---|
| Cinema-Phone Ltd.<br>18 Hanevim, Haifa, Israel | Cinema Operations - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| Crown NL Holdco B.V.<br>Coolsingel 63, 7th floor, 3012 AB Rotterdam, Netherlands | Cinema Operations - Crown UK HoldCo Limited (Ownership 100%) | | Ongoing |
| Digital Cinema Media Limited<br>350 Euston Road, London, NW1 3AX | Film Distribution - Cineworld Holdings Limited (Ownership 50%) | | Ongoing |
| Forum Film Bulgaria EOOD<br>45 Bregalnitza Str, 4 floor<br>Vazrajdane Region Sofia 1303, Bulgaria | Film Distribution - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| Forum Film Czech s.r.o.<br>Arkalycká 951/3, 149 00 Praha 4, Czech Republic | Film Distribution - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| Forum Film Ltd.<br>91 Medinat Hayehudim, Herzelia, Israel | Cinema Operations - Norma Film Limited (Ownership 100%) | | Ongoing |
| Forum Film Poland sp. z o.o<br>Woloska 12 02-675 Warszawa, Poland | Film Distribution - Cinema City Cinemas sp. z o.o (Ownership 100%) | | Ongoing |
| Forum Film Romania S.R.L.<br>13 Ana Davila street, Sector 5,<br>Bucharest 050491, Romania | Film Distribution - Cinema City Holding B.V. (Ownership 99.75%) | | Ongoing |
| Forum Film Slovakia s.r.o<br>Einsteinova 20, 851 01 Bratislava, Slovakia | Film Distribution - Cinema City Holding B.V. (Ownership 85%) | | Ongoing |
| Fórum Hungary Film Distribution Kft.<br>1132 Budapest Vaci ut, 22-24 First Floor, Hungary | Cinema Operations - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| I.T. Planet Advertising Ltd.<br>91 Medinat Hayehudim, Herzelia, Israel | Dormant - Cinema-Phone Ltd. (Ownership 100%) | | Ongoing |
| I.T. Poland Development 2003 Sp. z o.o<br>UL. Fosa 37 02-768 Warszawa Poland | Cinema Operations - Cinema City Cinemas sp. z o.o (Ownership 100%) | | Ongoing |
| IT Magyar Cinema Moziüzemeltető és Filmforgalmazó Kft<br>(on struture chart as IT Magyar Cinema KFT)<br>1132 Budapest Vaci ut, 22-24 First Floor, Hungary | Cinema Operations - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| New Age Cinema Kft.<br>1132 Budapest Vaci ut, 22-24 First Floor, Hungary | Advertising - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| New Age Media Romania SRL<br>13 Ana Davila street, sector 5,<br>Bucharest 050491, Romania | Cinema Operations - Cinema City Holding B.V. (Ownership 99.75%) | | Ongoing |
| New Age Media Sp. z o.o.<br>UL. Powsińska 31 02-903<br>Warszawa Poland | Advertising - Cinema City Cinemas sp. z o.o (Ownership 100%) | | Ongoing |
| New Cinemas sp. z o.o<br>UL. Fosa 37 02-768 Warszawa Poland | Cinema Operations - Crown UK HoldCo Limited (Ownership 100%) | | Ongoing |
| Norma Film Limited<br>91 Medinat Hayehudim, Herzelia, Israel | Cinema Operations - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| Seracus Limited<br>75 Prodromou Avenue, 1st Floor, Office 101 Strovolos,<br>Nicosia 2063 Cyprus | Holding Company - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| Wallace Theaters - Guam<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Foreign Subsidiary - Wallace Theater Holdings, Inc. (Ownership 100%) | 99-0344855 | Ongoing |
| Wallace Theaters - Saipan, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Foreign Subsidiary - Wallace Theater Holdings, Inc. (Ownership 100%) | 99-0325979 | Ongoing |
| AC JV, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Joint Venture Between AMC, Cinemark, and NCM - Regal CineMedia Holdings, LLC (Ownership 32%), National CineMedia, LLC (Ownership 4%) | | Ongoing |
| Atom Tickets, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Joint Venture - Regal/Atom Holdings, LLC (Ownership 7.3%) | | Ongoing |
| Black Shrauber<br>Cinema complex, Neomi 4, Jerusalem, Israel | Food Retailer - Cinema-Phone Ltd. (Ownership 100%) | | Ongoing |
| Digital Cinema Distribution Coalition LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Film Distribution - Regal/DCIP Holdings, LLC (Ownership 100%) | | Ongoing |
| Digital Cinema Implementation Partners, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Leasing Company - Regal/DCIP Holdings, LLC (Ownership 100%) | | Dissolved |

