IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>CINEWORLD GROUP PLC, *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 22-90168 (MI)<br>)<br>) (Jointly Administered)<br>)<br>) Re: Docket No. 668 |

**DECLARATION OF DISINTERESTEDNESS OF FGS GLOBAL (US) LLC PURSUANT TO THE ORDER AUTHORIZING THE RETENTION AND COMPENSATION OF CERTAIN PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS**

I, Ajay Junnarkar, make this declaration (this "Declaration") under penalty of perjury:

1. I am a Chief Financial Officer of FGS Global (US) LLC located at 909 Third Avenue, 32nd Floor, New York NY 10022 (the "Company").

2. Cineworld Group plc and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), have requested that the Company provide services as a corporate communications consultant to the Debtors, namely Cineworld Group PLC, and the Company has consented to provide such services.

3. The Company may have performed services in the past, may currently perform services and may perform services in the future, in matters unrelated to these chapter 11 cases, for persons that are parties in interest in the Debtors' chapter 11 cases. The Company does not perform services for any such person in connection with these chapter 11 cases or have any relationship

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/cineworld. The location of Debtor Cineworld Group plc's principal place of business and the Debtors' service address in these chapter 11 cases is: 8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom.

with any such person, their attorneys, or accountants that would be adverse to the Debtors or their estates with respect to the matter on which the Company is proposed to be employed.

4. As part of its customary practice, the Company is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be employed by the Debtors, claimants, and parties in interest in these chapter 11 cases.

5. Neither I nor any principal, partner, director, officer of, or professional employed by, the Company has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principal and regular employees of the Company.

6. Neither I nor any principal, partner, director, officer, of or professional employed by, the Company, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which this Company is to be employed.

7. The Debtors owe the Company $0.00 for prepetition services, the payment of which is subject to limitations contained in the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532.

8. I understand that the amount owed by any of the Debtors to the Company for prepetition services will be treated as a general unsecured claim, and, as such, the Company may file a proof of claim.

9. I further understand that this Declaration will not suffice as the Company's proof of claim.

10. As of September 7, 2022, which was the date on which the Debtors commenced these chapter 11 cases, the Company was party to an agreement for indemnification with certain of the Debtors. A copy of such agreement is attached as **Exhibit 1** to this Declaration.

11. Such agreement for indemnification (the "OCP Agreement") is subject to the following modifications, applicable during the pendency of the Debtors' chapter 11 cases:

(a) The OCP shall not be entitled to indemnification, contribution, or reimbursement pursuant to the OCP Agreement for services other than the services provided under the OCP Agreement, unless such services and the indemnification, contribution, or reimbursement are approved by the Court.

(b) Notwithstanding anything to the contrary in the OCP Agreement, the Debtors shall have no obligation to indemnify the OCP, or provide contribution or reimbursement to the OCP, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from the OCP's gross negligence, willful misconduct, fraud, self-dealing (if found to be applicable), bad faith, or breach of fiduciary duty (if any); (ii) for a contractual dispute in which the Debtors allege the breach of the OCP's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; (iii) of any type for which the Court determines that indemnification, contribution, or reimbursement would not be permissible; or (iv) settled prior to a judicial determination under (i) or (ii), but determined by the Court, after notice and a hearing, to be a claim or expense for which the OCP should not receive indemnity, contribution, or reimbursement under the terms of the OCP Agreement as modified by the Court.

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing these chapter 11 cases, the OCP believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the OCP Agreement (as modified by this Order), including the advancement of defense costs, the OCP must file an application therefor in this Court, and the Debtors may not pay any such amounts to the OCP before the entry of an order by the Court approving the payment. All parties in interest shall retain the right to object to any demand by the OCP for indemnification, contribution, or reimbursement. In the event that the OCP seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the OCP Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in the OCP's own applications, both

interim and final, but determined by the Court after notice and a hearing.

12. The Company is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Company should discover any facts bearing on the matters described herein, the Company will supplement the information contained in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date:  November 14, 2022

_____
Ajay Junnarkar
Chief Financial Officer

EXHIBIT I



*909 Third Avenue*
*Floor 32*
*New York, NY 10022*
*646.805.2007*
*fax 646.805.2098*

August 25, 2022

Ms. Renana Teperberg
Chief Commercial Officer
Cineworld Group PLC
8th Floor, Vantage London,
Great West Road, Brentford, TW8 9AG

Dear Ms. Teperberg:

This letter, when signed by both Cineworld Group PLC ("you", "your", or "Client") and FGS Global (US) LLC, including its affiliates, if any ("we", "us", "our", or "FGS"), will constitute an agreement (the "Agreement") between you and us with regard to our engagement by you as a consultant for certain of your corporate communications work.

1.  Fees: For our services on your behalf, you agree to pay us a retainer of $250,000 (the "Fee"), payable upon your signing of this Agreement, against which we will charge time at our standard hourly rates and related expenses. Once the Fee, or any Additional Fee, has been exhausted, you agree to immediately pay us an additional retainer of $250,000 (the "Additional Fee"), against which we will charge time at our standard hourly rates and related expenses. Upon termination of this Agreement any unutilized portion of an Additional Fee will be refunded to you. Following each month end we will provide you an accounting of the actual fees and expenses incurred on your behalf for the prior month.

