**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CINEWORLD GROUP PLC, *et al.*,[1] | ) ) ) | Case No. 22-90168 (MI) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DEBTORS' FOURTH OMNIBUS MOTION
FOR ENTRY OF AN ORDER (I) AUTHORIZING
(A) REJECTION OF CERTAIN UNEXPIRED LEASES OF
NON-RESIDENTIAL REAL PROPERTY AND (B) ABANDONMENT
OF CERTAIN PERSONAL PROPERTY, IF ANY, EACH EFFECTIVE
AS OF THE REJECTION DATE, AND (II) GRANTING RELATED RELIEF**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

> **Parties receiving this motion should locate their respective names and leases on the list of rejected leases on Schedule 1 to the proposed Order.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):[2]

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/cineworld. The location of Debtor Cineworld Group plc's principal place of business and the Debtors' service address in these chapter 11 cases is:  8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom.

[2]  The facts and circumstances supporting this Motion are set forth in (a) the *Declaration of Israel Greidinger, Deputy Chief Executive Officer of Cineworld Group plc, in Support of the Debtors' Chapter 11 Petitions* [Docket No. 19] (the "Greidinger First Day Declaration") and (b) the *Declaration of James A. Mesterharm, Chief Restructuring Officer of Cineworld Group plc, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 80] (together with the Greidinger First Day Declaration, the "First Day Declarations"), each incorporated by reference herein.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declarations.

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), (a) authorizing the Debtors to (i) reject certain unexpired leases, including any amendments or modifications thereto (each, a "Lease," and collectively, the "Leases") for non-residential real property located at the premises (collectively, the "Premises") listed on Schedule 1 to the Order and (ii) abandon certain equipment, fixtures, furniture, or other personal property (collectively, the "Personal Property") that may be located at the Premises, each effective as of the rejection date listed on Schedule 1 to the Order (the "Rejection Date"), and (b) granting related relief.

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 365(a), and 554(a) of title 11 of the United States Code (the "Bankruptcy Code"), rule 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(b) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

**Background**

5. Cineworld Group plc (together with its Debtor and non-Debtor affiliates, the "Group") is unwavering in its vision to be "The Best Place to Watch a Movie." As the second-largest cinema chain in the world by number of screens, the Group brings its vision to life each day in modern cinemas with cutting-edge technology. Headquartered in Brentford, United

Kingdom, the London Stock Exchange-listed company, operating under five major brands, employs a global workforce of approximately 30,000 employees and as of the Petition Date operated 747 locations with 9,139 screens in 10 countries.

6. On September 7, 2022 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases are set forth in greater detail in the First Day Declarations.

7. On the Petition Date, the Court entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1 [Docket No. 32]. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 23, 2022, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 419]. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## Leases to Be Rejected

8. As set forth in detail in the First Day Declarations, the Debtors' businesses have been acutely impacted by the global spread of COVID-19 and its attendant consequences, including a decline in cinema attendance, a disrupted film release and production schedule, and a rise in at home entertainment alternatives. As a result, the Debtors—who are parties to hundreds of leases for their movie theater locations—have taken critical steps since COVID-19 was first declared a global pandemic in March 2020 to ease the financial burden caused by underperforming theaters—many of which are subject to off-market lease terms. Over the past two and a half years, the Debtors, through extensive good-faith and arm's-length negotiations with their landlords,

reached agreement on various lease restructurings that provided for, among other things, the deferral of rent.  While such actions have provided breathing room for the Debtors as the cinema industry rebounds from the pandemic, they have not delivered a comprehensive long-term solution.  The Debtors' U.S. theater portfolio is a significant contributing factor to their current financial challenges.  Primarily due to the impact of deferred rent payments, the Debtors estimate that the average monthly rent obligations per theater increased by almost 30% year-to-date July 2022 compared to full-year 2019.

9. In the lead up to these chapter 11 cases, the Debtors undertook an extensive analysis of their U.S. lease portfolio as part of formulating a revised, go-forward business plan.  The objective of that analysis has been, and continues to be, identifying unprofitable, underperforming, or otherwise undesirable theater locations in the United States.  In parallel with that analysis, which remains ongoing postpetition, the Debtors and their advisors, including their real estate advisor, A&G Realty Partners, LLC, are engaging in an analysis of the Debtors' entire lease portfolio, and have commenced active negotiations with many of the Debtors' U.S. landlords.  The Debtors are hopeful that these negotiations will lead to lease concessions and modifications that will obviate the need for rejection and enable additional theater sites to remain open.

