IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| CINEWORLD GROUP PLC, et al.,[1] | Case No. 22-90168 (MI) |
| Debtors. | (Jointly Administered) |

**OBJECTION AND RESERVATION OF RIGHTS OF FINANCIAL RECOVERY SERVICES, INC. TO THE PROPOSED SCHEDULE OF REJECTED EXECUTORY CONTRACTS AND UNEXPIRED LEASES PER THE PLAN SUPPLEMENT**

Financial Recovery Services, Inc. d/b/a Financial Recovery Strategies ("FRS"), by and through its undersigned counsel, hereby submits this objection and reservation of rights (the "Objection") to the proposed Schedule of Rejected Executory Contracts and Unexpired Leases (the "Rejection Schedule") attached as Exhibit C to the plan supplement [Docket No. 1799] (the "Plan Supplement") to the *Second Amended Joint Chapter 11 Plan of Reorganization of Cineworld Group plc and Its Debtor Subsidiaries* [Docket No. 1589] (the "Plan") of the above-captioned debtors (the "Debtors"). In support of this Objection, FRS respectfully states as follows:

**RELEVANT BACKGROUND[2]**

    **A.    The ODDI Agreement**

    1.    FRS and Debtor Regal Cinemas, Inc. ("Regal") are parties to that certain *Exclusive Authorization Agreement for Claims Management: Optical Disk Drive Class Action*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/cineworld. The location of Debtor Cineworld Group plc's principal place of business and the Debtors' service address in these chapter 11 cases is: 8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan Supplement and Plan, as applicable.

-1-

*Settlement Action(s)* (the "ODDI Agreement"), effective as of August 4, 2017, in which FRS was appointed as "exclusive recovery agent … to prepare and submit Regal's proof of claim" (the "ODDI Claim") as a class member to participate in the indirect purchaser settlements obtained in the class action captioned *Optical Disk Drive Products Antitrust Litigation*, Case No. 3:10-MD-2143-RS (MDL 2143) (the "Optical Disk Drive Indirect Purchaser Settlement") pending in the United States District Court, Northern District of California. A true copy of the ODDI Agreement is attached hereto as **Exhibit A**.

2.   Pursuant to the ODDI Agreement, Regal also agreed that all proceeds recovered on Regal's ODDI Claim would be paid directly to FRS, that FRS would retain 20% of such proceeds, and that, within thirty days of FRS's receipt of such proceeds, the balance of those proceeds would be disbursed to Regal.

3.   On or about September 11, 2017, Regal provided FRS the necessary documentation to support Regal's ODDI Claim. After years of shepherding Regal's ODDI Claim through the Optical Disk Drive Settlement, FRS succeeded in obtaining recoveries in connection with Regal's ODDI Claim.

4.   In June 2022, FRS obtained the first distribution of settlement funds in the amount of $1,142.07 in connection with the ODDI Claim. Pursuant to the ODDI Agreement, FRS retained its fee in the amount of $228.41, and disbursed by check the balance, in the amount of $913.66, to Regal. That check cleared from FRS's account on or about July 25, 2022.

5.   In October 2022, FRS obtained the second and final distribution of settlement funds in the amount of $263.83 in connection with the ODDI Claim. FRS retained its fee in the amount of $52.77 and disbursed by check the balance, in the amount of $211.06, to Regal. That

check cleared from FRS's account on or about January 5, 2023. True copies of cover letters from FRS to Regal that reflect those disbursements are attached hereto as **Exhibit B**.

6. Following FRS's disbursements to Regal of the above-described funds from the ODDI Settlement, FRS's performance under the ODDI Agreement was complete and no additional obligations remained.

### B. The PCIF Agreement

7. FRS and Regal are also parties to that *Antitrust Settlement Contract* (the "PCIF Agreement"), effective as of April 2, 2012, pursuant to which FRS was "appoint[ed] as exclusive Recovery Agent with full assignment authority to prepare and submit Regal's proof of claim" (the "PCIF Claim") as a member of the Rule 23(b)(3) class (the "Class") to participate in any settlement (the "PCIF Settlement") obtained in the class action captioned as *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720 (MKB) (the "PCIF Litigation"), pending in the United States District Court for the Eastern District of New York (the "District Court"). A true copy of the PCIF Agreement is attached hereto as **Exhibit C**.

