**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **CINEWORLD GROUP PLC,** *et al.,* | § | **Case No. 22-90168 (MI)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | **Re: Docket No. 1889** |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**REPLY TO THE OBJECTION AND RESERVATION**
**OF RIGHTS OF FINANCIAL RECOVERY SERVICES, INC.**
**TO THE PROPOSED SCHEDULE OF REJECTED EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES PER THE PLAN SUPPLEMENT**

The Official Committee of Unsecured Creditors in the above-captioned chapter 11 cases (the "**Committee**") respectfully submits this reply (the "**Reply**") to the *Objection and Reservation of Rights of Financial Recovery Services, Inc. to the Proposed Schedule of Rejected Executory Contracts and Unexpired Leases Per the Plan Supplement* [Docket No. 1889] (the "**Objection**"),[2] filed by Financial Recovery Services, Inc. d/b/a Financial Recovery Strategies ("**FRS**"). This Reply responds to the Objection with respect to the Debtors' proposed rejection of that certain *Antitrust Settlement Contract*, dated April 2, 2012, by and between Debtor Regal

---

[1] Due to the large number of Debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/cineworld/. The location of the Debtors' service address for the purposes of these chapter 11 cases is: 8th Floor Vantage London, Great West Road, Brentford, England, TW8 9AG, United Kingdom.

[2] Unless otherwise noted, capitalized terms shall have the meanings ascribed to them in the Objection or the *Second Amended Joint Chapter 11 Plan of Reorganization of Cineworld Group plc and Its Debtor Subsidiaries* [Docket No. 1603] (as may be amended, supplemented, or otherwise modified from time to time, the "**Plan**"), as applicable.

Cinemas, Inc. ("**RCI**") and FRS (the "**PCIF Agreement**"), a copy of which is annexed as <u>Exhibit C</u> to the Objection.  In support of this Reply, the Committee states as follows: [3]

<u>**Preliminary Statement**</u>

1.      The PCIF Agreement is an executory contract with mutual material unperformed future obligations and pertains to the ongoing Interchange Litigation.  The Debtors seek to reject this executory contract in order to implement the heavily-negotiated Creditors' Committee Settlement.  As part of the Creditors' Committee Settlement, the Debtors incorporated in the United States agreed to transfer, or cause to be transferred, all of their rights, title, and interest in the Interchange Litigation and the Interchange Litigation Claims to the Litigation Trust.[4]  The distribution of proceeds recovered by the Litigation Trust to holders of Allowed General Unsecured Claims in the manner and to the extent provided under the Plan is an integral component of the Creditors' Committee Settlement.

2.      Over ten years ago, RCI engaged FRS to serve as its recovery agent in the Interchange Litigation pursuant to the PCIF Agreement.[5]  FRS was not granted any interest or lien in the Interchange Litigation Claims; it was merely hired to perform contractual services in connection with preparing and submitting RCI's claim for settlement in the Interchange Litigation.[6]

---

[3] The Objection contains reservations of rights to both supplement the Objection and with respect to FRS's asserted claims under the PCIF Agreement.  Obj. at ¶ 21.  The Committee reserves all rights to supplement this Reply and to respond to any additional arguments, evidence presented, or issues raised by FRS on any and all available grounds.

[4] Under the Plan, the first $5 million of Cash recovery by the Litigation Trust from the Interchange Litigation Claims, as well as fifty percent (50%) of any Cash recovered in excess of $5 million in connection with such claims, comprises a portion of the GUC Recovery Pool.

[5] *See generally* PCIF Agreement.

[6] *See id.* at 1 ("The Class Member appoints 'FRS' as exclusive Recovery Agent will full assignment authority to prepare and submit Class Member's claim for settlement."); *id.* at § 1 ("FRS agrees to make all reasonable efforts to file complete and accurate claims, and to secure payment of the claims on behalf of the Class Member. . . ."); *id.* at § 3 ("In consideration of advising the Class Member of the settlement recovery opportunity and processing the Class Member's

As the Objection concedes, FRS has not filed any such claim on behalf of RCI.[7]  Given the Creditors' Committee Settlement, the Debtors have no further need for the PCIF Agreement upon the effectiveness of the Plan and have therefore moved to reject the agreement.  The Committee supports the rejection of the PCIF Agreement because any future claims and related work associated with the Interchange Litigation Claims will be administered by the Litigation Trustee post-Effective Date. The rejection of the PCIF Agreement is therefore an appropriate exercise of the Debtors' business judgment.