Cineworld
Organizational Structure
Exhibit Related to SOFA Part 13, Question 25

| Business Name and Address | Describe the Nature of the Business (+ Immediate Parent) | Employer Identification Number | Dates Business Existed |
|---|---|---|---|
| Domno<br>91 Medinat Hayehudim, Herzelia, Israel | Food Retailer - Cinema-Phone Ltd. (Ownership 100%) | | Ongoing |
| Ipic-Gold Class Entertainment, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Regal/Atom Holdings, LLC (Ownership 6.97%) | | Ongoing |
| JOB4YOU Sp. z.o.o<br>UL. Fosa 37 02-768 Warszawa Poland | Cinema Operations - Cinema City Holding B.V. (Ownership 100%) | | Ongoing |
| Lantern Entertainment Intermediate Holdco, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Regal Cinemas, Inc. (Ownership 4.1%) | | Ongoing |
| National CineMedia, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Screen Advertising - Regal CineMedia Holdings, LLC (Ownership 24%) | | Ongoing |
| Palace Suite, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Dormant - RAM/UA-KOP, LLC (Ownership 100%) | | Ongoing |
| RAM/UA-KOP, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Dormant - UA Shor, LLC (Ownership 50%) | | Ongoing |
| Regal Paramus Park, LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - Regal Cinemas, Inc. (Ownership 99%) | | Ongoing |
| Rosh Food Business<br>91 Medinat Hayehudim, Herzelia, Israel | Food Retailer - Cinema-Phone Ltd. (Ownership 100%) | | Ongoing |
| San Francisco Theatres, Inc.<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - United Artists Theatre Circuit, Inc. (Ownership 100%) | 94-0836730 | Ongoing |
| Siam UATC Company Limited<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Foreign Subsidiary - United Artists Theatre Circuit, Inc. (Ownership 100%) | | Dissolved |
| Spyglass Media Group LLC<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Lantern Entertainment Intermediate Holdco, LLC (Ownership 88%) | | Ongoing |
| United Artists Singapore Theatres Pte. Ltd<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Foreign Subsidiary - United Artists Theatre Circuit, Inc. (Ownership 100%) | | Ongoing |
| United Stonestown Corporation<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations - San Francisco Theatres, Inc. (Ownership 100%) | 94-1609204 | Ongoing |
| Vogue Realty Company<br>101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Property Leasing - United Artists Theatre Circuit, Inc. (Ownership 100%) | 94-1004663 | Ongoing |
| Cineworld Exhibition Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Foreign Subsidiary - Cineworld Estates Limited (Ownership 100%) | 10986 75661 | Dissolved - 12-06-2016 |
| Cineworld Finance Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Foreign Subsidiary - Cineworld Cinemas Limited (Ownership 100%) | 91440 52438 | Dissolved - 12-06-2016 |
| City Screen (Cambridge) Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Foreign Subsidiary - Picturehouse Cinemas Limited (Ownership 100%) | 21827 00692 | Dissolved - 09-26-2017 |
| City Screen (Clapham) Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Foreign Subsidiary - Picturehouse Cinemas Limited (Ownership 100%) | 71450 01600 | Dissolved - 09-26-2017 |
| City Screen (Oxford) Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Foreign Subsidiary - Picturehouse Cinemas Limited (Ownership 100%) | 51450 01792 | Dissolved - 09-26-2017 |
| City Screen (Southampton) Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Foreign Subsidiary - Picturehouse Cinemas Limited (Ownership 100%) | 26450 25363 | Dissolved - 11-07-2017 |
| City Screen (Virtual) Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Foreign Subsidiary - Picturehouse Cinemas Limited (Ownership 100%) | 10070 26721 | Dissolved - 09-26-2017 |
| City Screen [Bath] Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Foreign Subsidiary - Picturehouse Cinemas Limited (Ownership 100%) | 24355 23854 | Dissolved - 09-26-2017 |
| City Screen Developments Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Foreign Subsidiary - Picturehouse Cinemas Limited (Ownership 100%) | 51450 01582 | Dissolved - 11-22-2016 |
| Computicket Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Foreign Subsidiary - Cineworld Cinemas Limited (Ownership 100%) | 53090 20549 | Dissolved - 12-06-2016 |
| CS (Greenwich) Limited<br>8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Foreign Subsidiary - Picturehouse Cinemas Limited (Ownership 100%) | 82703 09242 | Dissolved - 09-26-2017 |