    Our standard hourly time charges, for which we will provide a 15% discount on all fees incurred above the Fee, are as follows:

    | | |
    |---|---|
    | Partner | $1,000 / $1,200 |
    | Managing Director | $850 |
    | Director | $700 |
    | Associate Director | $550 |
    | Senior Associate | $450 |
    | Associate | $275 / $375 |
    | Administrative/Intern | $125 |

    The above hourly time charges shall be subject to change on thirty (30) days notice.

Renana Teperberg
Cineworld Group PLC

Page 2

    Expenses:  For our services on your behalf, you agree to pay us for reasonable disbursements and other charges incurred by us, which will be billed to you monthly, in arrears. We agree to obtain your approval for any individual disbursements in excess of $1,000, other than for air travel in business class for international flights. Invoices for expenses are payable upon receipt.  Notwithstanding the foregoing, we reserve the right at any time to require advance payments for outlays on your behalf.

    Payments: Unless otherwise provided in this Agreement, payments are due within thirty (30) days of date of invoice.  If payment is overdue, we have the right to cease provision of the services without liability and/or charge interest, computed monthly, at one and one-half percent (1 1/2 percent) over the prime rate of interest in effect at JPMorgan Chase Bank, in New York City, on the overdue amount outstanding at the end of each 30-day period, until payment is received.  In the event of a disputed charge, you shall promptly notify us in writing of the disputed amount and reason for the dispute, and you agree to pay all undisputed amounts owed while the dispute is under negotiation.

2. Term: This Agreement shall commence as of August 5, 2022 and will continue unless and until terminated by either party upon prior written notice to the other, by email, overnight courier service, registered or certified mail.  Upon termination of this Agreement, you agree to pay all undisputed fees, disbursements and other charges incurred prior to the effective date of such termination.

3. Confidential Information: We acknowledge that in the process of providing services to you we may receive confidential information.  We agree that we will not use or disclose any such information for any purpose except for your benefit in connection with the services to be performed by us under this Agreement.  You agree that we may disclose any such confidential information (i) if we determine, in good faith, that such disclosure is required under applicable law, or (ii) if we are required to disclose such information (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process), provided that we shall cooperate with you to limit the extent of such disclosure through protective order or otherwise, and to seek confidential treatment of any portion of the information to be disclosed under this clause (iii) as you may designate.  If, in the absence of a protective order, we are compelled to disclose such information to any tribunal or else be held liable for contempt or suffer other censure or penalty, we may disclose such information to such tribunal without liability hereunder.  Confidential information shall not be deemed to include information which (a) is public knowledge or becomes generally available to the public other than as a result of disclosure by us; (b) was completely and independently received by us from a third party who, to our knowledge, was not prohibited from disclosing it to us, or (c) is in our possession prior to disclosure by you.

4. Indemnity:  You  hereby agree to indemnify and hold harmless us, our affiliates, our parent, WPP plc, and all of its subsidiary and affiliated entities, our and their officers, directors, members, agents, employees, consultants, freelancers, independent contractors and representatives (each of the foregoing, including us, being hereinafter referred to as an "Indemnified Person") to the fullest extent permitted by law from and against any and all losses, claims, damages, actions, proceedings, arbitrations or investigations or threats

Renana Teperberg
Cineworld Group PLC

Page 3

thereof, and expenses related thereto (including reasonable fees, disbursements, and other charges of counsel) (all of the foregoing being hereinafter referred to as "Liabilities"), based upon, relating to or arising out of our engagement by you to perform services hereunder or any Indemnified Person's role therein; provided, however, that you shall not be liable under this paragraph: (a) for any amount paid in settlement of claims without your consent, unless your consent is unreasonably withheld, or (b) to the extent that it is finally judicially determined, or expressly stated in an arbitration award after final judicial proceedings, that such Liabilities resulted primarily from the willful misconduct or gross negligence of the Indemnified Person seeking indemnification.  In connection with your obligation to indemnify for expenses as set forth above, you further agree to reimburse each Indemnified Person for all such expenses (including reasonable fees, disbursements, and other charges of counsel) as they are incurred by such Indemnified Person; provided, however, that if any Indemnified Person is reimbursed hereunder for any expenses, the amount so paid shall be refunded if and to the extent it is finally judicially determined, or expressly stated in an arbitration award after final judicial proceedings, that the Liabilities in question resulted primarily from the willful misconduct or gross negligence of such Indemnified Person.  You hereby also agree that neither we nor any other Indemnified Person shall have any liability to you (or anyone claiming through you or in your name) for Liabilities arising in connection with our engagement by you except to the extent that it is finally judicially determined, or expressly stated in an arbitration award after final judicial proceedings, that such Liabilities resulted primarily from the willful misconduct or gross negligence of such Indemnified Person.