10. Since the filing of these chapter 11 cases, the Debtors have taken meaningful steps to right-size their lease portfolio.

- On September 7, 2022, the Debtors filed their first omnibus lease rejection motion  [Docket No. 26].  On October 21, 2022, the Court entered an order authorizing the Debtors to reject seventeen leases and granting related relief [Docket No. 570].

- On September 30, 2022, the Debtors filed their second omnibus lease rejection motion  [Docket No. 468].  On October 25, 2022, the Court entered an order authorizing the Debtors to reject five leases and granting related relief [Docket No. 594].  In addition, on October 24, 2022, the Court entered a stipulation and agreed order authorizing the termination and rejection of one additional lease [Docket No. 584].

- On November 7, 2022 the Debtors filed their third omnibus lease rejection motion [Docket

4

No. 759]. On November 30, 2022, the Court entered an order authorizing the Debtors to reject five leases and granting related relief [Docket No. 1059].

11. The Debtors will continue to work with their advisors, landlords, lenders, and other parties in interest to maximize value for their estates through their lease rationalization strategy. In the meantime, as of the date hereof, the Debtors, in consultation with their advisors, have determined in their business judgment, based on a variety of factors including performance and/or current lease terms, that certain Leases for U.S. theater sites are unnecessary and burdensome to their estates and do not have a place in the Debtors' go-forward business. Rejection of these Leases will reduce high fixed operational costs and better position the Debtors to conduct competitive operations to the benefit of their estates. As such, the Debtors seek to reject these additional 23 Leases effective as of the applicable Rejection Date. In total, the Debtors estimate that rejecting the Leases will save their estates approximately $15 million annually.

## **Personal Property to Be Abandoned**

12. The Debtors intend to remove Personal Property that they determine will be useful to their operations at other theater locations or otherwise valuable to their estates from the Premises in advance of the applicable Rejection Date. To the extent that any Personal Property remains at the Premises as of the applicable Rejection Date, however, the Debtors will have evaluated such Personal Property and determined either that (a) the Personal Property is of inconsequential value or (b) the cost of removing, transporting, and storing the Personal Property for potential future use, marketing, or sale exceeds its value to the Debtors' estates. Any Personal Property remaining at the Premises as of the applicable Rejection Date, therefore, will no longer be necessary for the administration of the Debtors' estates.

13. To reduce costs and facilitate the efficient surrender of the Premises, the Debtors believe that the abandonment of the Personal Property that may be located at each of the Premises

as of the applicable Rejection Date, if any, is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, and their creditors.

14.     In light of the Debtors' efforts to preserve and maximize the value of their estates, which will inure to the benefit of all creditors, and to avoid incurring costs on account of Personal Property that is not integral to the Debtors' go-forward business operations and their chapter 11 efforts, the relief requested herein is necessary and appropriate.

## Basis for Relief

**I.      Rejection of the Leases Is a Sound Exercise of the Debtors' Business Judgment.**

15.     The Bankruptcy Code enables a debtor in possession to reject certain unexpired leases of the debtor that are for non-residential real property, subject to the court's approval. 11 U.S.C. § 365(a).  "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco Petrol., Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)); *see also In re Orion Pictures Corp.*, 4 F.3d 1095, 1098–99 (2d Cir. 1993) (noting that rejection permits the debtor to renounce title to and abandon burdensome property).  Courts generally authorize debtors to reject unexpired leases where the debtors appropriately exercise their "business judgment." *See In re Mirant Corp.*, 378 F.3d 511, 524 (5th Cir. 2004); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Pisces Energy, LLC*, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009). Third parties are generally not permitted to second-guess a debtor's business judgment concerning the rejection of an executory contract or unexpired lease.  The "business judgment" test merely requires a showing that rejection of the unexpired lease will benefit the debtor's estate. *See In re Pisces Energy*, 2009 WL 7227880, at *6 ("In the absence of a showing of bad faith . . . the debtor's business judgment will not be altered."); *In re Trans World Airlines, Inc.*, 261

B.R. 103, 121 (Bankr. D. Del. 2001) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim or caprice.") (internal quotations omitted).