8. Pursuant to the terms of the PCIF Agreement, Regal "agree[d] that any and all proceeds" from the PCIF Claim "shall be paid directly to FRS by the claims administrator," that FRS would be entitled to retain 20% of all such proceeds, and that, within thirty days of FRS's receipt of such proceeds, FRS would disburse to Regal the balance. Regal's sole obligation under the PCIF Agreement was to assist FRS in its efforts to obtain all relevant documentation necessary to submit Regal's PCIF Claim.

9. On December 13, 2019, the District Court entered an order granting final approval of a $5.54 billion superseding settlement in favor of the Class (the "<u>Superseding Settlement Final Approval Order</u>").[3]

10. On January 3, 2022, the Superseding Settlement Final Approval Order was appealed to the Court of Appeals for the Second Circuit.

11. On March 15, 2023, the Court of Appeals affirmed the District Court's entry of the Superseding Settlement Final Approval Order. On or before March 28, 2023, two petitions for rehearing and rehearing *en banc* were filed. On April 25, 2023, the Second Circuit denied both petitions for rehearing and rehearing *en banc*. The appellants have until on or about July 24, 2023 to file with the Supreme Court petitions for a writ of certiorari. As a result, the dissemination of proof of claims forms in the PCIF Settlement has been delayed, and Regal's PCIF Claim has not yet been submitted.

12. Notwithstanding the lengthy appeals process, FRS has continued to perform its obligations under the PCIF Agreement, including monitoring the PCIF Litigation and providing to Regal frequent updates and recovery estimates, and responding to any and all inquiries. Indeed, even following the commencement of these chapter 11 cases, the Debtors have repeatedly communicated to FRS their desire to be apprised of the developments in the PCIF Settlement. As a result, FRS has remained diligent in fulfilling its obligations under the PCIF Agreement for the considerable benefit of Regal.

13. Prior to the filing of the Plan Supplement, Regal had provided all necessary information to allow FRS to prepare and submit the PCIF Claim. At this juncture, therefore, Regal has no material obligations remaining under the PCIF Agreement.

---

[3] The district court's approval of an earlier settlement was vacated, reversed and remanded by the United States Court of Appeals for the Second Circuit in 2015.

**OBJECTION**

14. Pursuant to the Debtors' Rejection Schedule, which is attached as Exhibit C to the Plan Supplement, the Debtors propose to reject as executory contracts the ODDI Agreement and the PCIF Agreement. *See* Rejection Schedule.

15. Section 365 of the Bankruptcy Code provides that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). In contrast, nonexcutory contracts may **not** be rejected or assumed and/or assigned. "Nonexecutory contracts … are just assets or liabilities that must be disclosed along with other interests; they are not subject to assumption, [or] rejection." *ASARCO, L.L.C. v. Montana Res., Inc.,* 858 F.3d 949, 959 (5th Cir. 2017).

16. Although the term "executory contract" is not defined in the Bankruptcy Code, courts, including those in the Fifth Circuit, have adopted the "Countryman Definition," which was formulated by Professor Vern Countryman in his 1973 law review article entitled, "Executory Contracts in Bankruptcy: Part I." *In re Goodrich Petroleum Corp.*, 554 B.R. 817, 821 (Bankr. S.D. Tex. 2016); *In re LG Philips Displays USA, Inc.*, No. 06-10245, 2006 WL 1748671, at *3 (Bankr. D. Del. June 21, 2006); *In re Digicon, Inc.*, 71 F. App'x 442 (5th Cir. 2003). Under the Countryman Definition, "an executory contract is a contract under which the obligations of both the bankrupt **and** the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Goodrich Petroleum*, 554 B.R. at 821 (emphasis added).