3.      FRS attempts to escape the consequences of the rejection of the PCIF Agreement by contending that the PCIF Agreement is non-executory on the basis that Regal's obligations thereunder are fully-performed.[8]  Contrary to FRS's assertions, there are many remaining performance obligations required under PCIF Agreement on both sides.  And even if, hypothetically, FRS were correct in its assertion that the PCIF Agreement is not executory, the relief requested in the Objection does not change the fact that FRS's contractual claims arose prior to the Petition Date. If, as FRS incorrectly posits, RCI has completed its performance obligations under the PCIF Agreement, then FRS would only have a prepetition general unsecured claim conditioned on the hypothetical completion of its performance thereunder.  FRS's contractual claims, which would have arisen in April 2012 when the PCIF Agreement was executed, is a prepetition General Unsecured Claim under the Plan.  FRS's "reservation of rights" to assert a postpetition administrative claim arising from PCIF Agreement is contrary to controlling Fifth Circuit law that mandates the treatment

---

claims, Class Member agrees to pay FRS Twenty Percent (20%) of all proceeds received as payment for all claims filed pursuant to this agreement. . . .").

[7] Obj. at ¶ 11 ("[T]he dissemination of proof of claims forms in the PCIF Settlement has been delayed, and Regal's PCIF Claim has not been submitted.").

[8] *See* Obj. ¶¶ 13, 19.

of claims arising from prepetition contracts as nonpriority unsecured claims.[9]   Finally, FRS's additional reservation to argue that the commissions allegedly arising under the PCIF Agreement do not constitute property of the Debtors' estates is similarly without merit.   The Debtors' substantive litigation claims and resulting damages under the Interchange Litigation constitute "legal and equitable interests" of the Debtors under section 541(a) of the Bankruptcy Code and are therefore property of their estates.   Accordingly, the Objection should be overruled.

**A.      The PCIF Agreement is an Executory Contract Because Material Performance Obligations are Owed by Both Parties**

4.      The Bankruptcy Code does not define the term "executory contract," but the Fifth Circuit has adopted the definition first articulated by Professor Countryman, known as the "Countryman test," that "'a contract is executory if 'performance remains due to some extent on both sides' and if 'at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby executing the performance of the other party.'"   *Argonaut Ins. Co. v. Falcon V, L.L.C. (In re Falcon V, L.L.C.)*, 44 F.4th 348, 352-353 (5th Cir 2022) (quoting *In re Provider Meds*, 907 F.3d 845, 851 (5th Cir. 2018)).   "A contract that only imposes remote or hypothetical duties is not an executory contract."   *Ebert v. DeVries Family Farm LLC (In re DeVries)*, 2014 Bankr. LEXIS 3621, 2014 WL 4294540, *8 (Bankr. N.D. Tex. Aug. 27, 2014) (citing *Meiburger v. Endeka Enters. LLC (In re Tsiaoushis)*, 383 B.R. 616, 618 (Bankr. E.D. Va. 2007)).

5.      The Objection concedes that the Interchange Litigation remains unresolved, that applicable claims forms have not yet been disseminated, and that FRS has not even filed a claim

---

[9] Despite its current contention that the PCIF Agreement is not executory, FRS did not file any proof of claim on account of any commissions arising under the alleged fully performed agreement.   The Committee, on behalf of itself and any successor in interest, reserves any and all rights to object to any late-filed proof of claim on all available grounds, including, without limitation, that any such claim is untimely.

on behalf of RCI.[10]  The PCIF Agreement provides that "Class Member agrees to provide assistance and hereby authorizes FRS to request, gather and/or copy all necessary documentation pertaining to the settlement to complete the claim."[11]  The ongoing nature of the Interchange Litigation coupled with RCI's continuing obligation to "provide assistance" in connection with completing its not-yet-filed claim demonstrates that the PCIF Agreement is executory due to the ongoing performance obligations of both parties.  RCI still has contingent unperformed obligations to assist FRS in preparing or submitting all required documents to prosecute its claims under the Interchange Litigation either to judgment or to some potential future settlement of its claims.  Neither of these outcomes has yet occurred.