Cineworld
Organizational Structure
Exhibit Related to SOFA Part 13, Question 25

| Business Name and Address | Describe the Nature of the Business (+ Immediate Parent) | Employer Identification Number | Dates Business Existed |
|---|---|---|---|
| Slough Movie Centre Limited 8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Foreign Subsidiary - Gallery Cinemas Limited (Ownership 100%) | 16610 51363 | Dissolved - 12-06-2016 |
| Palace Cinemas Hungary Kft 1132 Budapest Vaci ut, 22-24 First Floor, Hungary | Foreign Subsidiary - Cinema City Holding B.V. (Ownership 99%), Cineworld Group plc (Ownership 1%) | | Merged with IT Magyar Cinema KFT - 12 30-2018 |
| Trafalgar Releasing Limited 8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Film Distribution - Picturehouse Cinemas Limited (Ownership 100%) | 17997 23229 | Sold - 02-07-2017 |
| City Screen (3D) Limited 8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Foreign Subsidiary - Picturehouse Cinemas Limited (Ownership 100%) | 28932 14324 | Dissolved - 12-06-2016 |
| City Screen (Aberdeen) Limited 8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom | Foreign Subsidiary - Picturehouse Cinemas Limited (Ownership 100%) | 39644 11607 | Dissolved - 11-22-2016 |
| Forum 40 Fundusz Inwestycjny Zamkniety Zablocie Street No 25/20 Post code 30-701, City Krakow, Poland | Holding Company - Seracus Limited (Ownership 99.99%), Cinema City Holding B.V. (Ownership.01%) | 1060002894 | Dissolved - 06-11-2018 |
| Entertainment SCSp 26B, Boulevard Royal, L-2449 Luxembourg | Holding Company -  Forum 40 Fundusz Inwestycjny Zamkniety (Ownership 99.99%), CC Sp.Zoo (Ownership .001%) | B 183.264 | Dissolved - 12-20-2017 |
| Film SCSp 26B, Boulevard Royal, L-2449 Luxembourg | Holding Company -  Forum 40 Fundusz Inwestycjny Zamkniety (Ownership 99.99%), external partner (Ownership .001%) | B 183.257 | Dissolved - 12-20-2017 |
| Hollywood SCSp 26B, Boulevard Royal, L-2449 Luxembourg | Holding Company -  Forum 40 Fundusz Inwestycjny Zamkniety (Ownership 99.99%), CC Sp.Zoo (Ownership .001%) | B 183.275 | Dissolved - 12-20-2017 |
| Stars SCSp 26B, Boulevard Royal, L-2449 Luxembourg | Holding Company -  Forum 40 Fundusz Inwestycjny Zamkniety (Ownership 99.99%), CC Sp.Zoo (Ownership .001%) | B 183.321 | Dissolved - 12-20-2017 |
| Studio SCSp-26B, Boulevard Royal, L-2449 Luxembourg | Holding Company -  Forum 40 Fundusz Inwestycjny Zamkniety (99.99%) & by CC Sp.Zoo (.001%) (Ownership 99.99% & .001%) | B 183.263 | Dissolved - 12-20-2017 |
| United Artists/Pacific Media Joint Venture 9110 E NICHOLS AVE, STE 200, ENGLEWOOD, CO 80112 00, United States | | 19971145491 | |
| Orix RAM Montgomery Venture 101 E. Blount Avenue, Knoxville, TN 37920-1605 | | | |
| R and S Theatres, Inc. 101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations | 72-0983123 | |
| Open Road Releasing, LLC 101 E. Blount Avenue, Knoxville, TN 37920-1605 | Cinema Operations | 27-4344736 | |
| Open Road Films, LLC 101 E. Blount Avenue, Knoxville, TN 37920-1605 | Film Distribution | 27-4724435 | |
| Rio Rich Theatres Ventures 101 E. Blount Avenue, Knoxville, TN 37920-1605 | Dormant | | |
| The Turp Company 101 E. Blount Avenue, Knoxville, TN 37920-1605 | Dormant | | |
| UA Mexico Holdings S.A. de C.V. AV DE LAS PALMAS ENT S MOJADA 45 11000 MIGUEL HIDALGO Mexico | Dormant | | |
| UATC Europe B.V. | Dormant | | |