NEITHER YOU NOR US, NOR EACH OF OUR RESPECTIVE PARENTS, AFFILIATED COMPANIES, DIRECTORS, OFFICERS, EMPLOYEES, SHAREHOLDERS, LICENSEES OR AGENTS SHALL BE HELD LIABLE TO THE OTHER FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES ARISING IN ANY MANNER FROM THE ACTIVITIES CONTEMPLATED BY THIS AGREEMENT, WHETHER UNDER CONTRACT, TORT, OR OTHER CAUSE OF ACTION, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. EXCEPT AS EXPRESSLY PROVIDED HEREIN, NEITHER PARTY MAKES ANY WARRANTY, EXPRESS OR IMPLIED, REGARDING THE SERVICES TO BE PROVIDED HEREUNDER OR THAT ANY SOFTWARE OR OTHER ELECTRONIC DEVICES PROVIDED OR WEBSITE CREATED OR HOSTED BY US WILL BE ERROR FREE OR OPERATE WITHOUT INTERRUPTION AND THE WARRANTIES OF TITLE, MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE EXPRESSLY EXCLUDED.  NOTWITHSTANDING ANY OTHER PROVISION HEREIN, OUR TOTAL, AGGREGATE LIABILITY FOR ALL CLAIMS ARISING IN CONNECTION WITH THIS AGREEMENT SHALL NOT EXCEED $5,000,000 AND OUR TOTAL LIABILITY FOR ANY SPECIFIC CLAIM SHALL NOT EXCEED THREE (3) TIMES THE PAYMENTS RECEIVED AND RETAINED BY US AS OUR FEE FOR THE SERVICES WITH RESPECT TO WHICH THE CLAIM IS MADE.  CLAIMS FOR DAMAGES MUST BE MADE BY YOU WITHIN ONE (1) YEAR OF THE INCIDENT TO WHICH THEY RELATE OR BE FOREVER BARRED.  EACH

Renana Teperberg
Cineworld Group PLC

Page 4

>PARTY SHALL EXERCISE COMMERCIALLY REASONABLE EFFORTS TO MITIGATE ANY DAMAGES TO THE OTHER PARTY.
>
>The provisions of this section shall survive the termination of this Agreement.

5. Client-FGS Relationship: FGS acts in all its contracts as principal at law and nothing in this Agreement shall imply any partnership or agency relationship between the parties. We shall remain solely liable for all compensation and benefits paid to our employees and any taxes related thereto.

6. Responsibilities of the Client: You represent that all of the information that you provide to us under this Agreement will, to your knowledge, be accurate and complete in all material respects and that we may rely on the accuracy and completeness of such information without independent verification.

7. Ownership of Materials: All materials prepared expressly for you or purchased for your account hereunder will, upon full payment by you of all sums due us, be your property exclusively, to the extent that we have such rights and subject to such limitations as may be disclosed by us.

8. No Solicitation: During the term of this Agreement and for a period of one year thereafter, you and we agree not to solicit for hire, induce or attempt to hire, or hire any employee of the other party with which it was directly involved under this Agreement. This provision shall not apply to mass solicitations of employees by such means as newspaper or internet advertisement.

9. Electronic Documentation: This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and all of which shall together constitute one and the same agreement, and shall become effective when signed by each of the parties hereto and delivered to the other party in person or by facsimile or other reliable electronic means. The parties agree that this Agreement, once validly executed, may be stored by electronic means and that either an original or an electronically stored copy of the Agreement can be used for all purposes, including in any proceeding to enforce the rights and/or obligations of the parties to this Agreement.

10. Applicable Law: This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York applicable to agreements made and to be performed entirely within such State, without regard to the principles of conflicts of law. All actions and proceedings arising out of or relating to this Agreement shall be heard and determined exclusively in any New York state or federal court sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction the parties hereby irrevocably submit. The parties hereby irrevocably waive any defense or objection to the New York forum designated above. The parties waive all right to trial by jury in any action, suit, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement or our engagement by you to perform services hereunder.

Renana Teperberg
Cineworld Group PLC

Page 5

11. Miscellaneous: This Agreement sets forth the entire agreement and understanding of the parties relating to the subject matter hereof and supersedes all prior agreements, arrangements, and understandings, written or oral, relating thereto.  No representation, promise, or inducement has been made by either party that is not embodied in this Agreement and neither party shall be bound by or liable for any alleged representation, promise, or inducement not so set forth.  Neither party shall have the right to assign any of its rights or obligations under this Agreement.  No amendment or waiver of this Agreement shall be effective, binding, or enforceable unless in writing and signed by both you and us or, in the case of a waiver, by the party granting the waiver.

Please confirm that the foregoing correctly sets forth our understanding by signing and returning to us a copy of this letter.

Very truly yours,

By: _____
Ajay Junnarkar
Chief Financial Officer


ACCEPTED AND AGREED:
Cineworld Group PLC

By: _____
Renana Teperberg
Chief Commercial Officer