16. As an integral component of their efforts to preserve and maximize the value of their estates and reduce unnecessary administrative costs in these chapter 11 cases, the Debtors have determined, in their business judgment, that the Leases are burdensome and unnecessary to their estates. Any continued expense incurred in connection with maintaining the Leases and attempting to market such agreements would likely outweigh any benefit to attempting to identify a potential acquirer of the Leases. Any such efforts would unnecessarily deplete assets of the Debtors' estates as a result of, among other things, the accrual of additional administrative and marketing expenses, to the detriment of the Debtors' estates and their creditors. In contrast, rejection of the Leases will represent a significant cost savings to the Debtors' estates moving forward.

**II.     It Is Appropriate to Deem the Leases as Rejected Effective as of the Applicable Rejection Date.**

17. Courts have long recognized that it is appropriate and consistent with the Bankruptcy Code to grant retroactive rejection of an unexpired lease under certain circumstances. *See, e.g.*, *In re Romacorp, Inc.*, 2006 WL 6544088, at *4 (Bankr. N.D. Tex. Feb. 2, 2006) ("This court is not alone in allowing retroactive rejection of unexpired leases; in fact, a number of other courts around the country have recognized this equitable practice.") (collecting cases); *In re Amber's Stores, Inc.*, 193 B.R. 819, 825–27 (Bankr. N.D. Tex. 1996) ("[T]he Court finds that nothing precludes a bankruptcy court, based on the equities of the case, from approving the trustee's rejection of a non-residential real property lease retroactively to an earlier date."); *see also In re At Home Corp.*, 392 F.3d 1064, 1070 (9th Cir. 2004) ("Fortunately, we need look

7

no further than § 365(d) itself to see that, in appropriate cases, retroactive lease rejection may be 'necessary or appropriate to carry out' this provision of Title 11.  11 U.S.C. § 105(a)"); *Thinking Machs. Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995) ("[A] bankruptcy court's exercise of its residual equitable powers must be connected to, and advance the purposes of, specific provisions in the Code.  There is little question, however, that a retroactive order may be appropriate as long as it promotes the purposes of section 365(a).  Consequently, we rule that a bankruptcy court, when principles of equity so dictate, may approve a rejection of a nonresidential lease pursuant to section 365(a) retroactive to the motion filing date.") (citations omitted).

18.   Many courts have held that bankruptcy courts may exercise discretion to authorize rejections to be effective retroactively to a date prior to entry of the order authorizing such rejection where the balance of equities favor such relief.  *See, e.g.*, *In re Amber's Stores*, 193 B.R. at 826 (applying a standard based on the equities of the case); *BP Energy Co. v. Bethlehem Steel Corp.*, 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) ("[W]e cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution."); *In re Thinking Machs., Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995) ("[B]ankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation.").  Courts examine various factors when considering whether to approve retroactive rejection, including the costs that a delayed rejection date would otherwise impose on a debtor.  *See In re Jamesway Corp.*, 179 B.R. 33, 38–39 (S.D.N.Y. 1995); *see also At Home Corp.*, 392 F.3d at 1072.

19.   In this instance, if the Order is entered after the applicable Rejection Date as to any of the Leases, the balance of equities favors approving rejection of such Leases retroactive to the applicable Rejection Date.  The Debtors have determined in their sound business judgment that

8

the Leases are burdensome and unnecessary to their estates. Moreover, the Rejection Date will not occur until the Debtors have surrendered the premises, such that they will retain no further possessory interest in the premises and will obtain no benefit to their estates therefrom. Accordingly, failure to approve rejection effective as of the applicable Rejection Date would result in the Debtors incurring unnecessary administrative costs associated with the Leases. In light of the foregoing, the balance of equities favors approving rejection retroactive to the Rejection Date.

### III. The Personal Property Is De Minimis in Value and/or Burdensome to Remove From the Premises; and Abandonment Will Not Prejudice the Lessors.

20. The Debtors have satisfied the standard set forth in section 554(a) of the Bankruptcy Code, granting them authority to abandon the Personal Property. Section 554(a) provides that a debtor in possession may abandon, subject to court approval, "property of the estate that . . . is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). A bankruptcy court may authorize property to be abandoned when either (a) the property is burdensome to the estate or (b) the property is of inconsequential value and benefit to the estate. *See, e.g.*, *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 499–500 (1986).

21. Although the Debtors intend to remove Personal Property that they determine is of value to their estates prior to the surrender of the Premises and rejection of the Leases, the Debtors anticipate that certain Personal Property could remain on the Premises as of the Rejection Date to the extent that removal of such Personal Property would not be feasible and/or would provide nominal or no value to the Debtors or their estates. Therefore, this Court should find that authority to abandon the Personal Property in accordance with section 554(a) of the Bankruptcy Code is warranted.