17. Because most contracts involve at least some unperformed obligations, the Countryman Definition makes clear that continuing material obligations on **both sides** of a contract are required for the contract to be executory. *See Matter of Falcon V, L.L.C.,* 44 F.4th

348, 352 (5th Cir. 2022). A material obligation is one that goes to the very essence of the contract defeating the parties' purpose in entering the contract. *See In re WorldCom*, 343 B.R. 486, 496-97 (Bankr. S.D.N.Y. 2006)); see also *Matter of Falcon*, 44 F.4th at 352 (quoting *In re Provider Meds, L.L.C.*, 907 F.3d 845, 851 (5th Cir. 2018)). Accordingly, if one party has completed performance, the contract is not executory, and section 365 does not apply. *Matter of Falcon V, L.L.C.,* 44 F.4th at 354 (holding that if only one party's performance remains, a contract is non-executory, as "performance must remain due on both sides.").

18. It is unequivocal that the ODDI Agreement has been fully performed and is **not** an executory contract. Therefore, it may not be rejected by the Debtors. As described by the foregoing, there are no outstanding obligations, let alone material obligations, remaining for either party. Indeed, as all settlement payments have already been recovered by FRS and disbursed to/accepted by Regal, in accordance with the terms of the ODDI Agreement, performance of the ODDI Agreement has been completed. Accordingly, the ODDI Agreement is not subject to rejection by the Debtors.

19. Similarly, the PCIF Agreement is not an executory contract. Regal has completed its performance under the PCIF Agreement and has no material obligations remaining. Therefore, despite any remaining obligations owing by FRS, and notwithstanding the delayed status of the settlement of the PCIF Litigation, performance does not remain **on both sides**. Hence, the PCIF Agreement also cannot be rejected.

20. Furthermore, to the extent the Debtors may argue that any payment of FRS's fee is a remaining obligation under the PCIF Agreement, such reasoning is flawed for two reasons: First, per the terms of the PCIF Agreement, FRS is the party authorized to collect and accept payment of any settlement amounts in connection with Regal's PCIF Claim, with such proceeds

to be deposited directly into FRS's account. Indeed, it is **FRS** that pays Regal. Second, courts, including those in the Fifth Circuit, have routinely held that a contract is not executory if the only performance required by one side is the payment of money. *In re Placid Oil Co.*, 72 B.R. 135, 138 (Bankr.N.D.Tex.1987); *see also In re Cox*, 179 B.R. 495, 498 (Bankr.N.D.Tex.1995); *In re MCorp Financial, Inc.*, 122 B.R. 49, 52 (Bankr. S.D.Tex.1990). Accordingly, the PCIF Agreement may not be rejected by the Debtors.

### RESERVATION OF RIGHTS

21. FRS reserves the right to supplement this Objection on any basis whatsoever prior to any hearing specific to the issue of contract rejection or in connection with the hearing on confirmation of the Plan. In addition, nothing herein is intended to waive FRS's right to seek payment of an administrative expense in connection with the PCIF Agreement,[4] or to assert that any recoveries obtained by FRS under the PCIF Agreement (or at least 20% of such recoveries) are not property of the Debtors' estate. All such rights are expressly reserved.

WHEREFORE, FRS respectfully requests that the Court decline to approve the Plan unless the Debtors, for the reasons provided herein, modify the Rejection Schedule to remove the ODDI Agreement and PCIF Agreement.

Dated: June 20, 2023

**LOWENSTEIN SANDLER LLP**

*/s/ Michael S. Etkin*
Michael S. Etkin, Esq. (admitted *pro hac vice*)
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone 973-597-2500
Email: metkin@lowenstein.com

- and -

Lindsay Sklar, Esq. (admitted *pro hac vice*)

---

[4] As the Debtors have encouraged FRS to continue its work under the PCIF Agreement, even after the commencement of these chapter 11 cases (indeed, the Debtors had represented to FRS that the PCIF Agreement would not be rejected), FRS has performed postpetition work that is necessary and beneficial to the Debtors' estate, thereby giving rise to a potential administrative expense claim.

1251 Avenue of the Americas, 17th Floor
New York, New York 10020
Telephone: 646-414-6883
Email: lsklar@lowenstein.com

*Counsel to Financial Recovery Services, Inc.*