**B.    The Debtors Appropriately Exercised Their Business Judgment in Determining to Reject the PCIF Agreement**

6.    The rejection of the PCIF Agreement is a proper exercise of the Debtors' business judgment in light of the Creditors' Committee Settlement.  The Fifth Circuit recently restated its long-standing rule that the court should defer to the debtor's business judgement in rejecting executory contracts, unless that decision is clearly erroneous, too speculative, or contrary to the Bankruptcy Code:

> A bankruptcy court reviews a debtor's decision to assume or reject an executory contract under the deferential "business judgment" standard.  We have held that "as long as assumption of a lease appears to enhance a debtor's estate," a bankruptcy court should only withhold approval when "the debtor's judgment ***is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." Furthermore, "it is the debtor who decides whether to maintain the contract,"*** rather than any third party*.

---

[10] *See* Obj. at ¶¶ 11, 19.

[11] PCIF Agreement at § 2.

*In re J.C. Penney Direct Mktg. Servs.*, 50 F.4th 532, 534 (5th Cir. 2022) (quoting *Mission Prod. v. Tempnology*, 139 S. Ct. 1652, 1658 (2019)) (emphasis added); *Richmond Leasing v. Capital Bank*, 762 F.2d 1303, 1309 (9th Cir. 1985); *In re Nat'l Gypsum*, 208 F.3d 498, 505 (5th Cir. 2000)).

7.      The rejection of the PCIF Agreement easily satisfies the business judgment standard because (i) it was a material term of the Creditors' Committee Settlement and (ii) the Interchange Litigation will be administered by the Litigation Trustee as part of the Creditors' Committee Settlement.  In accordance with the Plan, the Litigation Trustee will control and direct the prosecution of the Interchange Litigation on the Effective Date.  As previously noted, FRS concedes that the Interchange Litigation has not been settled and remains ongoing.[12]  Thus, the rejection of the PCIF Agreement is a proper exercise of the Debtors' business judgment in order to implement the terms of the Creditors' Committee Settlement and thereby allow the Litigation Trustee to administer and prosecute the Interchange Litigation post-Effective Date until it is resolved.  The Committee supports the Debtors' decision to reject the PCIF Agreement.

**C.      Even If There Were no Material Performance Obligations Under the PCIF Agreement, FRS Would Only Have a Prepetition General Unsecured Claim on Account of its Contractual Claim**

8.      Even if the PCIF Agreement were fully performed (which it is not), it does not change the fact that FRS has, at best, a prepetition general unsecured claim on account of any potential commissions arising under such agreement.  As the Third Circuit recently explained,

> [a] contract where the debtor fully performed all material obligations, but the nonbankrupt counterparty has not, cannot be executory; that contract can be viewed as just an asset of the estate with no liability. Treating it as an executory contract risks inadvertent rejection because the debtor would in effect be giving up an asset by rejecting it.  On the other extreme, where the counterparty performed but the debtor has not, the contract is also not executory because it is only a liability for the estate.   Treating it as an executory contract risks inadvertent

---

[12] *See* Obj. at ¶¶ 11, 19.

6

assumption, for the debtor would effectively be agreeing to pay the liability in full when the counterparty should instead pursue the claim against the estate like other (typically unsecured) creditors. It logically follows that where "the only remaining obligation is the [debtor's] duty to pay"—the contract is not executory.

*Spyglass Media Grp. v. Bruce Cohen Prod. (In re Weinstein Co.)*, 997 F.3d 497 (3d Cir. 2021) (citations omitted).

9.      Thus, even if the PCIF Agreement were fully performed, FRS would only have a prepetition general unsecured claim for any potential commissions arising thereunder. FRS's one-sentence reservation (also unaccompanied by any legal authority) to assert an administrative expense under section 503(b)(1)(A) of the Bankruptcy Code because it "performed postpetition work" under the PCIF Agreement is simply wrong.[13] It is black letter law that FRS's claims arose when the PCIF Agreement was entered into in April 2012. *See First Guar. Bank v. Pioneer Health Servs. (In re Pioneer Health Servs.)*, 739 F. App'x 240, 244 (5th Cir. 2018) ("We have interpreted [section 503(b)(1)(A)] to impose a temporal limitation: the costs and expenses must have arisen post-petition through a transaction with the debtor-in-possession."); *Nabors Offshore Corp. v. Whistler Energy II (In re Whistler Energy II)*, 931 F.3d 432, 442 (5th Cir. 2019) ("[A]n administrative priority claim 'must have arisen from a transaction with the debtor in possession,' as opposed to the pre-petition debtor.") (quoting *In re Phones for All*, 288 F.3d 730, 732 (5th Cir. 2002)). Any of FRS's alleged claims against RCI, therefore, arose when the PCIF Agreement was executed almost ten years prior to the Petition Date. Thus, FRS's only means of recovery for a non-executory contract would have been to file a proof of claim for a general unsecured claim for its contractual claims, which it did not do.[14]

---

[13] *See* Obj. at n. 4.