**United Artists Theatre Circuit, Inc.**                                                    **Case Number:**      **22-90212 (MI)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
| --- | --- |

### 26. Books, records, and financial statements

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and Address | | Dates of Service | | | |
| --- | --- | --- | --- | --- | --- |
| 26a.1 | NISAN COHEN - CHIEF FINANCIAL OFFICER<br>8TH FLOOR, VANTAGE LONDON, GREAT WEST ROAD, BRENTFORD, TW8 9AG | From: | 1/1/2017 | To: | Ongoing |
| 26a.2 | VINCE FUSCO - CHIEF FINANCIAL OFFICER<br>101 E. BLOUNT AVENUE, KNOXVILLE, TN 37920 | From: | 2/28/2018 | To: | 6/30/2021 |

**United Artists Theatre Circuit, Inc.**                                    **Case Number:**      **22-90212 (MI)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 26. Books, records, and financial statements

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and Address | | Dates of Service | | | |
|---|---|---|---|---|---|
| 26b.1 | PRICEWATERHOUSECOOPERS LLP - INDEPENDENT AUDITORS<br>1 EMBANKMENT PLACE, CHARING CROSS, LONDON WC2N 6RH | From: | 6/17/2019 | To: | Ongoing |

**United Artists Theatre Circuit, Inc.**                                    **Case Number:**        **22-90212 (MI)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 26. Books, records, and financial statements

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and Address | If any Books of Account and Records are Unavailable, Explain Why |
|---|---|
| 26c.1   NISAN COHEN - CHIEF FINANCIAL OFFICER<br>8TH FLOOR, VANTAGE LONDON, GREAT WEST ROAD, BRENTFORD, TW8 9AG | |
| 26c.2   PRICEWATERHOUSECOOPERS LLP - INDEPENDENT AUDITORS<br>1 EMBANKMENT PLACE, CHARING CROSS, LONDON WC2N 6RH | |

**United Artists Theatre Circuit, Inc.**                                        **Case Number:**        **22-90212 (MI)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 26. Books, records, and financial statements

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

**Name and Address**

26d.1   REFER TO FOOTNOTE

---

<u>Specific Notes</u>

Pursuant to the requirements of the Financial Conduct Authority ("FCA") Disclosure Guidance and Transparency Rule 4.1 and FCA Listing Rule 9, Cineworld Group plc prepares and files annual financial reports with the National Storage Mechanism of the FCA. These filings contain consolidated financial information relating to Cineworld Group plc and its subsidiaries. Additionally, Cineworld Group plc provides its annual reports and accounts as well as its interim financial information on its website. As the required annual reports are of public record, and are required to remain public for 10 years, the Debtor does not maintain records of the parties who requested or obtained copies of any of the such filings from the National Storage Mechanism of the Financial Conduct Authority, the Debtor or other sources.

**United Artists Theatre Circuit, Inc.**                                          Case Number:      **22-90212 (MI)**

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |
|---|---|

## 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No

☑ Yes. Give the details about the two most recent inventories.

| | Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|---|
| 27.1 | Theatre Manager | SITE 1138 : BULBS INVENTORY<br>30-38 MAIN STREET EAST<br>HAMPTON, NY UNITED STATES | 8/17/2022 | $502.12 | Average Cost |
| 27.2 | Theatre Manager | SITE 1284 : BULBS INVENTORY<br>3351 WEST SHAW AVENUE<br>FRESNO, CA UNITED STATES | 8/17/2022 | $4,564.81 | Average Cost |
| 27.3 | Theatre Manager | SITE 1310 : BULBS INVENTORY<br>9161 COMMERCE CENTER DR.<br>COLUMBIA, MD UNITED STATES | 8/17/2022 | $2,511.26 | Average Cost |
| 27.4 | Theatre Manager | SITE 1313 : BULBS INVENTORY<br>119 W. MONTAUK HIGHWAY<br>HAMPTON BAYS, NY UNITED STATES | 8/17/2022 | $2,448.93 | Average Cost |
| 27.5 | Theatre Manager | SITE 1314 : BULBS INVENTORY<br>3720 MAIN STREET MANAYUNK,<br>PA UNITED STATES | 8/17/2022 | $1,314.65 | Average Cost |
| 27.6 | Theatre Manager | SITE 1317 : BULBS INVENTORY<br>N. 6100 FREEWAY FT WORTH,<br>TX UNITED STATES | 8/17/2022 | $4,959.79 | Average Cost |
| 27.7 | Theatre Manager | SITE 1319 : BULBS INVENTORY<br>20 MICHAEL AVE FARMINGDALE,<br>NY UNITED STATES | 8/17/2022 | $9,693.56 | Average Cost |
| 27.8 | Theatre Manager | SITE 1294 : BULBS INVENTORY<br>3033 SPRINGVALE DRIVE<br>WALLED LAKE, MI UNITED STATES | 8/17/2022 | $3,030.24 | Average Cost |
| 27.9 | Theatre Manager | SITE 1326 : BULBS INVENTORY<br>9355 PARK MEADOWS DR<br>LITTLETON, CO UNITED STATES | 8/17/2022 | $2,769.32 | Average Cost |
| 27.10 | Theatre Manager | SITE 1325 : BULBS INVENTORY<br>1200 BRECKENRIDGE DR.<br>LITTLE ROCK, AR UNITED STATES | 8/17/2022 | $2,021.28 | Average Cost |
| 27.11 | Theatre Manager | SITE 1331 : BULBS INVENTORY<br>2474 FOREST AVENUE STATEN<br>ISLAND, NY UNITED STATES | 8/17/2022 | $5,935.81 | Average Cost |
| 27.12 | Theatre Manager | SITE 1214 : CONCESSIONS INVENTORY<br>2830 HIGHWAY 90 WEST LAKE<br>CITY, FL UNITED STATES | 7/20/2022 | $6,013.75 | Average Cost |

United Artists Theatre Circuit, Inc.                                                    Case Number:      22-90212 (MI)

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

## 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No

☑ Yes. Give the details about the two most recent inventories.

| | Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|---|
| 27. 13 | Theatre Manager | SITE 1285 : CONCESSIONS INVENTORY<br>520 N. SUNRISE AVENUE<br>ROSEVILLE, CA UNITED STATES | 7/20/2022 | $22,878.49 | Average Cost |
| 27. 14 | Theatre Manager | SITE 1313 : CONCESSIONS INVENTORY<br>119 W. MONTAUK HIGHWAY<br>HAMPTON BAYS, NY UNITED STATES | 8/17/2022 | $6,366.05 | Average Cost |
| 27. 15 | Theatre Manager | SITE 1335 : CONCESSIONS INVENTORY<br>102 NORTH END AVE. NEW YORK, NY UNITED STATES | 7/20/2022 | $47,187.73 | Average Cost |
| 27. 16 | Theatre Manager | SITE 1284 : CONCESSIONS INVENTORY<br>3351 WEST SHAW AVENUE<br>FRESNO, CA UNITED STATES | 8/17/2022 | $12,829.69 | Average Cost |
| 27. 17 | Theatre Manager | SITE 1226 : BULBS INVENTORY<br>8998 WEST BROAD STREET<br>RICHMOND, VA UNITED STATES | 8/17/2022 | $1,016.85 | Average Cost |
| 27. 18 | Theatre Manager | SITE 1291 : BULBS INVENTORY<br>49 MARYLAND ST<br>INDIANAPOLIS, IN UNITED STATES | 8/17/2022 | $3,015.40 | Average Cost |
| 27. 19 | Theatre Manager | SITE 1149 : BULBS INVENTORY<br>9000 S.W. 136TH STREET MIAMI, FL UNITED STATES | 8/17/2022 | $2,807.91 | Average Cost |
| 27. 20 | Theatre Manager | SITE 1172 : BULBS INVENTORY<br>2274 SHATTUCK AVENUE<br>BERKELEY, CA UNITED STATES | 8/17/2022 | $4,031.06 | Average Cost |
| 27. 21 | Theatre Manager | SITE 1185 : BULBS INVENTORY<br>2301 VILLA AVE CLOVIS, CA UNITED STATES | 8/17/2022 | $1,436.08 | Average Cost |
| 27. 22 | Theatre Manager | SITE 1200 : BULBS INVENTORY<br>1350 BOONE ST LEESVILLE, LA UNITED STATES | 8/17/2022 | $4,034.70 | Average Cost |
| 27. 23 | Theatre Manager | SITE 1327 : BULBS INVENTORY<br>8275 W AMARILLO BLVD<br>AMARILLO, TX UNITED STATES | 8/17/2022 | $4,008.31 | Average Cost |