22. The Debtors request that the abandonment of the Personal Property be effective as of the Rejection Date, which is also the proposed effective date of rejection of the Leases.

23. In light of the foregoing facts and circumstances, rejection of the Leases under section 365(a) of the Bankruptcy Code is a sound exercise of the Debtors' business judgment and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors. The balance of equities supports granting rejection of the Leases effective retroactive to the Rejection Date where applicable. Finally, the Debtors' abandonment of certain Personal Property may and should be authorized because any Personal Property that the Debtors do not remove in advance of surrender and choose to abandon will be burdensome or of inconsequential value to the Debtors' estates.

## Reservation of Rights

24. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) other than as set forth herein and on Schedule 1 attached to the Order, a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to

contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended, and should not be construed as, an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Notice

25. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Committee; (d) the agent under the Prepetition Priming Facility, and counsel thereto; (e) the agent under the Prepetition Legacy Term Facilities, and counsel thereto; (f) the agent under the Revolving Credit Facility, and counsel thereto; (g) counsel to the ad hoc group of Prepetition Revolving Lenders; (h) counsel to the Ad Hoc Term Loan Group; (i) the agent under the Settlement Facility, and counsel thereto; (j) counsel to lenders under the Settlement Facility; (k) the trustee under the Convertible Bonds, and counsel thereto; (l) counsel to the ad hoc group of holders of Convertible Bonds; (m) the agent under the DIP Facility and counsel thereto; (n) the Office of the United States Attorney for the Southern District of Texas; (o) the state attorneys general for states in which the Debtors conduct business; (p) the Internal Revenue Service; (q) the Securities and Exchange Commission; (r) the Environmental Protection Agency; (s) other governmental agencies having a regulatory or statutory interest in these cases; (t) the counterparties to the Leases; (u) where known, any third parties that may, to the best of the Debtors' knowledge, have a known interest in the Debtors' personal property located on the Premises; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other notice need be given.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated:  December 7, 2022

/s/  *Susan Tran Adams*
**TRAN SINGH LLP**
Susan Tran Adams (TX Bar No. 24075648)
Brendon Singh (S.D. Bar No. 24075646)

2502 La Branch Street
Houston, TX 77004
Telephone:    (832) 975-7300

Email:          stran@ts-llp.com
                    bsingh@ts-llp.com

*Proposed Conflicts Counsel to the Debtors
and Debtors in Possession*

**<u>Certificate of Service</u>**

      I certify that on December 7, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                                                /s/   *Susan Tran Adams*
                                                                                                Susan Tran Adams

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |
|---|---|
| In re:<br><br>CINEWORLD GROUP PLC, *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 22-90168 (MI)<br>)<br>) (Jointly Administered)<br>)<br>) **Re: Docket No. \_\_\_\_\_** |

**ORDER (I) AUTHORIZING
(A) REJECTION OF CERTAIN UNEXPIRED LEASES OF
NON-RESIDENTIAL REAL PROPERTY AND (B) ABANDONMENT
OF CERTAIN PERSONAL PROPERTY, IF ANY, EACH EFFECTIVE
AS OF THE REJECTION DATE, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the Debtors to (i) reject certain Leases listed on **Schedule 1** to this Order and (ii) abandon certain Personal Property that may be located at the Premises, each effective as of the Rejection Date (as defined below), and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/cineworld.  The location of Debtor Cineworld Group plc's principal place of business and the Debtors' service address in these chapter 11 cases is:  8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"), if any; and this Court having determined that the legal and factual bases set forth in support of the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Leases listed on **Schedule 1** attached hereto are rejected under section 365 of the Bankruptcy Code effective as of the later of (a) the rejection date listed on **Schedule 1** and (b) the date the Debtors relinquish control of the Premises by notifying the affected landlord of the Debtors' surrender of the Premises and turning over keys, key codes, and security codes, if any, to the affected landlord (the "Rejection Date").

2. The Debtors are authorized to abandon any Personal Property located at the Premises identified on **Schedule 1** attached hereto free and clear of all liens, claims, encumbrances, interests, and rights of the Debtors and third parties. The applicable counterparty to each Lease may keep and/or dispose of such Personal Property in its sole and absolute discretion without further notice or liability to any party holding any liens, claims, encumbrances, interests, and rights in such abandoned Personal Property. The automatic stay, to the extent applicable, is modified to allow for such utilization or disposition.

3. Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or

admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) other than as set forth herein and on **Schedule 1** attached hereto, a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) other than as set forth herein, a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

4. Notice of the Motion as set forth therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Bankruptcy Local Rules are satisfied by such notice.

5. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

6. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2022

                                      MARVIN ISGUR
                                      UNITED STATES BANKRUPTCY JUDGE

## Schedule 1

## Leases to Be Rejected[1]

| Theatre ID | Theatre Name | Theatre Address | Debtor Counterparty | Counterparty Name | Counterparty Address | Contract Description | Rejection Date |
|---|---|---|---|---|---|---|---|
| 147 | Village Park Stadium 17 | 2222 East 146th Street Carmel, IN 46033 | REGAL CINEMAS, INC. | Village Park Plaza, LLC | c/o Washington Prime Group 180 East Broad Street Attn: General Counsel Columbus, OH 43215 | Lease Agreement | 1/31/2023 |
| 299 | Henrietta Stadium 18 | 525 Marketplace Dr. Rochester, NY 14623 | REGAL CINEMAS, INC. | Realty Income Corporation | 11995 El Camino Real Attn: Legal Department San Diego, CA 92130 | Lease Agreement | 1/31/2023 |
| 331 | South Sound Cinema 10 | 1435 Olney Ave. SE Port Orchard, WA 98366 | REGAL CINEMAS, INC. | Vine Street Investors, LLC | 516 N. Olympic Attn: J. Brent McKinley, Registered Agent Arlington, WA 98223 | Lease Agreement | 1/31/2023 |
| 393 | Niagara Falls Stadium 12 | 720 Builders Way Niagara Falls, NY 14304 | REGAL CINEMAS, INC. | Beartree Partners, LLC | 6632 Telegraph Road #193 Attn: Lauren or Jon Goldstein Bloomfield Hills, MI 48301 | Lease Agreement | 1/31/2023 |
| 633 | Fox Tower Stadium 10 | 846 S.W. Park Ave. Portland, OR 97205 | EASTGATE THEATRE, INC. | Fox Tower Building LLC | 760 SW 9th Ave., Suite 2250 Portland, OR 97205 | Lease Agreement | 1/31/2023 |
| 706 | Citrus Park Stadium 20 | 7999 Citrus Town Center Park Mall Tampa, FL 33625 | REGAL CINEMAS, INC. | Citrus Park Mall Owner, LLC | Attn: James M. Hull c/o Hull Property Group, LLC 1190 Interstate Parkway Augusta, GA 30909 | Lease Agreement | 1/31/2023 |
| 723 | Town Center Stadium 16 - Port Charlotte | 1441 Tamiami Trail, Unit 701 Port Charlotte, FL 33948 | REGAL CINEMAS, INC. | RSS WFRBS2011-C2-FL PCM, LLC | Centennial Advisory Services, LLC 8750 N. Central Expressway, Suite 1740 Dallas, TX 75231 | Lease Agreement | 1/31/2023 |

---

[1] For the avoidance of doubt, the Leases referenced herein include any amendments or modifications thereto.