[14] As previously noted, FRS has not filed any proof of claim in the Debtors' chapter 11 cases.

D.     **The Interchange Litigation Claims, Including Any Recoveries That may be Derived Therefrom, Constitute Property of the Estate**

10.     FRS briefly states in its Objection, also without legal or factual authority, a reservation to argue that "any recoveries obtained by FRS under the PCIF Agreement (or at least 20% of such recoveries) are not property of the Debtors' estate [*sic*]."[15]  This is also wrong as a matter of law.

11.     Section 541(a)(1) broadly defines property of the estate as "[e]xcept as provided subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  None of the narrow exclusions of property of the estate listed in section 541(b) or the enforcement of restrictions on transfers of interest in a beneficial trust under section 541(c)(2) are applicable here.[16]

12.     It is indisputable that the Debtors' claims in the Interchange Litigation constituted estate property as the "debtor's legal claims constitute property of the estate under § 541(a) (1)."  *Morrison v. Amway Corp. (In re Morrison)*, 409 B.R. 384, 393 (Bankr. S.D. Tex. 2009); *Highland Capital Mgmt. v. Chesapeake Energy Corp. (In re Seven Seas Petroleum.)*, 522 F.3d 575, 584 (5th Cir. 2008) ("The phrase 'all legal or equitable interests of the debtor in property' has been construed broadly, and includes 'rights of action' such as claims based on state or federal law.").

13.     Significantly, nothing in the PCIF Agreement provides or even references any assignment or transfer of any property from the Debtors to FRS.  As such, FRS has, at best, a

---

[15] Obj. at ¶ 21.

[16] Section 541(b)(1)-(7) of the Bankruptcy Code excludes certain property interests (e.g., powers a debtor may exercise solely for another entity, interests of a debtor as lessee, eligibility to participate in Higher Education Act of 1965 programs, liquid or gaseous hydrocarbons, and funds placed in individual retirement accounts) from a debtor's estate that are not applicable here.  Similarly, the restriction on transfers of beneficial trusts of a debtor that is enforceable in bankruptcy cases provided under section 541(c)(2) is also factually inapposite to the PCIF Agreement.

contingent claim on account of (but not ownership in) any commission under the terms of the PCIF Agreement, subject in all respect to any applicable defenses. The PCIF Agreement constitutes nothing more than a contractual promise to pay FRS certain amounts in exchange for the completion of its performance obligations under the agreement.[17]

[*Remainder of Page Intentionally Left Blank*]

---

[17] The PCIF Agreement specifically provides that "Class Member ***agrees to pay*** FRS Twenty Percent (20%) of all proceeds received as payment for all claims filed pursuant to this agreement." PCIF Agreement at ¶ 3 (emphasis added).

WHEREFORE, the Committee requests that the Court overrule the Objection and authorize the rejection of the PCIF Agreement.

Dated: June 27, 2023

Respectfully submitted,

/s/ Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (TX Bar No. 15776275)
Gabriel A. Morgan (TX Bar No. 24125891)
Theodore S. Heckel (TX Bar No. 24133488)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email:  Alfredo.Perez@weil.com
         Gabriel.Morgan@weil.com
         Theodore.Heckel@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Rachael L. Foust (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Matt.Barr@weil.com
         Rachael.Foust@weil.com

*Co-Counsel to the Official Committee of Unsecured Creditors*

PACHULSKI STANG ZIEHL & JONES LLP
Michael D. Warner (TX Bar No. 00792304)
Benjamin L. Wallen (TX Bar No. 24102623)
440 Louisiana Street, Suite 900
Houston, Texas 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
Email:  mwarner@pszjlaw.com
         bwallen@pszjlaw.com

-and-

PACHULSKI STANG ZIEHL & JONES LLP
Robert J. Feinstein (admitted *pro hac vice*)
Bradford J. Sandler (admitted *pro hac vice*)
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email:  rfeinstein@pszjlaw.com
         bsandler@pszjlaw.com

*Co-Counsel to the Official Committee of Unsecured Creditors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 27, 2023, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Alfredo R. Pérez*

Alfredo R. Pérez