United Artists Theatre Circuit, Inc.                                    Case Number:     22-90212 (MI)

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

## 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No

☑ Yes. Give the details about the two most recent inventories.

| | Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|---|
| 27.24 | Theatre Manager | SITE 1204 : BULBS INVENTORY 454 BROOKWAY BLVD. BROOKHAVEN, MS UNITED STATES | 8/17/2022 | $1,990.20 | Average Cost |
| 27.25 | Theatre Manager | SITE 1258 : BULBS INVENTORY 2141 NORTH SEMORAN BLVD APOPKA, FL UNITED STATES | 8/17/2022 | $604.92 | Average Cost |
| 27.26 | Theatre Manager | SITE 1143 : BULBS INVENTORY 108-22 QUEENS BLVD FOREST HILLS, NY UNITED STATES | 8/17/2022 | $4,755.48 | Average Cost |
| 27.27 | Theatre Manager | SITE 1267 : BULBS INVENTORY 1075 PARKWAY BLVD FLOWOOD, MS UNITED STATES | 8/17/2022 | $3,176.75 | Average Cost |
| 27.28 | Theatre Manager | SITE 1278 : BULBS INVENTORY 2345 CHESHIRE BRIDGE RD, N.E. ATLANTA, GA UNITED STATES | 8/17/2022 | $1,848.84 | Average Cost |
| 27.29 | Theatre Manager | SITE 1281 : BULBS INVENTORY 121 TUCKAHOE ROAD SEWELL, NJ UNITED STATES | 8/17/2022 | $4,159.46 | Average Cost |
| 27.30 | Theatre Manager | SITE 1333 : CONCESSIONS INVENTORY 35-30 38TH STREET LONG ISLAND CITY, NY UNITED STATES | 7/20/2022 | $51,867.13 | Average Cost |
| 27.31 | Theatre Manager | SITE 1281 : CONCESSIONS INVENTORY 121 TUCKAHOE ROAD SEWELL, NJ UNITED STATES | 8/17/2022 | $11,786.36 | Average Cost |
| 27.32 | Theatre Manager | SITE 1335 : CONCESSIONS INVENTORY 102 NORTH END AVE. NEW YORK, NY UNITED STATES | 8/17/2022 | $51,981.42 | Average Cost |
| 27.33 | Theatre Manager | SITE 1333 : CONCESSIONS INVENTORY 35-30 38TH STREET LONG ISLAND CITY, NY UNITED STATES | 8/17/2022 | $36,437.94 | Average Cost |
| 27.34 | Theatre Manager | SITE 1331 : CONCESSIONS INVENTORY 2474 FOREST AVENUE STATEN ISLAND, NY UNITED STATES | 8/17/2022 | $21,803.95 | Average Cost |

United Artists Theatre Circuit, Inc.                                      Case Number:      22-90212 (MI)

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

## 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No

☑ Yes. Give the details about the two most recent inventories.

| | Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|---|
| 27. 35 | Theatre Manager | SITE 1327 : CONCESSIONS INVENTORY 8275 W AMARILLO BLVD AMARILLO, TX UNITED STATES | 8/17/2022 | $16,867.45 | Average Cost |
| 27. 36 | Theatre Manager | SITE 1326 : CONCESSIONS INVENTORY 9355 PARK MEADOWS DR LITTLETON, CO UNITED STATES | 8/17/2022 | $20,961.15 | Average Cost |
| 27. 37 | Theatre Manager | SITE 1325 : CONCESSIONS INVENTORY 1200 BRECKENRIDGE DR. LITTLE ROCK, AR UNITED STATES | 8/17/2022 | $11,507.45 | Average Cost |
| 27. 38 | Theatre Manager | SITE 1319 : CONCESSIONS INVENTORY 20 MICHAEL AVE FARMINGDALE, NY UNITED STATES | 8/17/2022 | $16,629.91 | Average Cost |
| 27. 39 | Theatre Manager | SITE 1314 : CONCESSIONS INVENTORY 3720 MAIN STREET MANAYUNK, PA UNITED STATES | 8/17/2022 | $17,129.09 | Average Cost |
| 27. 40 | Theatre Manager | SITE 1310 : CONCESSIONS INVENTORY 9161 COMMERCE CENTER DR. COLUMBIA, MD UNITED STATES | 8/17/2022 | $16,429.12 | Average Cost |
| 27. 41 | Theatre Manager | SITE 1306 : CONCESSIONS INVENTORY 11801 MCCREE ROAD DALLAS, TX UNITED STATES | 8/17/2022 | $15,248.89 | Average Cost |
| 27. 42 | Theatre Manager | SITE 1294 : CONCESSIONS INVENTORY 3033 SPRINGVALE DRIVE WALLED LAKE, MI UNITED STATES | 8/17/2022 | $5,825.48 | Average Cost |
| 27. 43 | Theatre Manager | SITE 1291 : CONCESSIONS INVENTORY 49 MARYLAND ST INDIANAPOLIS, IN UNITED STATES | 8/17/2022 | $13,048.31 | Average Cost |
| 27. 44 | Theatre Manager | SITE 1306 : BULBS INVENTORY 11801 MCCREE ROAD DALLAS, TX UNITED STATES | 8/17/2022 | $4,178.45 | Average Cost |

United Artists Theatre Circuit, Inc.                                    Case Number:      22-90212 (MI)

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

## 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No

☑ Yes. Give the details about the two most recent inventories.

| | Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|---|
| 27.45 | Theatre Manager | SITE 1710 : CONCESSIONS INVENTORY 20000 CENTURY BLVD. GERMANTOWN, MD UNITED STATES | 8/17/2022 | $12,588.51 | Average Cost |
| 27.46 | Theatre Manager | SITE 1278 : CONCESSIONS INVENTORY 2345 CHESHIRE BRIDGE RD, N.E. ATLANTA, GA UNITED STATES | 8/17/2022 | $6,905.32 | Average Cost |
| 27.47 | Theatre Manager | SITE 1317 : CONCESSIONS INVENTORY N. 6100 FREEWAY FT WORTH, TX UNITED STATES | 8/17/2022 | $22,391.08 | Average Cost |
| 27.48 | Theatre Manager | SITE 1267 : CONCESSIONS INVENTORY 1075 PARKWAY BLVD FLOWOOD, MS UNITED STATES | 8/17/2022 | $6,667.81 | Average Cost |
| 27.49 | Theatre Manager | SITE 1258 : CONCESSIONS INVENTORY 2141 NORTH SEMORAN BLVD APOPKA, FL UNITED STATES | 8/17/2022 | $9,556.84 | Average Cost |
| 27.50 | Theatre Manager | SITE 1226 : CONCESSIONS INVENTORY 8998 WEST BROAD STREET RICHMOND, VA UNITED STATES | 8/17/2022 | $7,053.83 | Average Cost |
| 27.51 | Theatre Manager | SITE 1214 : CONCESSIONS INVENTORY 2830 HIGHWAY 90 WEST LAKE CITY, FL UNITED STATES | 8/17/2022 | $7,295.41 | Average Cost |
| 27.52 | Theatre Manager | SITE 1204 : CONCESSIONS INVENTORY 454 BROOKWAY BLVD. BROOKHAVEN, MS UNITED STATES | 8/17/2022 | $5,176.40 | Average Cost |
| 27.53 | Theatre Manager | SITE 1200 : CONCESSIONS INVENTORY 1350 BOONE ST LEESVILLE, LA UNITED STATES | 8/17/2022 | $8,118.88 | Average Cost |
| 27.54 | Theatre Manager | SITE 1185 : CONCESSIONS INVENTORY 2301 VILLA AVE CLOVIS, CA UNITED STATES | 8/17/2022 | $8,491.46 | Average Cost |

United Artists Theatre Circuit, Inc.                                      Case Number:    22-90212 (MI)

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No

☑ Yes. Give the details about the two most recent inventories.

| | Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|---|
| 27.55 | Theatre Manager | SITE 1172 : CONCESSIONS INVENTORY 2274 SHATTUCK AVENUE BERKELEY, CA UNITED STATES | 8/17/2022 | $4,386.31 | Average Cost |
| 27.56 | Theatre Manager | SITE 1149 : CONCESSIONS INVENTORY 9000 S.W. 136TH STREET MIAMI, FL UNITED STATES | 8/17/2022 | $19,550.13 | Average Cost |
| 27.57 | Theatre Manager | SITE 1143 : CONCESSIONS INVENTORY 108-22 QUEENS BLVD FOREST HILLS, NY UNITED STATES | 8/17/2022 | $34,961.49 | Average Cost |
| 27.58 | Theatre Manager | SITE 1138 : CONCESSIONS INVENTORY 30-38 MAIN STREET EAST HAMPTON, NY UNITED STATES | 8/17/2022 | $7,652.62 | Average Cost |
| 27.59 | Theatre Manager | SITE 1710 : CONCESSIONS INVENTORY 20000 CENTURY BLVD. GERMANTOWN, MD UNITED STATES | 7/20/2022 | $9,656.61 | Average Cost |
| 27.60 | Theatre Manager | SITE 1285 : CONCESSIONS INVENTORY 520 N. SUNRISE AVENUE ROSEVILLE, CA UNITED STATES | 8/17/2022 | $20,573.51 | Average Cost |

**United Artists Theatre Circuit, Inc.**                                    **Case Number:**     **22-90212 (MI)**

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |

**28.  List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name and Address | Position and Nature of any Interest | Percent of Interest, if any |
|---|---|---|
| 28.1 BORUFF, TODD<br>101 E. BLOUNT AVENUE<br>KNOXVILLE, TN 37920-1605 | ASSISTANT SECRETARY AND VICE PRESIDENT | |
| 28.2 CURRY, JOHN<br>101 E. BLOUNT AVENUE<br>KNOXVILLE, TN 37920-1605 | ASSISTANT SECRETARY AND VICE PRESIDENT | |
| 28.3 EYRE, MATTHEW NEIL<br>101 E. BLOUNT AVENUE<br>KNOXVILLE, TN 37920-1605 | DIRECTOR AND SECRETARY | |
| 28.4 SOUDRY, TAL<br>101 E. BLOUNT AVENUE<br>KNOXVILLE, TN 37920-1605 | CHIEF FINANCIAL OFFICER AND TREASURER | |

United Artists Theatre Circuit, Inc.                                   Case Number:        22-90212 (MI)

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |

**29.  Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☑ No
☐ Yes. Identify below.

| Name and Address | Position and Nature of Interest | Period During Which Position Was Held |
|---|---|---|
| 29.1    NONE | | From: _____   To: _____ |

**United Artists Theatre Circuit, Inc.**                                                    **Case Number:**       **22-90212 (MI)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

### 30. Payments, Distributions, or Withdrawals Credited or Given to Insiders

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No

☑ Yes. Identify below.

| Name and Address of Recipient and Relationship to Debtor | Amount | Dates | Reason for Providing the Value |
|---|---|---|---|
| 30.1    REFER TO SOFA 4 . | | | |

**United Artists Theatre Circuit, Inc.**                                    **Case Number:**      **22-90212 (MI)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**31.  Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No
☑ Yes. Identify below.

| Name of Parent Corporation | Employer Identification Number of the Parent Corporation |
|---|---|
| 31. 1   CROWN FINANCE US, INC. | EIN:    82-3615286 |

**United Artists Theatre Circuit, Inc.**                                              **Case Number:**      **22-90212 (MI)**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**32.  Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No

☐ Yes. Identify below.

| Name of Pension Fund | Employer Identification Number of the Pension Fund |
|---|---|
| 32. 1    NONE | EIN: |

**United Artists Theatre Circuit, Inc.**                                    **Case Number:**        **22-90212 (MI)**

---

| **Part 14:** | **Signature and Declaration** |

---

Warning -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this Statement of Financial Affairs and any attachments and have a resonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Executed on:**        November 7, 2022

**Signature:**    /s/ Nisan Cohen                                    Nisan Cohen, Chief Financial Officer

                                                                **Name and Title**

Are additional pages to the Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?

[X] No

[ ] Yes