| Theatre ID | Theatre Name | Theatre Address | Debtor Counterparty | Counterparty Name | Counterparty Address | Contract Description | Rejection Date |
|---|---|---|---|---|---|---|---|
| 736 | Stadium 22 @ Austell | 2480 East - West Connector Rd. Austell, GA 30106 | REGAL CINEMAS, INC. | Realty Income Properties 11, LLC | 11995 El Camino Real Attn: Legal Department San Diego, CA 92130 | Lease Agreement | 1/31/2023 |
| 1026 | Ontario Palace Stadium 22 IMAX & RPX | 4900 East 4th Street Ontario, CA 91764 | EDWARD THEATRES, INC. | 3503 RP Ontario 4th Street, LLC | c/o Retail Properties of America, Inc. 2021 Spring Road, Suite 200 Attn: President - Western Division Oak Brook, IL 60523 | Lease Agreement | 1/31/2023 |
| 1130 | Continental Stadium 10 & RPX | 3635 S. Monaco Pkwy Denver, CO 80237 | REGAL CINEMAS, INC. | Realty Income Corporation | 11995 El Camino Real Attn: Legal Department San Diego, CA 92130 | Lease Agreement | 1/31/2023 |
| 1138 | East Hampton Cinema 6 | 30-38 Main Street East Hampton, NY 11937 | UNITED ARTISTS THEATRE CIRCUIT, INC. | FROG Co., LLC | 101 West 55th Street Attn: Al Berkowitz New York, NY 10019 | Lease Agreement | 1/31/2023 |
| 1267 | Parkway Place Stadium 10 | 1075 Parkway Blvd. Flowood, MS 39232 | UNITED ARTISTS THEATRE CIRCUIT, INC. | Flowood Quarter, LLC | Attn: R. Cratin Luckett, Jr. 10 Lakeland Circle Jackson, MS 39216 | Lease Agreement | 1/31/2023 |
| 1315 | Denver Pavilions | 500 16th St. #310 Denver, CO 80202 | REGAL CINEMAS, INC. | Denver Pavilions OwnerCo LLC | Gart Properties, LLC 299 Milwaukee St., Suite 500 Denver, CO 80206 | Lease Agreement | 1/31/2023 |
| 1331 | Staten Island Stadium 16 & RPX | 2474 Forest Ave. Staten Island, NY 10303 | UNITED ARTISTS THEATRE CIRCUIT, INC. | 30 West Pershing, LLC | c/o EPR Properties 909 Walnut, Suite 200 Attn: Lease Administration Kansas City, MO 64106 | Lease Agreement | 1/31/2023 |
| 1419 | Bricktown Charleston 10 | 165 Bricktown Way Staten Island, NY 10309 | REGAL CINEMAS, INC. | Bricktown Pass, LLC | c/o Blumenfeld Development Group, Ltd. 300 Robbins Lane Attn: Mr. David Blumenfeld Syosset, NY 11791 | Lease Agreement | 1/31/2023 |
| 1440 | Grand Parkway 22 & RPX | 7301 West Grand Pkwy. South Richmond, TX 77407 | REGAL CINEMAS, INC. | 30 West Pershing, LLC | c/o EPR Properties 909 Walnut, Suite 200 Attn: Lease Administration Kansas City, MO 64106 | Lease Agreement | 1/31/2023 |

| Theatre ID | Theatre Name | Theatre Address | Debtor Counterparty | Counterparty Name | Counterparty Address | Contract Description | Rejection Date |
|---|---|---|---|---|---|---|---|
| 1446 | Warren Old Town 7 | 353 N Mead St. Wichita, KS 67202 | REGAL CINEMAS, INC. | 30 West Pershing, LLC | c/o EPR Properties 909 Walnut, Suite 200 Attn: Lease Administration Kansas City, MO 64106 | Lease Agreement | 1/31/2023 |
| 1451 | Cinebarre Greenwood Plaza | 8141 E Arapahoe Rd. Englewood, CO 80112 | CINEBARRE, LLC | Realty Income Properties 15, LLC | 11995 El Camino Real Attn: Legal Department San Diego, CA 92130 | Lease Agreement | 1/31/2023 |
| 1640 | Permian Palace Stadium 11 & IMAX | 4101 E 42nd St. Odessa, TX 79762 | HOLLYWOOD THEATERS, INC. | MCM Properties, Ltd. | 700 North Grant, 6th Floor Attn: John Bushman Odessa, TX 79761 | Lease Agreement | 1/31/2023 |
| 1762 | Broward Stadium 12 & RPX | 8000 W Broward Blvd. Plantation, FL 33388 | REGAL CINEMAS, INC. | RSS UBSBB2013-C6-FL | c/o Pacific Retail Capital Partners 100 N. Pacific Coast Highway Suite 1925 El Segundo, CA 90245 | Lease Agreement | 1/31/2023 |
| 1773 | Great Northern Mall Stadium 10 & RPX | 450 Great Northern Mall North Olmsted, OH 44070 | REGAL CINEMAS, INC. | WEA Great Northern Mall, LLC | c/o Pacific Retail Capital Partners 100 N. Pacific Coast Highway Suite 1925 El Segundo, CA 90245 | Lease Agreement | 1/31/2023 |
| 1808 | Jack London Stadium 9 | 100 Washington St. Oakland, CA 94607 | REGAL CINEMAS, INC. | Dow-Pac Properties | 914 Dewing Avenue Lafayette, CA 94549 | Lease Agreement | 1/31/2023 |
| 1816 | Stockton Holiday Cinema 8 | 6262 N. West Ln. Stockton, CA 95210 | REGAL CINEMAS, INC. | Dow-Pac Properties | 914 Dewing Avenue Lafayette, CA 94549 | Lease Agreement | 1/31/2023 |